UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ITSERVE ALLIANCE INC., | Case No.: 18-cv-2350 |
| Plaintiff, | |
| v. | COMPLAINT |
| UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICE, | |
| Defendant. | |

## INTRODUCTION

This case arises under the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 et seq, and seeks this Court's review pursuant to the Administrative Procedure Act, 5 U.S.C. § 500 et seq.  In November 1990, Congress created the H-1B visa, and split enforcement between the Department of Labor ("DOL") and the United States Citizenship and Immigration Service ("Defendant").  *See* 8 U.S.C. §§ 1101(a)(15)(H)(i)(b), 1182(n), and 1184(i).  According to statute, the H-1B visa is available to United States employers seeking to hire and employ foreign professionals in specialty occupations.

DOL's authority for the H-1B program is found in Title 8, Sections 1182(n) and (p).  Among other statutory duties, DOL ensures H-1B employers pay the

prevailing wage for the "area of intended employment" for the duration of the requested length of the visa.  DOL also regulates how employers pay the new prevailing wage when an employee changes work location or work in multiple locations.  In contrast, Defendant's statutory authority is found in Section 1184(i) and is limited to determining if an H-1B position qualifies as a "specialty occupation." Nothing in § 1182 indicates the location of the position has any bearing on whether it is a specialty occupation.

Defendant is currently encroaching on DOL's statutory authority by enforcing a regulation found at 8 C.F.R. § 214.2(h)(2)(i)(B) ("itinerary regulation"), and a 1998 Proposed Rule. Defendant cites these two sources as authority when it demands employers provide exact itineraries showing when and where employees will perform work over the course of the entire H-1B visa.  However, the itinerary regulation was promulgated prior to the passing of the 1990 INA and has no applicability to the H-1B visa.  In addition, the regulatory choices in the 1998 Proposed Rule were abrogated by statute, and never finalized.

Defendant asserts it has inherent authority under the itinerary regulation and 1998 Proposed Rule to exercise discretion and approve H-1B visas for any duration it deems supported by the employer's evidence.  This claimed authority is not in the statute, nor is it articulated in regulation.  This exercise of claimed authority results in H-1B approval periods as short as a few days.  This often creates the absurd result

where Defendant sends approval notices to employers for visas that have already expired.

While the INA gives Defendant the ability to set the duration of nonimmigrant visas, it requires that these durations be set after notice and comment rule making. Defendant has promulgated regulations setting the duration of the H-1B visa, but its claimed authority exceeds the bounds found therein.

This Court is called upon to determine: which agency (DOL or Defendant) has authority to regulate the "area of intended employment;" if Defendant's itinerary regulation is *ultra vires*; if by enforcing the 1998 Proposed Rule Defendant has created a legislative rule in violation of the APA; and, if Defendant has violated the APA and the INA by creating its own discretion to approve H-1B visas for durations not included in the regulation.

## I.  **PARTIES**

1.     Plaintiff, ITSERVE Alliance, Inc. ("ITSERVE"), is a nonprofit corporation that seeks to advance and safeguard the interests of its member information technology companies.  It is a trade association in compliance with Section 501(c)(6) of the Internal Revenue Code.  It is a Texas Corporation and is headquartered in Irving, Texas.  ITSERVE represents the interest of member companies who operate in the information technology ("IT") sector of the economy. ITSERVE members contract with client companies to create IT solutions and

administer existing IT infrastructure.  ITSERVE member companies provide value by working at the client locations to provide IT services that the end client is not capable of supporting or sustaining without outside expertise.  Because of the nature of the work, ITSERVE member companies are frequently required to work off site at the client location and in collaboration with other companies to create and administer complex IT products.

2.     Defendant United States Citizenship and Immigration Service ("Defendant," "USCIS") is a subordinate agency of the Department of Homeland Security ("DHS," "Defendant," "Defendants") which is an executive agency of the United States, and an "agency" within the meaning of the APA, 5 U.S.C. § 551(1). DHS assumed responsibility from the Immigration and Nationality Service ("INS" or "Defendant") on March 1, 2003, to administer responsibilities under the Immigration and Nationality Act (INA) and in particular to fulfill its limited duties under 8 U.S.C. § 1101(a)(15)(h)(i)(b) ("H-1B visas").  DHS has delegated this authority to its subordinate agency, USCIS.

## II.     JURISDICTION AND WAIVER OF SOVEREIGN IMMUNITY

3.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as a civil action arising under the laws of the United States.  This Court has jurisdiction to enter declaratory judgments under 28 U.S.C. § 1361 and invalidate unlawful agency actions under 5 U.C.S. § 706.

4.     The United States has waived sovereign immunity under 5 U.S.C. § 702.

5.     Plaintiff possesses standing to pursue this action as a trade association. Standing, in the APA context, is not an "especially demanding" test. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1389, 188 L. Ed. 2d 392, 405, (quoting *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225, 132 S. Ct. 2199, 2210, 183 L. Ed. 2d 211, 225 (2012)).

6.     Plaintiff is a trade association, organized to meet the requirements of Section 501(c)(6).  Plaintiff's members are companies who provide information technology services to third parties.  Plaintiff's member companies utlitize the H-1B visa to fill the gap between the demand for their services and the number of US trained professionals able to work in the industry.  Declaration of Gopi Kandukuri, ¶ 3.

7.     Defendant's unlawful legislative rule and regulation force Plaintiff's members to: endure a perpetual cycle of H-1B extension petitions to renew employees' H-1B status; pay exorbitant fees to Defendant; and suffer unpredictable extension adjudications that disrupt Plaintiff's members' business operations.  These injuries are directly caused by Defendant's unlawful application of its rules. *Id.* at ¶ 15.

8.     Plaintiff's mission is to advance the interest of its member companies. As an association, it has standing because: 1. All of its individual members hire information technology workers using H-1B visas (*Id.* at ₱ 5); 2. All of its members are impacted by Defendant's unlawful actions and could independently challenge Defendants unlawful regulations and rules (*Id.* at ₱₱ 5-25); 3. Challenging Defendants' rules and regulations is germane to the associations mission of furthering the interest of the IT consulting industry (*Id.* at ₱₱ 3-5); and, 4. Plaintiff is challenging the legality of a published regulation, published legislative rule that requires notice and comment rulemaking, and published assertion of authority to limit H-1B visa validity periods.   None of these facial challenges to unlawfully agency action require the participation of an individual plaintiff to participate in this lawsuit.  *WildEarth Guardians v. Jewell,* 738 F.3d 298, 305 (D.C. Cir. 2013) *(quoting Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 343, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977)).

9.     Plaintiff's member companies are concerned that in this current environment they may be targeted by Defendant for reprisal, in the form of punitive enforcement actions, denied visa petitions, or additional delay tactics in processing visa petitions, if they sued in their own capacity.  Because they cannot replace their H-1B workers with domestic employees, they are especially vulnerable to such

reprisal.  Consequently, Plaintiff sues to protect and advance its member companies

interests utilizing associational standing.

10.     This facial attack on Defendant's legislative rules and regulation are

timely.

11.     Facial attacks to regulations are separated into three categories: attacks

on policy grounds; attacks to procedural compliance; and, attacks on the

Constitutional or statutory authority for the rule. *Wind River Mining Corp. v. United

States*, 946 F.2d 710 (9th Cir. 1991).

12.     Federal law requires facial challenges alleging policy or procedural

error in the 5 U.S.C. § 553 rule making process to be brought within six years of

promulgation of the final rule.  *Id.*

13.     However, Plaintiff challenges the *statutory authority* for the regulation

at 8 C.F.R. 214.2(h)(2)(i)(B).  Plaintiff does not challenge the regulation based solely

upon the process or policy considerations underpinning the rule.  Consequently, this

challenge is not barred by the statute of limitations.  *Wind River Mining Corp. v.

United States*, 946 F.2d 710 (9th Cir. 1991); *See also Dunn-McCampbell Royalty

Interest v. National Park Serv.*, 112 F.3d 1283, 1287, (5th Cir. 1997) ("It is possible,

however, to challenge a regulation after the limitations period has expired, provided

that the ground for the challenge is that the issuing agency exceeded its constitutional

or statutory authority.")

14.   The *Wind River* rule is consistent with the fundamental concept of administrative law: agencies only have the power given them by Congress. Application of a six-year statute of limitations to *ultra vires* challenges would violate the separation of powers doctrine by permanently granting the executive branch authorities not intended by Congress.

15.   Even if Plaintiff made a facial attack solely on the process or policy underpinning the legislative rule or regulation, this claim would not be time barred because Defendant has reopened and reconsidered its authority for the itinerary regulation in the past six years.   *See Public Citizen v. Nuclear Regulatory Commission*, 901 F.2 147, 150-151 (D.C. Cir. 1990).  The D.C. Circuit has found that the statute of limitations for a facial attack begins anew each time an agency "has — either explicitly or implicitly — undertaken to reexamine its former choice." *Id.*

16.   Here, Defendant reopened and reconsidered its authority for the legislative rule and regulation when promulgating the precedent decision *Matter of Simeio Solutions, LLC*, 26 I & N Dec. 542 (AAO 2015),  *Matter of S- Inc.*, PM-602-0159, Adopted Decision 2018-02 (AAO March 23, 2018); and PM 602-0157 *Contracts and Itineraries Requirements for H-1B Petitions Involving Third-Party Worksites* (February 22, 2018).

17. Challenges to unlawful legislative rules created by agencies in violation of the APA are not subject to a statute of limitation.

18. This Court may grant declaratory and injunctive relief pursuant to 5 U.S.C. § 701-706, 28 U.S.C. §§ 2201-2202, and 28 U.S.C. § 1361. Thus, Plaintiff's injury can be redressed by an order of this Court finding Defendant's actions unlawful.

## III. VENUE

19. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e) because Defendant is located in the District of Columbia.

## IV. STATEMENT OF CLAIM

### A. Administrative Procedure Act

20. Federal agencies must comply with the Administrative Procedure Act when crafting and enforcing regulations and legislative rules.  5 U.S.C. § 553.

21. Courts have authority to review and invalidate final agency actions that are not in accordance with the law, lack substantial evidence, or are arbitrary and capricious.  5 U.S.C. § 706.

22. In reviewing Federal agency rules and actions, courts first determine if the agency had statutory authorization to create rules that carry the force and effect of law. *United States v. Mead Corp.*, 533 U.S. 218, 226-227 (2001).

23.     Statutory schemes involving multiple agencies require courts to determine which agency has authority over which statutory provisions. *Martin v. OSHRC*, 499 U.S. 144, 153 (1991) (in multi-agency statutes, courts look to the language and structure of the statute as well as the relative expertise of agencies to determine which agency has authority to create rules).

24.     In shared jurisdiction statutes, courts will reject an agency's rule when Congress has granted rule making authority to another agency. *Gonzales v. Oregon*, 546 U.S. 243, 262 (2006) (Determining the Department of Health and Human Services had authority to prohibit the use of medications for assisted suicide, and rejecting the Attorney General's rule on assisted suicide, noting it "would be anomalous for Congress to have so painstakingly described the Attorney General's limited authority to deregister a single physician or schedule a single drug, but to have given him, just by implication, authority to declare an entire class of activity outside the course of professional practice.").

25.     Agency rules fall into four categories: interpretive; general statements of policy; agency organization and internal procedure; and, legislative. *See* 5 U.S.C. § 553, *Mendoza v. Perez*, 754 F.3d 1002, 1021 (D.C. Cir. 2014).

26.     Agency rules are legislative if "the agency action binds private parties or the agency itself with the 'force of law,'" *GE v. EPA*, 290 F.3d 377, 382 (D.C. Cir. 2002) (internal quotation marks omitted), and "an agency pronouncement will

be considered binding as a practical matter if it either appears on its face to be binding ... or is applied by the agency in a way that indicates it is binding." *Id*. at 383.

27.    A legislative rule "does more than simply clarify or explain a regulatory term, or confirm a regulatory requirement, or maintain a consistent agency policy… A rule is legislative if it supplements a statute, adopts a new position inconsistent with existing regulations, or otherwise effects a substantive change in existing law or policy. *Mendoza v. Perez,* 754 F.3d at 2021.

28.    Agency rules based on broad statutory language that create specific responsibilities are legislative rules. *Id.* at 1022 (Department of Labor regulations creating evidentiary requirements for US employers were legislative because the broad and general nature of the statutory text anticipated notice and comment rulemaking).

29.     Agency rules that require the regulated community to alter behavior in order to receive a government benefit are legislative and not procedural rules. *Id.* at 1024 (Rule demanding a minimum wage was not a procedural rule explaining how agency would adjudicate petitions but set a mandatory standard for applicants).

30.    Agency rules that bind or create mandatory requirements are legislative rules, requiring notice and comment rulemaking. *See Elec. Privacy Info. Ctr. V. US*

*Dept. of Homeland Security,* 653 F.3d 1, 6 (D.C. Cir. 2011) (binding and mandatory screening requirements at airports were legislative and not interpretive rules).

31.     Agencies can earn judicial deference to properly authorized and properly promulgated legislative rules if the statute is ambiguous and the rule is reasonable. *Chevron v. NRDC*, 467 U.S. 837 (1986).

32.     Courts and agencies must respect the "unambiguously expressed intent of Congress." *City of Arlington v. Fed. Commc'n Comm'n,* 569 U.S. 290, 296 (2013), quoting *Chevron,* 467 U.S. at 842-43.

33.     A statute is unambiguous if there is "no gap for the agency to fill" and there is "no room for agency discretion." *United States v. Home Concrete & Supply, LLC,* 566 U.S. 478, 487, (2012).

34.     Only when courts establish that the statute is silent on an issue will they analyze an agency rule for deference under *Chevron* Step Two. *City of Arlington*, 569 U.S. at 296.

35.     Agencies are not afforded deference when they do not explain the statutory basis or rational for rules and regulations. *Encino Motorcars, LLC v. Navarro*, 136 S.Ct. 2117, 2126 (2016). ("When an agency has failed to provide even that minimal level of analysis, its action is arbitrary and capricious and so cannot carry the force of law").

36.     Agencies are not entitled to deference when their rules and regulations parrot the statute. *Fogo de Chao (Holdings) Inc. v. US Dep't of Homeland Sec.*, 769 F.3d 1127, 1135 (D.C. Cir. 2014) (regulatory language that does not expound or otherwise implicate an agency's unique or special knowledge are not afforded deference).

37.     Absent new statutory authority Courts will not grant deference to an agency rule that undertakes a major regulatory action or change. *See United States Telecom Ass'n v. FCC,* 855 F. 3d 381, 420 (D.C. Cir. 2017) (describing major rules requiring statutory authorization including those that have large compliance costs).

38.     Courts will defer to an agency's interpretation of its properly promulgated regulations unless the agency is plainly erroneous or inconsistent with the regulation. *Auer v. Robbins*, 519 U.S. 452, 461 (1997).

## B. Statutory and Regulatory Framework

### 1. History of the H-1B Visa

#### a. Nonimmigrant H Visas under the 1952 INA

39.     Prior to November 1990, the nonimmigrant H visa applied to: aliens of distinguished merit and ability; temporary laborers; and industrial trainees. *See* 8 U.S.C. § 1101(a)(15)(H) (1989), 66 Stat. 168 (1952).

40.    Under that statute, Defendant was the only agency with authority to regulate the admission of H-1 nonimmigrant visas for aliens of "distinguished merit and ability." *Id.*

41.    On January 26, 1990, Defendant promulgated its final rule on "Temporary Alien Workers Seeking Classification Under the Immigration and Nationality Act." 55 Fed. Reg. 2606 (January 26, 1990).  This regulation applied to the H visa category created by the 1952 Immigration and Nationality Act. *Id.*

42.    In the preamble to that final rule, Defendant discussed at length nonimmigrant artists and entertainers traveling to the US, and the impact an itinerary requirement would have on those H petitions.  *Id.*  Defendant sought to ensure entertainers had scheduled performances before issuing a visa. *Id.*  Defendant also sought to ensure other foreign workers had a firm offer of employment and would not be coming to the United States without prospects. *Id.*  Defendant promulgated the following rule after notice and comment from the film and artistic communities:

(B) *Service or training in more than one location*. A petition which requires services to be performed or *training* to be received in more than one location must include an itinerary with the dates and locations of the services or training and must be filed with the Service office which has jurisdiction over I-129H petitions in the area where the petitioner is located. The address which the petitioner specifies as its location on the I-129H petition shall be where the petitioner is located for purposes of this paragraph. *If the petitioner is a foreign employer with no United States location*, the petitioner shall be filed with the Service office that has jurisdiction over the area where the employment will begin.

*Id.* (emphasis added).

43.    This "itinerary regulation" was codified at 8 C.F.R. § 214.2(h)(2)(i)(B) (1990).

### b. The H-1B Visa: 1990 INA

44.    In November 1990, Congress overhauled the Immigration and Nationality Act ("INA").  Pub. L. 101–649, 104 Stat 4978, November 29, 1990.

45.    The new INA split the prior H category into multiple new nonimmigrant categories, including: specialty occupation workers (H-1B visa); fashion models ("H-1B1" visa); bona fide trainees, teachers, professors, research assistants, etc. ("J" visa); study in vocational or nonacademic program ("M" visa); aliens of extraordinary ability ("O" visa); entertainer visas ("P" visa); and religious workers ("R" visa). Pub. L. 101–649, 104 Stat 4978, November 29, 1990. Codified at 8 U.S.C. § 1101(a)(15)(H), (J), (M), (O), (P), and (R).

46.    The H-1B specialty occupation visa was part of a broader reform to increase the number of high skilled technology and professional employees needed to stay competitive in the global market place. *See* 136 Cong Rec S 17103, 17103 (1990) (discussing the need for more high-tech employees in the US economy).

47.    The H-1B visa category is eligible for:

an alien …who is coming temporarily to the United States to perform services … in a specialty occupation described in section 1184(i)(1) of this title… who meets the requirements for the occupation specified in section 1184(i)(2) of this title… and with respect to whom the Secretary

of Labor determines and certifies to [Defendant USCIS] that the intending employer has filed with the Secretary an application under section 1182(n)(1) of this title…

8  U.S.C. § 1101(a)(15)(H)(i)(b).

48.    Congress split enforcement of this new H-1B visa category between the Department of Labor ("DOL") and Defendants' predecessor the Immigration and Nationality Service ("INS," "Defendant").  *Id.*, delegating authority to DOL at §§1182(n) and (p) and to Defendant at 1184(i).

49.    This split enforcement ended Defendant's unfettered authority over nonimmigrant visas for professional workers of "distinguished merit and ability" (1952 INA "H-1" visa).

50.    By statute, an H-1B visa requires an offer of employment from a United States employer.   8 U.S.C. § 1182(n).  Foreign workers cannot self-petition for an H-1B, nor can they obtain an H-1B without an employer guaranteeing they will be employed while in the United States. *Id.*

51.    All US employers seeking to hire a foreign professional under the H-1B program must begin the process by securing a Labor Conditions Application (LCA) from DOL.  *Id.* at § 1182(n).

52.    DOL has broad enforcement powers to protect US workers' wages and working conditions and to enforce the terms of the LCA. 8 U.S.C. §§ 1182(n) and (p).

53.     When employers submit the LCA to DOL they state how long they intend to hire and employ the worker in the United States.  This is the requested "LCA validity period" or "approval period."

54.     On the LCA employers agree to comply with DOL's regulations and provide details about the: occupation; prevailing wage; and area of intended employment.

55.     DOL was given the authority to define the term "area of intended employment."  8 U.S.C. § 1182 (n)(1)(A)(i)(I).

56.     DOL requires this information to ensure foreign workers are paid a wage equal to or greater than wages paid to US workers in the area of intended employment.

57.     Shortly after the passage of the 1990 INA, DOL exercised its delegated authority and made substantive regulations, with the force and effect of law, defining the term "area of intended employment." *See* §§ XX.715, XX.730, Proposed Rule, 56 Fed. Reg. 37175 (August 5, 1991); §§ XX.715, XX.730, Interim Final Rule, 56 Fed. Reg. 54720 (October 22, 1991).

58.     DOL also regulated how US employers must document and pay workers who intend to work in multiple areas.  *Id.*

59.     DOL also promulgated a regulation requiring H-1B employers to pay the full prevailing wage when an employee was in a non-productive status due to

lack of work, lack of license, or training. 20 C.F.R. 655.732(c)(5)(i) (1994-1998). This rule prevented employers from "benching" employees, or placing them in an unpaid status when there was no work to perform.

60.     While DOL regulations required employers to pay the required wages when the employee was not gainfully employed it lacked sufficient statutory authority to enforce these requirements. *See* 8 U.S.C. § 1182(n) (1991-1997).

### c. Defendant's Itinerary Regulation Under the 1990 INA

61.     In contrast to DOL's broad authority to define terms and conditions of the U.S. labor market and H-1B visa, Defendant has been given comparatively little authority over adjudications of H-1B visas.

62.     Defendant's adjudications authority, described in § 1184(i), is limited to determining if a position is an H-1B "specialty occupation."

63.     The statute defines "specialty occupation" as one that requires the theoretical and practical application of a body of highly specialized knowledge; and, attainment of a bachelor's degree or its equivalent. *Id.*

64.     Nothing in 8 U.S.C. § 1184(i) indicates the area of intended employment has any bearing on whether a position is a "specialty occupation."

65.     Defendant does not have statutory authority to define "area of intended employment."

66.   Nothing in Section 1184(i) indicates approval of an H-1B visa is contingent on Defendant considering or analyzing the location where work is performed.

67.   Defendant proposed new rules to implement the 1990 INA's H-1B visa. 56 Fed. Reg. 31553, 31558, Proposed Rule (July 11, 1991).  Defendant cited 8 U.S.C. § 1184 as its statutory authority for these regulations.  *Id.*

68.   In the 1991 Proposed Rule Defendant did not discuss or even provide text of the "itinerary regulation" now at 8 C.F.R. § 214.2(h)(2)(i)(B).  *Id.* at 31557, 31558.

69.   In the section available for that regulatory section, Defendant inserted five asterisks (*****), indicating it would bring the text forward from the existing regulation unchanged.  *Id.*

70.   Nothing in the comments to the proposed regulation explains why the 1990 itinerary regulation, created to implement the 1952 INA's H visa was relevant to Defendant's limited role of adjudicating "specialty occupation" visas created by the 1990 INA.

71.   Nothing in the comments to the 1991 Proposed Rule explains why the 1990 itinerary regulation, which created filing procedures for a "foreign employer with no United States location…," was relevant to the new H-1B visa when such petitioners were explicitly prohibited from obtaining H-1B visas.  *Compare* 8 C.F.R.

§ 214.2(h)(2)(i)(B) (1991-1993) and 56 Fed. Reg 61111, Final Rule (December 2, 1991) ("The labor condition application requires that a petitioner post a notice of the filing of a labor condition application at its place of employment. *This obviously requires the petitioner to have a legal presence in the United States*.) (emphasis added).[1]

72.     Nothing in the comments to the 1991 Proposed Rule explains how a regulation requiring an itinerary for "training in more than one location" applied to the new H-1B employment-based visas that by statue cannot be approved for trainees.

73.     Nor did Defendant explain how the itinerary regulation's original intent (prohibiting foreign workers from entering the United States without a job offer), was relevant to the 1990 INA H-1B visa which required a job offer from a United States employer and promise to pay the prevailing wage for the duration of the validity period.

74.     In the 1991 Proposed Rule, Defendant did not create a definition of "area of intended employment."  *See* 56 Fed. Reg. 61111, Final Rule (December 2,

---

[1] Defendant later deleted reference to foreign employers in the itinerary regulation (the last sentence of § 214.2(h)(2)(i)(B)) without explanation.  *See* 59 Fed. Reg. 1470, Final Rule (January 11, 1994). The deletion of this sentence was not preceded by notice in the Federal Register of the proposed change.  *See id*. and 57 Fed. Reg. 12179-12182, Proposed Rule (April 9, 1992).

1991).  Defendant did not explain that an itinerary was required to determine if the H-1B position was a specialty occupation.

75.     Defendant did publish proposed itinerary regulations for O and P visas and provided analysis for why they were applicable to those new categories.  *See Id*. at 31567, 31571.

76.     Defendant published its Final Rules implementing nonimmigrant employment visas on December 2, 1991.  56 Fed. Reg. 61111, Final Rule (December 2, 1991).

77.     However, once again, it did not include the text of the itinerary regulation.  Rather, it inserted five asterisks in place of the text.  *Id.*

78.     Defendant did not provide any comment or explanation as to why the itinerary regulation at 8 C.F.R. § 214.2(h)(2)(i)(B), with its anachronistic requirements (pertaining to trainees, non-U.S. employers, and workers without job offers) was relevant to the 1990 INA's H-1B category.  *See* 56 Fed. Reg. 61111.

79.     Defendant did not provide any comment or explanation as to how Section 1184(i) authorized re-promulgation of the itinerary regulation at 8 C.F.R. § 214.2(h)(2)(i)(B).  *See* 56 Fed. Reg. 61111.

### d. Defendant's Proposed 1998 "Benching" Regulation

80.     On June 4, 1998, Defendant published a Proposed Rule, listing possible requirements for H nonimmigrant visas.  63 Fed. Reg. 30419, Proposed Rule (June 4, 1998).

81.     This proposed rule sought to: 1. repeal the H-1B itinerary regulation at 8 C.F.R. § 214.2(h)(2)(i)(B); and, 2. create a legislative rule with new evidentiary requirements for H-1B visas.  *Id.*

82.     Defendant noted that the itinerary requirement at 8 C.F.R. § 214.2(h)(2)(i)(B) was promulgated "prior to the passage of the Immigration Act of 1990" and was "intended to preclude foreign entertainers who were admitted in H classification for the purpose of performing at a specific engagement from engaging in freelance work in this country subsequent to their admission." *Id*.

83.     Defendant explained that health care staffing and information technology consulting companies use the H-1B visa to place workers at various locations on short notice.  *Id.*  Defendant conceded that these industries clearly cannot comply with 8 C.F.R. § 214.2(h)(2)(i)(B) (the 1990 H visa itinerary regulation) at the time they file a petition.  *Id.*

84.     Defendant recognized that "…complete itineraries listing the dates and places of the alien's employment, the Service recognizes such an across-the-board requirement is no longer practical in today's business environment." *Id* at 30420

85.     Defendant unequivocally stated that the intent behind the itinerary regulation was unrelated to determining if a position was a "specialty occupation." *Id.*

86.     Defendant effectively admitted that the itinerary regulation is *ultra vires* to the 1990 INA and H-1B visa category.  *See id.*

87.     In the 1998 Proposed Rule, Defendant also proposed new evidentiary requirements applicable to the H-1B program.  These requirements were meant to regulate a practice called "benching."  Benching occurred when employers placed employees in a non-productive status, due to lack of work, and withheld pay until work projects were available.

88.     Defendant sought to prevent benching with a rule that prohibited "speculative employment."  *Id.* at 30421. The 1998 Proposed Rule would require evidence that each H-1B petition was supported by a specific and non-speculative work assignment that would begin immediately upon admission to the United States. *Id.* The new legislative rule would prohibit approving visas for employers seeking to expand operations by hiring new H-1B workers.  *Id.*

89.     Defendant explained that the new rule would:

>     …ensure that petitioners will not use the H-1B classification for speculative employment, this proposed regulation would require petitioners to establish that they, in fact, have employment in a specialty occupation available for the alien at the time that the petition is initially filed. Under this proposed rule, the petitioner would be required to establish, both through the submission of evidence relating to its past

employment practices and through the submission of evidence relating to its employment plans for the beneficiary, that the alien will, in fact, commence work in a specialty occupation immediately upon admission in H classification. The petitioner must be able to demonstrate its need for the alien's services within the specialty occupation described in the petition when the petition is filed.

*Id.*

90.     Defendant provided the public until August 3, 1998 to provide comments on the 1998 Proposed Rule.

91.     However, the above June 4, 1998 Proposed Rule was never finalized or promulgated.

### e. The American Competitiveness and Workforce Improvement Act of 1998

92.     Defendant's June 4, 1998 Proposed Rule was abrogated by Congressional action on October 21, 1998, with the passage of the *American Competitiveness and Workforce Improvement Act of 1998* (ACWIA), Title IV, Pub.L. 105-277 (October 21, 1998).

93.     ACWIA had two legislative aims: increase the availability of high-tech workers in the US economy; and protect US workers. *See* Committee Report on ACWIA, Section 2, Findings of Congress, 105 S. 1723 (1998).

94.     Like Defendant's June 4, 1998, proposed rule, ACWIA was designed in part to regulate the practice of benching.

95.     In drafting ACWIA, Congress had before it two competing approaches to curb benching: DOL's codified rule at 20 C.F.R. 655.732(c)(5)(i) (1994-1998),

allowing employers to file petitions based on job offers (without evidence of specific assignments) and requirements to pay wages if there was no work; or, Defendant's 1998 Proposed Rule demanding proof of specific and non-speculative work assignments at the time of filing.

96.     Congress adopted DOL's approach and codified it in 8 U.S.C. § 1182(c)(2)(C)(vii)(I).  Congress adopted DOL's regulatory language allowing "non-productive status." *Id.*

97.     Congress included "factors such as lack of work" in the definition of non-productive status.  *Id.*

98.     Congress rejected Defendant's proposed approach of demanding evidence of specific and non-speculative work assignments.

99.     Post ACWIA, employers were allowed by statute and regulation to hire H-1B employees with no evidence of actual work to perform.  However, employers are required to pay the foreign H-1B employee the full required wage whether or not there is work to perform.  This obligation continues until the natural termination of the visa or the employer terminates employment and returns the employee to their home country. *See* 8 U.S.C. § 1182(n)(2)(C).

100.    In ACWIA Congress granted DOL new enforcement authority to regulate benching, and to force employers to pay the prevailing wage when employees were in a non-productive status.  *See* 8 U.S.C. § 1182(n)(2)(C).

101.   Congress did not grant Defendant any new enforcement authorities under ACWIA.

102.   Considering the legislative intent behind the 1990 INA and 1998 ACWIA, the decision to allow H-1B filings without evidence of specific work assignments is not surprising.   Both statutes recognized an overall shortage of high-tech employees in the United States.   Both statutes recognized that US employers needed increased access to high-tech employees.   Both statutes were focused on maintaining global competitiveness in the technology sector with more high-tech employees.

103.   Defendant's 1998 Proposed Rule with its prohibition on speculative H-1B filings ran counter to the intent of Congress.   Consequently, it was never finalized.

## 2.  **Duration of Nonimmigrant Visas**

104.   Congress created a maximum "period of authorized admission" for an H-1B employee, capping the period at six years.  8 U.S.C. § 1184(g)(4).  This six-year cap can be extended if the beneficiary of the H-1B visa is also the beneficiary of an immigrant visa and waiting for approval of their application to adjust status or establish permanent residence (green card).  8 U.S.C. § 1184(n).

105.   Congress allowed Defendant to create regulations admitting H-1B employees to the United States for a defined duration less than six years.  8 U.S.C. § 1184(a)(1).

106.   Defendant promulgated 8 C.F.R. § 214.2(h)(9), *Approval and validity of petition*.  Defendant's regulation created the following limits:

> (iii) Validity. The initial approval period of an H petition shall conform to the limits prescribed as follows:
>
>> (A)(1) H-1B petition in a specialty occupation. An approved petition classified under section [1101](a)(15)(H)(i)(b) of the Act for an alien in a specialty occupation shall be valid for a period of up to three years but may not exceed the validity period of the labor condition application.

107.   Defendant also created regulations at 8 C.F.R. §214.2 (h)(13)(iii)(C)

> (C) *Calculating the maximum H-1B admission period*. Time spent physically outside the United States exceeding 24 hours by an alien during the validity of an H-1B petition that was approved on the alien's behalf shall not be considered for purposes of calculating the alien's total period of authorized admission under section 214(g)(4) of the Act, regardless of whether such time meaningfully interrupts the alien's stay in H-1B status and the reason for the alien's absence. Accordingly, such remaining time may be recaptured in a subsequent H-1B petition on behalf of the alien, at any time before the alien uses the full period of H-1B admission described in section [1184](g)(4) of the Act.

108.   Employers requesting an H-1B visa for an employee indicate on the LCA how long they intend to hire and employ the foreign professional.  Depending on the employer's need, this period can be less than or equal to three years.

109.   H-1B employees are eligible for extension if they are also beneficiaries of an immigrant visa.  8 U.S.C. § 1184(n), and 8 C.F.R. § 214.2(h)(13)(iii)(D).

110.   Thus, by regulation, the duration of an H-1B petition is three years, unless: the employer requests a lesser period of time; or the maximum amount of time available under the six-year statutory cap is less than three years.

### 3. Petition Fees.

111.   Congress required that petitioners for nonimmigrant visas pay fees that cover the cost of examination, adjudication and contribute to other programs.  8 U.S.C. § 1351.  Fees collected in excess of the costs of individual cases may be retained by Defendant to cover its total operational expenses.  8 U.S.C. § 1356(m).

112.   By regulation, Defendant prohibits filing petitions to extend H-1B visas earlier than six-months prior to the end of the validity date. 8 C.F.R. § 214.2(h)(9)(i)(B). Defendant's current average processing time to adjudicate these petitions is over six months (including premium processing and normal processing). Appx. Pgs. 2-7.   (taken from https://egov.uscis.gov/processing-times/October 4, 2018)

113.   Defendant is authorized by statute to accept a Premium Processing Fee, which guarantees adjudication within 15 days.  Employers must pay this increased processing fee to maintain predictability in operations.  Kandukuri Declaration at 20. This fee is currently $1,410.  8 C.F.R. § 103.7(b)(1)(SS), 8 U.S.C. § 1356(u).

The "average" processing time posted on Defendant's website does not reflect reality.   Cases filed without premium process can take up to a year to process and include the following benchmarks: eight months after filing the employer receives a "request for evidence" ("RFE") allowing the employer 90 days to respond; after responding, the employer may hear from USCIS within a year of filing the petition. Kandukuri Declaration at 20.   In the past two years Defendant has commonly requested a first and second RFE, which further delays adjudication.  *Id.* at 16.

114.   Fees collected from the H-1B program are used by Defendant to fund a wide variety of activities.  8 U.S.C. § 1356(s).

115.   It is common for a member of ITSERVE to pay the following fees for an *initial* H-1B filing:

| | |
|---|---|
| Basic Filing Fee (8 C.F.R. § 103.7(b)(1)(I)) | $460.00 |
| Dependent H-4 Fee (Spouse or child of H-1B) | $370.00 |
| User Fee (*Id.* at § (b)(1)(GGG)) | $1500.00 |
| Fraud Prevention Fee (*Id.* at § (b)(1)(HHH)) | $500.00 |
| Border Security Fee (*Id.* at § (b)(1)(III)) | $4000.00 |
| Premium Processing (*Id.* at § (b)(1)(SS) | $1225.00 |

116.   It is common for a member of ITSERVE to pay the following fees for the first extension petition for an H-1B employee to continue in the same position:

| | |
|---|---|
| Basic Filing Fee (*Id.* at § (b)(1)(I)) | $460.00 |
| Extend Status (*Id.* at § (b)(1)(X)) | $370.00 |
| Dependent H-4 Fee (Spouse or child of H-1B) | $370.00 |
| User Fee (*Id.* at § (b)(1)(GGG)) | $1500.00 |
| Premium Processing (*Id.* at § (b)(1)(SS) | $1225.00 |

117.   It is common for a member of ITSERVE to pay the following fees for each additional extension petition for an H-1B employee to continue in the same position:

| | |
|---|---|
| Basic Filing Fee (*Id.* at § (b)(1)(I)) | $460.00 |
| Dependent H-4 Fee | $370.00 |
| Premium Processing (*Id.* at § (b)(1)(SS) | $1225.00 |

118.   The statute and regulatory scheme anticipate the Plaintiff's typical member company who files for an H-1B visa would have an initial three-year petition (filing fees of $8,085) and one extension petition (filing fees $3,925) during the six-year cap period.  If the employee is the beneficiary of an approved immigrant visa the employer would pay H-1B extension petition filing fees of $2,055 until the employee becomes a lawful permanent resident.

119.   The Basic Filing Fee and Application to Extend Status Fees are allowed by statute, but the rate is determined by notice and comment rulemaking.  8 U.S.C. § 1356(m).

120.   All other fees are authorized and determined by statute.  8 U.S.C. § 1184(c)(9)(B).

## C. Defendant's Enforcement of Unlawful Legislative Rules and Ultra Vires Itinerary Regulation

121.   While the statutory scheme requires DOL to analyze where and when an H-1B employee will perform work, nothing in the current statutory scheme

requires Defendant to evaluate this information when adjudicating an H-1B visa.
*See* 8 U.S.C. §§ 1182(n) and 1184(i).

122.   Nothing in the Federal Register or rule making process for a properly
promulgated legislative rule or regulation explains Defendant's rationale for why a
complete itinerary is required to establish eligibility as an H-1B "specialty
occupation."

123.   Despite its admission in the June 4, 1998 Proposed Rule that the
itinerary regulation was *ultra vires*, Defendant continues to demand that H-1B
employers must provide a complete itinerary with the petition.  *See* 8 C.F.R. §
214.2(h)(2)(i)(B), and PM 602-0157, February 22, 2018.

124.   The explanation of the June 4, 1998 Proposed Rule asserted that
evidence of specific and non-speculative work assignments was necessary to
determine if a position qualified as a specialty occupation.  However, that Proposed
Rule was never finalized, nor did it gain the force and effect of law.

125.   Defendant has recently proclaimed employers must comply with the
specific and non-speculative work assignment requirement created in the June 4,
1998 Proposed Rule. *Itinerary Memo*, PM 602-0157, February 22, 2018, Page 3,
Appx. 8-13.   Through this memorandum Defendant has articulated binding
legislative rules in violation the APA's notice and comment requirements.

126.    In Defendant's adjudications and denials of H-1B petitions it now cites to and enforces the June 4, 1998 Proposed Rule's specific and non-speculative work assignment requirement as if it were a binding legislative rule.  *See* AAO Decisions, Appx.  18-19 ( Note 5), 24 (Note 7) (citing authoritatively to the 1998 Proposed Rule as "to be codified at 8 C.F.R. 214.").    Nor are these AAO decisions anomalies.  A search of Defendant's online AAO decisions show a regular and consistent enforcement of this standard and citation to the 1998 Proposed Rule. *See* https://search.usa.gov/search?utf8=%E2%9C%93&affiliate=uscis-aao&sort_by=& dc= 1847&query=to+be+codified&commit=Search (accessed September 27, 2018).

127.    Defendant asserts that employers must provide evidence of specific and non-speculative work assignments "for the entire time requested in the petition." PM 602-0157, Page 3.  Appx. at 10.

128.    Defendant claims authority to "limit the approval period to the length of time demonstrated that the beneficiary will be placed in non-speculative work…" *Id.* at Page 7., Appx. at 14.

129.    Defendant claims this *sua sponte* limitation of the requested validity period is authorized by 8 C.F.R. § 214.2(h)(9)(iii).   *Id.*   This assertion is not supported by the text of the statute or regulation.

130. Although the statute requires any limitations on the validity period of H-1B visas to be promulgated in regulations, Defendant has promulgated this authority in a policy memorandum.

131. Defendant is *sua sponte* limiting approval periods of H-1B visas and extension petitions, forcing employers to engage in a cycle of perpetual extension petitions and filing fees. Kandukuri Declaration at 15.

132. As noted above, Defendant accepts H-1B extension petitions only within six months of the prior petition's expiration. Absent premium processing, Defendant takes longer than six months to adjudicate these petitions. Appx. at 2-7.

133. Based upon employer provided evidence of specific and non-speculative work assignments and the itinerary regulation Defendant is exercising its claimed authority to *sua sponte* shorten approval periods. Kandukuri Declaration at 15-20.

134. As a result, very few of Plaintiff's member's H-1B petitions are approved in compliance with regulatory standards (three years, less periods requested by employer, or period less than three years up to the remaining amount of time on the six-year cap, or time allowed for those waiting for a green card). Kandukuri Declaration at 15.

135. Plaintiff's members request approval periods in accord with the regulatory standard. However, Defendant approves petitions for shorter periods *sua*

*sponte*.   Many of these shortened approvals are for less than six months.   Often

Defendant sends approval notices that are so short in duration that they are expired

upon delivery.  Appx. 30-31.

136.   Plaintiff's member companies find themselves in a perpetual cycle of

filing extension petitions.   The below examples included in the Appendix are

illustrative of approval periods Plaintiff's member companies receive.

| Application Date | Approval Notice Date | Approval Period | Approval Duration | Appx. Pg. |
|---|---|---|---|---|
| Jun 4, 2018 | Sept 17, 2018 | Sept 17, 2018 Sept 29, 2018 | 12 Days | 27 |
| Apr 11, 2017 | Jan 19, 2018 | Jan. 19, 2018 Feb 16, 2018 | 28 Days | 28 |
| Apr. 5, 2018 | Jul 26, 2018 | Jul 25, 2018 Sept 17, 2018 | 54 Days | 29 |
| May 25, 2018 | Aug 29, 2018 | Jun 15, 2018 Aug 10, 2018 | 56 Days* | 30 |
| Mar 19, 2018 | Aug 6, 2018 | Mar 19, 2018 May 5, 2018 | 73 Days* | 31 |
| May 31, 2018 | Aug 23, 2018 | Oct 1, 2018 Feb 21, 2019 | 143 Days | 32 |
| May 3, 2018 | Sept 7, 2018 | Jul 23, 2018 Dec 31, 2018 | 161 Days | 33 |
| Apr 12, 2018 | Apr 20, 2018 | Jun 11, 2018 Mar 12, 2019 | 274 Days | 34 |
| Sept 20, 2017 | Jun 4, 2018 | Nov 20, 2017 Aug 21, 2018 | 274 Days | 35 |
| Feb 12, 2018 | Apr 18, 2018 | Apr 29, 2018 Feb 7, 2019 | 284 Days | 36 |
| Apr 18, 2018 | Jul 12, 2018 | Apr 18, 2018 Apr 9, 2019 | 356 Days | 37 |
| Dec 13, 2017 | Dec 21, 2017 | Dec 21, 2017 Dec 31, 2018 | 375 Days | 38 |
| Apr 11, 2017 | Jun 6, 2017 | Oct 1, 2017 | 456 Days | 39 |

| | | Dec 31, 2018 | | |
|---|---|---|---|---|

137.   The information technology consulting industry creates and maintains information technology products for clients.   Kandukuri Declaration at 4.   The standard length of contracts in the industry to maintain and provide continuing service to clients is six months.  *Id*. at 14. This industry standard makes it difficult for ITSERVE members to comply with Defendant's itinerary regulation and specific and non-speculative work assignment requirement.  *Id*.

138.   As Defendant noted in the June 4, 1998 Proposed Rule, information technology service providers have an almost impossible time complying with the itinerary regulation.  Defendant's enforcement of this unlawful regulation increases compliance costs and creates instability in business operations for Plaintiff's member companies.  Kandukuri Declaration at 19-21.

139.   Defendant's specific and non-speculative work assignment requirement is a legislative rule requiring notice and comment rule making. Defendant's enforcement of this unlawfully created rule increases compliance costs and creates instability in business operations for Plaintiff's member companies.

140.   Defendant's claimed authority to *sua sponte* limit visa validity periods is unlawful and increases compliance costs and creates instability in business operations for Plaintiff's member companies.

141.   An order from this Court declaring unlawful and enjoining Defendant from enforcing the itinerary regulation at 8 C.F.R. § 214.2(h)(2)(i)(B) would strip Defendant of the legal authority it claims supports arbitrarily limit approval periods.

142.   An order from this Court declaring unlawful and enjoining Defendant from enforcing its specific and non-speculative work assignment requirement would decrease evidentiary burdens on Plaintiff's member companies, decrease compliance costs, and create predictability.

143.   An order from this Court declaring unlawful and enjoining Defendant from *sua sponte* limiting visa approval periods based on evidence of work projects would decrease compliance costs and create predictability.

## COUNT I

144.   Defendant is enforcing the itinerary regulation at 8 C.F.R. § 214.2(h)(2)(i)(B).   This regulation was abrogated by the Immigration and Nationality Act of 1990.

145.   Defendant carried the itinerary regulation forward from prior statute without statutory authority.   The 1990 INA shifted authority to the Department of Labor to regulate wages and the area of intended employment.   The INA limited Defendant's role in the H-1B process to determining if a position qualifies as a specialty occupation.   Nothing in the INA requires Defendant to consider, evaluate, or define where and when an employee carries out duties while on an H-1B visa.

146.   Under the 1990 INA Congress stripped Defendant of authority to regulate the location where work is performed.   Nothing in 8 U.S.C. § 1184(i) discusses area of intended employment or suggests Defendant can demand evidence of an itinerary.

147.   Defendant does not have statutory authority to create or enforce the itinerary regulation.   *See Martin v. OSHRC*, 499 U.S. at 153, and *Gonzales v. Oregon*, 546 U.S. at 262 (agencies are prohibited from creating rules beyond their authority and expertise).   This regulation is *ultra vires* to 8 U.S.C. § 1184(i). Congress granted authority to DOL, not Defendant to defined and regulate where an H-1B employee works.   *See Gonzales*, 546 U.S. at 262.

148.   Moreover, Defendant has never provided an explanation or rationale for the validity or connection of this regulation to the current statute.   Consequently, it lacks the force and effect of law.   *Encino Motorcars, LLC v. Navarro*, 136 S.Ct. at 2126 ("When an agency has failed to provide even that minimal level of analysis, its action is arbitrary and capricious and so cannot carry the force of law")

149.   This Court must declare invalid the regulation at 8 C.F.R. § 214.2(h)(2)(i)(B) and enjoin Defendant from demanding H-1B petitioners comply with its terms.

## COUNT II

150.   In 1998 Defendant proposed a legislative rule requiring H-1B petitioners to satisfy a new evidentiary burden.   The June 4, 1998 Proposed Rule conceded that Defendant lacked existing regulatory authority to force employers to provide evidence of specific and non-speculative work assignments. *See City of Arlington v. Fed. Commc'n Comm'n*, 569 U.S. at 296 (Rules that go beyond explaining terms in the statute are legislative requiring notice and comment rule making).   Defendant sought to create regulations with the force and effect of law that would create this new regulatory burden.

151.   Congress evaluated both: DOL's regulations which allowed H-1B visas to be issued without proof of specific work assignments; and, Defendant's proposed regulation prohibiting H-1B filings without such evidence.   Congress adopted and codified the Department of Labor's regulatory approach, allowing employers to file H-1B petitions without specific and non-speculative work assignments.

152.   Congress rejected Defendant's competing approach.   Congress' choice is clear, and statutory language is unambiguous: Title 8, Section 1182(n)(2)(C)(iv) (allowing employers to hire H-1B visa holders even if there is no work to perform) strips Defendant of the ability to create and enforce the specific and non-speculative work assignment requirement. *See United States v. Home Concrete & Supply, LLC*, 566 U.S. at 487(clear statutory text constricts agency discretion to create rules).

153.   Defendant declares that this unlawful legislative requirement is mandatory, binding, and explicitly states that evidence of specific and non-speculative work assignments is required at the time of filing an H-1B petition.  *See Elec. Privacy Info. Ctr. V. US Dept. of Homeland Security,* 653 F.3d at 6 (binding language requires notice and comment rulemaking).

154.   Defendant has published PM 602-0157, informing its adjudicators and the public that evidence of specific and non-speculative work assignments is required at the time an H-1B petition is filed.  This policy is facially binding on Plaintiff's member companies.  *GE v. EPA*, 290 F.3d at 382-83 (agency statements that indicate requirements are binding are legislative rules and require notice and comment rule making).

155.   Defendant's internal appellate body, the AAO, publishes its decisions for the public to read and discern agency rules and requirements.  The AAO denies H-1B petitions that fail to meet this requirement, citing to the 1998 Proposed Rule. Defendant is applying this requirement in a binding and consistent manner.  *See GE v. EPA*, 290 F.3d at 382-83 (agency rules that are applied in a binding manner are legislative rule requiring notice and comment rule making).

156.   Defendant's requirement is facially binding and applied in a binding manner.  Defendant's rule meets both alternate criteria for an unlawfully created legislative rule.   *GE v. EPA*, 290 F.3d at 382-83.

157.   Defendant's rule is a drastic departure from the statutory scheme and is a major rule, requiring statutory authorization.  Defendant lacks authority to enforce this evidentiary burden and legislative rule without statutory authority and notice and comment rule making. *See United States Telecom Ass'n v. FCC,* 855 F. 3d 381, 420 (D.C. Cir. 2017) (significant departures from existing regulatory scheme requires statutory authorization).

158.   This Court must invalidate Defendant's unlawfully created legislative rule.

## COUNT III

159.   Congress created maximum approval periods of nonimmigrant visas. It gave Defendant authority to create regulations to approve nonimmigrant visas for periods of time less than the maximum. Properly promulgated regulations are required to support any approval period short of the statutory maximum.  *See United States v. Home Concrete & Supply, LLC*, 566 U.S. at 487(clear statutory text constricts agency discretion).

160.   Defendant created regulations limiting the maximum approval period of H-1B visas.

161.   Defendant did not create regulations allowing it to approve H-1B visas for periods: 1. less than that requested by an employer on the LCA; 2. less than the

remaining time on an employee's six-year cap; or, 3. less than one year for employees who have an approved immigrant visa.

162.   Defendant's statutory authority to create H-1B approval periods is predicated on compliance with notice and comment rule making.  Defendant has not created regulations authorizing its current actions.  *See United States v. Home Concrete & Supply, LLC*, 566 U.S. at 487.

163.   Defendant's PM 602-0157, at Pg. 6., proclaimed it has the authority to *sua sponte* approve H-1B petitions, without regard to the regulation, for any period it deems appropriate.  *See GE v. EPA*, 290 F.3d at 382-83 (agency statements creating binding rules require notice and comment).

164.   Defendant's adjudication of Plaintiff's member's H-1B petitions shows the rule is applied in a binding manner.  *See GE v. EPA*, 290 F.3d at 382-83. Approval Notices, Appx. 27-39.  Defendant has created a binding rule in violation of the APA and INA.  Defendant's rule meets both of the alternate criteria for an unlawfully created legislative rule.  *See GE v. EPA*, 290 F.3d at 382-83.

165.   Without complying with notice and comment rule making, Defendant may not create new durations for H-1B visas or create rules giving itself discretion to *sua sponte* determine approval periods.

166.   This Court must declare unlawful this practice and enter an order enjoining Defendant from: *sua sponte* approving H-1B petitions for durations shorter

than that requested by an employer on the LCA; less than the remaining time on an

employee's six-year cap; or less than the authorized period for those H-1B

employees with approved immigrant visa petitions.

## V. Prayer For Relief

WHEREFORE, Plaintiff prays that this Court:

A. Declare Defendant's itinerary regulation at 8 C.F.R. § 214.2(h)(2)(i)(B) is *ultra vires*, or otherwise in violation of the Immigration and Nationality Act.

B. Enjoin Defendant from enforcing the itinerary regulation at 8 C.F.R. § 214.2(h)(2)(i)(B).

C. Declare Defendant's requirement that employers must provide evidence of a specific and non-speculative work assignment at the time of filing an H-1B visa petition is a legislative rule requiring notice and comment rule making.

D. Enjoin Defendant from forcing H-1B employers to provide evidence of specific and non-speculative work assignments at the time they file an H-1B visa petition.

E. Declare Defendant's rule allowing it to *sua sponte* approve H-1B visas for periods less than that requested by employers or less than the remaining time on an employee's statutory maximum requires notice and comment rule making.

F. Enjoin Defendant from *sua sponte* approving H-1B visas for periods less than that requested by employers or less than the remaining time on an employee's statutory maximum

G. Grant attorneys' fees and costs pursuant 28 U.S.C. §2412, 28 U.S.C. §1920, Fed. R. Civ. P. 54(d) and other authority; and,

H. Grant any other relief the Court deems appropriate and just.


_s/Jonathan D. Wasden_
Jonathan D. Wasden
MSB 100653
9427 Goldfield Ln
Burke, VA 22015
Phone: (703) 216-8148
Fax: (703) 8422-8273