**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **ITSERVE ALLIANCE, INC.,** *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:18-cv-02350-RMC** |
| | ) | |
| **UNITED STATES CITIZENSHIP** | ) | |
| **AND IMMIGRATION SERVICES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S PARTIAL MOTION TO DISMISS**

## TABLE OF CONTENTS

STATUTORY AND REGULATORY BACKGROUND ................................................. 5

    I.     Regulatory Requirements ................................................................. 6

    II.    Process of Adjudication ................................................................. 7

    III.   PM-602-0157 (Memorandum) ....................................................... 10

ARGUMENT ............................................................................................... 13

    I.     As a matter of law, Count 1 challenging the 1991 itinerary regulation found at 8 C.F.R. § 214.2(h)(2)(i)(B) should be dismissed because it is time barred and because the regulation is not *ultra vires*. ...................................... 13

         A.  ITSERVE's claim in Count 1 is barred by the six-year statute of limitations. ........................................................................... 14

         B.  Alternatively, ITSERVE's claim in Count 1 fails, as a matter of law, because it is contrary to the statutory language of the INA. ...................... 17

    II.    As a matter of law, this Court should dismiss Counts 2 and 3 of the Complaint because PM-602-0157 is a guidance memorandum and not a legislative rule. ................................................................................. 22

    III.   In addition, Count 3 fails as a matter of law because the plain meaning of the regulatory phrase "up to three years," does not mean that USCIS has no discretion to grant H-IB petitions for periods of the less than three years. 28

CONCLUSION ............................................................................................. 30

CERTIFICATE OF SERVICE ......................................................................... 32

# TABLE OF AUTHORITIES

*Alaska Cmty. Action on Toxics v. EPA*,
    943 F. Supp. 96 (D.D.C. 2013) .................................................................................. 16

*All Aboard Worldwide Couriers, Inc. v. Attorney General*,
    8 F. Supp. 2d 379 (S.D.N.Y. 1998) ............................................................................. 9

*Am. Iron & Steel Inst. v. U.S. E.P.A.*,
    886 F.2d 390 (D.C. Cir. 1989) ............................................................................. 16, 17

*Am. Min. Cong. v. MSHA*,
    995 F.2d 1106 (D.C. Cir. 1993) .................................................................................. 23

\* *Broadgate Inc., v. USCIS*,
    730 F. Supp. 2d 240 (D.D.C. 2010) .............................................................. 22, 23, 25

*Catawba Cty., N.C. v. E.P.A.*,
    571 F.3d 20 (D.C. Cir. 2009) .............................................................................. 25, 26

*Center for Auto Safety v. NHTSA*,
    452 F.3d 798 (D.C. Cir. 2006) .......................................................................... passim

*Charter Commc'ns, Inc. v. F.C.C.*,
    460 F.3d 31 (D.C. Cir. 2006) ..................................................................................... 17

*Chrysler Corp. v. Brown*,
    441 U.S. 281 (1979) ................................................................................................... 13

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. Fed. Deposit Ins. Corp.*,
    132 F. Supp. 3d 98 (D.D.C. 2015) ............................................................................. 25

*Coal River Energy, LLC v. Jewell*,
    751 F.3d 659 (D.C. Cir. 2014) .......................................................................... 14, 24

*Defensor v. Meissner*,
    201 F.3d 384 (5th Cir. 2000).............................................................................. 19, 30

*Dunn-McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.*,
    112 F.3d 1283 (5th Cir. 1997)..................................................................................... 15

*EG Enterprises, Inc. v. DHS*,
    467 F. Supp. 2d 728 (E.D. Mich. 2006) ...................................................................... 6

*Funeral Consumer Alliance, Inc. v. FTC*,
  481 F.3d 860 (D.C. Cir. 2007) ........................................................................ 13, 23

\* *Harris v. F.A.A.*,
  353 F.3d 1006 (D.C. Cir. 2004) ............................................................................. 14

\* *Indep. Cmty. Bankers of Am. v. Bd. of Governors of Fed. Reserve Sys.*,
  195 F.3d 28 (D.C. Cir. 1999) ..................................................................... 14, 15, 21

*Lujan v. Nat'l Wildlife Fed'n*,
  497 U.S. 871 (1990) ............................................................................................... 15

*Mendoza v. Perez*,
  754 F.3d 1002 (D.C. Cir. 2014) ............................................................................. 14

*Nat'l Ass'n of Home Builders v. Norton*,
  415 F.3d 8 (D.C. Cir. 2005) ................................................................................... 28

*Nat'l Ass'n of Reversionary Prop. Owners v. Surface Transp. Bd.*,
  158 F.3d 135 (D.C. Cir. 1998) ............................................................................... 16

*Nat. Res. Def. Council v. Nuclear Regulatory Comm'n, ("NRDC v. NRC")*,
  666 F.2d 595 (D.C. Cir. 1981) ......................................................................... 15, 25

*Next Generation Tech., Inc. v. Johnson*,
  328 F. Supp. 3d 252 (S.D.N.Y. 2017) ..................................................................... 7

*Norton v. S. Utah Wilderness Alliance*,
  542 U.S. 55 (2004) ................................................................................................. 15

*Outdoor Amusement Bus. Ass'n. Inc. v. Dep't of Homeland Sec.*,
  334 F. Supp. 3d 697 (D. Md. 2018) ....................................................................... 16

\* *P. & V. Enters. v. U.S. Army Corps of Eng'rs*,
  516 F.3d 1021 (D.C. Cir. 2008) ....................................................................... 16, 17

*Perez v. Mortg. Bankers Ass'n*,
  135 S. Ct. 1199 (2015) ........................................................................................... 13

*Public Citizen v. Nuclear Regulatory Commission ("Public Citizen")*,
  91 F.2d 147 (D.C. Cir. 1990) ................................................................................. 17

*RCM Tech., Inc. v. U.S. Dep't of Homeland Sec.*,
   614 F. Supp. 2d. 39 (D.D.C. 2009) ............................................................ 13, 22, 24

*Sendra Corp. v. Magaw*,
   111 F.3d 162 (D.C. Cir. 1997) .................................................................... 16, 17

\* *Valorem Consulting Group LLC v. USCIS, et al.*,
   No. 13-1209-CV-W-ODS, 2015 WL 196304 (W.D. Mo. Jan. 15, 2015)........................ passim

*Whitman v. Am. Trucking, Assoc.*,
   531 U.S. 457 (2001) ............................................................................... 18

## **STATUTES**

5 U.S.C. § 553(b)(A)................................................................................ 16

5 U.S.C. § 704 ...................................................................................... 15

8 U.S.C. § 1101(a)(15) .............................................................................. 5

8 U.S.C. § 1101(a)(15)(H)(i)(b) ................................................................... 5, 6

8 U.S.C. § 1103(a)(1) ............................................................................... 6

8 U.S.C. § 1182(n) ........................................................................... passim

8 U.S.C. § 1182(n)(1)(G) ........................................................................ 8, 18

8 U.S.C. § 1182(n)(2)(vii)(I) ....................................................................... 27

8 U.S.C. § 1184 .................................................................................... 18

8 U.S.C. § 1184(a) ............................................................................... 3, 18

8 U.S.C. § 1184(a)(1) .............................................................................. 19

8 U.S.C. § 1184(c)(1) ........................................................................ passim

8 U.S.C. § 1184(g)(1)(A) ........................................................................... 7

8 U.S.C. § 1184(g)(5)(A)-(B) ....................................................................... 7

8 U.S.C. § 1184(g)(5)(C) ........................................................................... 7

8 U.S.C. § 1184(g)(4) .................................................................................................... 29

8 U.S.C. § 1184(i)(l)(A)-(B) ........................................................................................... 6

28 U.S.C. § 2401 ..................................................................................................... 14, 17

Pub. L. 101–649 ........................................................................................................... 1, 5

Pub. L. No. 106-313 ....................................................................................................... 10

Pub. L. No. 107-269 ................................................................................................... 6, 18

Pub. L. No. 107-273 ................................................................................................... 1, 10

## **REGULATIONS**

8 C.F.R. § 2.1 ................................................................................................................... 6

8 C.F.R. § 103.2(b)(1) ................................................................................................. 7, 21

8 C.F.R. § 214.2(h) ......................................................................................................... 21

8 C.F.R. § 214.2(h)(1)(i) ................................................................................................... 6

8 C.F.R. § 214.2(h)(2)(i)(A) ........................................................................................ 6, 14

8 C.F.R. § 214.2(h)(2)(i)(B) .................................................................................... passim

8 C.F.R. § 214.2(h)(4) ....................................................................................................... 5

8 C.F.R. § 214.2(h)(4)(i)(B)(2) ......................................................................................... 9

8 C.F.R. § 214.2(h)(4)(ii) ................................................................................................ 10

8 C.F.R. § 214.2(h)(4)(iii) ................................................................................................. 6

8 C.F.R. § 214.2(h)(4)(iii) ................................................................................................. 6

8 C.F.R. § 214.2(h)(4)(iv)(A) ............................................................................................ 6

8 C.F.R. § 214.2(h)(4)(iv)(B) ............................................................................................ 7

8 C.F.R. § 214.2(h)(8)(ii)(A)(1) ...................................................................................... 10

8 C.F.R. § 214.2(h)(9)(i) ................................................................................................ 8

8 C.F.R. § 214.2(h)(9)(i)(B) ........................................................................................... 8

8 C.F.R. § 214.2(h)(9)(ii)(A) ......................................................................................... 28

8 C.F.R. § 214.2(h)(9)(iii) .............................................................................................. 28

8 C.F.R. § 214.2(h)(9)(iii)(A)(1) .......................................................................... 28, 29, 30

8 C.F.R. § 214.2(h)(15)(ii)(B)(1) .................................................................................. 10

20 C.F.R. § 655.705(b) .................................................................................................. 20

20 C.F.R. § 655.715 ..................................................................................................... 8, 9

20 C.F.R. § 655.731(a) .................................................................................................... 8

56 Fed. Reg. 31 ............................................................................................................. 24

56 Fed. Reg. 31553 ............................................................................................... 5, 8, 21

56 Fed. Reg. 61111 ......................................................................................................... 7

56 Fed. Reg. 61121 ......................................................................................................... 7

63 Fed. Reg. 30419 ................................................................................................... 27, 30

65 Fed. Reg. 80 .............................................................................................................. 20

70 Fed. Reg. 23775 .......................................................................................................... 8

73 Fed. Reg. 15389 .......................................................................................................... 8

## **OTHER**

*  *Contracts and Itineraries Requirements for H-1B Petitions Involving Third-Party Worksites,*
   ("Memorandum") 2018 WL 1082015 (Feb. 22, 2018) ...................................... passim

*Matter of Vojtisek-Lom,*
   ARB No. 07-097, 2009 WL 2371236 (DOL Adm. Rev. Bd, July 30, 2009) ............................ 9

In this action, Plaintiff ITSERVE Alliance, Inc. ("ITSERVE"), a trade association that represents information technology companies, raises claims regarding the H-1B visa program that allows U.S. employers to import and temporarily employ foreign workers in specialty occupations. In the Amended Complaint, ITSERVE adds six additional companies as plaintiffs. These six companies seek to challenge a series of decisions by U.S. Citizenship and Immigration Services ("USCIS") approving, in part, petitions for H-1B workers. ITSERVE has not filed any H-1B petitions itself.

ITSERVE argues that USCIS, and its predecessor Immigration and Naturalization Service ("INS"), have been encroaching on the role of the Department of Labor ("DOL") with respect to this nonimmigrant visa program since 1991 when the INS promulgated the regulation found at 8 C.F.R. § 214.2(h)(2)(i)(B) known as the "itinerary regulation." This regulation requires employers who petition USCIS to import foreign workers in the H-1B classification and indicate that services will be performed in more than one location, to provide evidence of an itinerary with the dates and locations of the services to be performed by the H-1B workers. The 1991 regulation carried forward, without alteration, an earlier regulation that predated the 1990 amendments to the Immigration and Nationality Act ("INA"), which effectively established the H-1B specialty occupation visa program. Dkt. 6 at ¶¶ 128-130, 199.

ITSERVE's Complaint contains four counts. In Count 1, ITSERVE launches a facial challenge to the authority of INS to promulgate the 1991 itinerary regulation arguing that the Immigration Act of 1990, Pub. L. 101–649, 104 Stat. 4978 (Nov. 29, 1990), deprived the INS of the authority to issue such regulations or to take steps to determine whether there is in fact an employer-employee relationship between the sponsoring U.S. employer and its employee, the

temporary foreign worker holding H-1B classification for that company.  *See id.* at ¶¶ 33, 198, 200, 203.

In Counts 2 and 3, ITSERVE challenges a recent USCIS guidance memorandum (PM-602-0157), *Contracts and Itineraries Requirements for H-1B Petitions Involving Third-Party Worksites* (February 22, 2018) that interprets the 1991 itinerary regulation and provides guidance to USCIS adjudicators as to the types of evidence that may be used to satisfy eligibility requirements, consistent with USCIS's longstanding overarching goals to protect the wages and working conditions of both U.S. and H-1B nonimmigrant workers and prevent fraud or abuse.[1] Plaintiffs allege that this guidance memorandum is a *de facto* legislative rule and that USCIS was required to use notice and comment rulemaking to promulgate it.  *See id*. at ¶ 210.

Specific to Count 3 is ITSERVE's challenge to the portion of the USCIS guidance memorandum reflecting USCIS's practice of granting H-1B petitions for a validity period of less than three years.  *See id*. at ¶ 220.  ITSERVE argues that the regulation's use of the phrase "up to three years" means that USCIS has no discretion, but instead must grant an H-1B petition for a three–year period unless the petitioner makes a specific request in the petition forms for a shorter period of time.  *Id*. at ¶¶ 215-220.  Thus, according to ITSERVE, USCIS must approve an H-1B petition for a worker in a specialty occupation for a validity period of three years even if the petitioning employer cannot establish eligibility for that entire period of time (e.g. the evidence fails to establish that the petitioner and the worker will maintain a valid employer-employee relationship and the worker will actually be working in a specialty occupation for the full three years).  *Id*. at ¶ 215.

---

[1]  Available at https://www.uscis.gov/sites/default/files/USCIS/Laws/Memoranda/ 2018/2018-02-22-PM-602-0157-Contracts-and-Itineraries-Requirements-for-H-1B.pdf.

In Count 4, six businesses, Dextro Software Systems, Inc., Valsatech Corp., Saxon Global, Inc., Vinsys Information Technology, Inc., ERP Analysts, Inc., and Consultadd, Inc. collectively appear to challenge 29 separate decisions issued by USCIS.  These six companies allege that they filed H-1B petitions that USCIS approved, but only for a portion of the requested validity period such that USCIS effectively denied the remainder of the requested validity period. *Id*.  These six companies argue these decisions are arbitrary and capricious.  *Id*. at ¶ 223.

USCIS moves to dismiss Counts 1, 2, and 3 of Amended Complaint as a matter of law and argues that ITSERVE should be dismissed as a party to this action.  With respect to Count 1, ITSERVE's challenge to the 1991 itinerary regulation is barred by the six-year statute of limitation and, more significantly, its position is contradicted by the statutory language granting broad authority to INS, now USCIS, over establishing the terms and conditions for admitting H-1B workers into the United States to engage in temporary employment.  *See* 8 U.S.C. §§ 1184(a); (c)(1).  Congress was presumptively aware of the existing itinerary regulation in 1990 when it amended the INA and there is no indication that Congress intended to eliminate or alter it.

Counts 2 and 3 fail as a matter of law because USCIS's guidance memorandum is, on its face, not a *de facto* legislative rule and, thus, does not constitute final agency action under the Administrative Procedure Act ("APA").  Because the guidance memorandum merely provides adjudicators with guidance and does not create any binding norms, it does not constitute a discrete, final agency actions subject to judicial review under the APA.

Count 3 is also defective because even if ITSERVE could challenge USCIS's understanding of what the phrase "up to three years" means in the context of the itinerary regulation, its claim would still fail as a matter of law because USCIS's understanding of the phrase is correct.  The plain meaning of the phrase "up to three years" means that USCIS can

3

grant an H-1B petition for a period of *up to* three years, but that it is not required to do so, based on the petition's record evidence.  *See Valorem Consulting Group LLC v. USCIS et al.*, No. 13-1209-CV-W-ODS, 2015 WL 196304, *1 (W.D. Mo. Jan. 15, 2015) (upholding a decision by USCIS granting an H-1B petition for one year rather than the three years requested).  Thus, Count 3 necessarily fails as a matter of law.

Count 4 involves claims by six separate companies challenging 29 separate final agency actions.  USCIS respectfully requests that this Count decide the purely legal questions raised in Counts 1, 2, and 3 before addressing Count 4.  If the Court agrees with the district court's decision in *Valorem Consulting Group* and finds that USCIS may properly approve an H-1B petition for less than three years, such a determination would significantly impact all of Plaintiffs' claims in Count 4.  In contrast, if the Court decides, as a matter of law, that ITSERVE is correct in Count 3 and that the phrase "up to three years" means that USCIS must approve an H-1B petition for three years and not a shorter period of time based on the evidence presented in the petition submitted to the agency, then necessarily all 29 decisions would be remanded back to USCIS for re-evaluation.  For these reasons, it is not appropriate to decide the individualized claims in Count 4 at this time.

## STATUTORY AND REGULATORY BACKGROUND

The INA provides for the classification of qualified temporary worker ("nonimmigrant") aliens who are coming to the United States to perform services for a sponsoring "employer" in a "specialty occupation."  8 U.S.C. § 1101(a)(15)(H)(i)(b).  These aliens are classified as "H-1B" nonimmigrants.[2]

The Immigration Act of 1990 introduced the "specialty occupation" requirement into the INA.  *See* Pub. Law No. 101-649, § 205(c) (Nov. 29, 1990).  Prior to those 1990 statutory changes, the H-1B classification applied to "aliens of distinguished merit and ability" which included aliens who are members of the professions (except for certain physicians) and aliens who are prominent in their field.  *See* 56 Fed. Reg. 31553 (INS) (proposed rule) (July 11, 1991). The statutory amendments created the H-1B specialty occupation classification for workers who previously qualified for H-1 as a member of the professions, and created new O and P nonimmigrant classifications for aliens who may have previously qualified under the H-1 prominence category.  *Id*. at 31554.  In the proposed rule, the INS explained that the "definition and standards for an alien in a specialty occupation mirror the Service's current requirements for aliens who are members of the professions" and the proposed rule amended regulations at 8 C.F.R. § 214.2(h)(4) that existed at the time for the H-1 distinguished merit and ability classification to update the regulations and implement the 1990 statutory changes.  *Id*.

---

[2] The "H-1B" designation derives from the section of the INA providing for this category of temporary workers, namely, section 101(a)(15)(H)(i)(b) of the Act.  Nonimmigrants are aliens who are admitted to the United States for a temporary period of time for a specific purpose, e.g., to visit, study or work.  *See* 8 U.S.C. § 1101(1)(a)(15).

Consistent with the Immigration Act of 1990, "specialty occupation" means an occupation that requires a "theoretical and practical application of a body of highly specialized knowledge, and [the] attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States." 8 U.S.C. § 1184(i)(1)(A)-(B).  Petitioners seeking to employ foreign nationals under the H-1B program must demonstrate, among other things, that the proffered position is a specialty occupation, and that the alien beneficiary qualifies for the specialty occupation position.  *See* 8 C.F.R. § 214.2(h)(4)(iii) and (h)(4)(iv)(A); *see also EG Enterprises, Inc. v. DHS*, 467 F. Supp. 2d 728, 734 (E.D. Mich. 2006).

With limited exceptions, only United States "employers" may seek classification of aliens as H-1B nonimmigrants. *See* 8 U.S.C. § 1101(a)(15)(H)(i)(b); *see also* 8 C.F.R. §§ 214.2(h)(1)(i) and 214.2(h)(2)(i)(A).  The determination of whether a petitioner qualifies as an "employer" has been delegated to the Secretary of Homeland Security, *compare* 8 U.S.C. § 1103(a)(1) *with* § 1184(c)(1), which has been sub-delegated to USCIS, *see* 8 C.F.R. § 2.1; Secretary of Homeland Security's Delegation Order No. 0150, § 2(W) (June 5, 2003).[3]

## I. Regulatory Requirements

The regulations implementing the H-1B specialty occupation provisions of the Immigration Act of 1990 provide that, with limited exceptions, only United States employers may file H-1B petitions.  *See* 8 C.F.R. § 214.2(h)(2)(i)(A). The regulations, interpreting the

---

[3] Under the Homeland Security Act of 2002, the Immigration and Naturalization Service (INS) was abolished. *See* Pub. Law No. 107-269, § 471 (Nov. 25, 2002). The adjudication of nonimmigrant petitions, including H-1B petitions, was transferred from the Commissioner of INS (and the Attorney General) to the Director of the U.S. Citizenship and Immigration Services, an agency within the Department of Homeland Security. *Id.* at § 451(b).

reference to "importing employer" in 8 U.S.C. § 1184(c)(1), define "United States employer" as follows:

> United States employer means a person, firm, corporation, contractor, or other association, or organization in the United States which:
>
> > (1) Engages a person to work within the United States;
> >
> > (2) Has an *employer-employee relationship* with respect to employees under this part, as indicated by the fact that it may hire, pay, fire, supervise, or otherwise control the work of any such employee; and
> >
> > (3) Has an Internal Revenue Service Tax identification number.

*Temporary Alien Workers*, 56 Fed. Reg. 61111, 61121 (INS) (final rule) (Dec. 2, 1991) (codified at 8 C.F.R. § 214.2(h)(4)(ii)) (emphasis added).

Applying common law principles, adjudicators look to a number of factors to determine whether there is an employer-employee relationship with respect to the H-1B program. *See, e.g., Next Generation Tech., Inc. v. Johnson*, 328 F. Supp. 3d 252, 268 (S.D.N.Y. 2017). This assessment is also relevant in evaluating whether the beneficiary will be employed in a "specialty occupation," *see* 8 C.F.R. § 214.2(h)(4)(iv)(B), which the petitioner must establish at the time of filing, *see* 8 C.F.R. § 103.2(b)(1).

**II. Process of Adjudication**

By statute, the number of aliens who may be accorded initial H-1B nonimmigrant status is limited to 65,000 for each fiscal year, with certain exemptions. *See* 8 U.S.C. § 1184(g)(1)(A)(vii).[4] Because the H-1B program has been oversubscribed in recent years, USCIS instituted a

---

[4] A nonimmigrant "employed (or has an offer of employment) at" institutions of higher education, governmental research organizations, and non-profit research organizations is exempt from the statutory limit. *See* 8 U.S.C. § 1184(g)(5)(A)-(B). The statute also provides an exemption for 20,000 new H-1B visas each fiscal year for foreign nationals who have earned a master's or higher degrees from U.S. institutions of higher education. *See* 8 U.S.C. § 1184(g)(5)(C).

lottery system for processing H-1B petitions in a fair and orderly manner beginning in 2005. *See* 73 Fed. Reg. 15389, 15390-91 (USCIS) (Mar. 24, 2008); 70 Fed. Reg. 23775, 23783 (USCIS) (May 5, 2005) and 73 Fed. Reg. 15389, 15390-91 (USCIS) (Mar. 24. 2008).[5]

Before filing a petition with USCIS to classify an alien beneficiary as an H-1B nonimmigrant, the petitioner must file a Labor Condition Application (LCA) with the Department of Labor (DOL) making certain attestations regarding the wages and working conditions of prospective H-1B nonimmigrants. *See* 8 U.S.C. § 1182(n).

When filing an LCA, the petitioner must agree, among other things, to pay a required wage that is at least the actual wage paid to similarly employed U.S. workers or the prevailing wage for the occupational classification in the area of intended employment, whichever is higher, for the entire period of authorized employment. *See* 20 C.F.R. § 655.731(a). For purposes of an LCA filing, DOL defines "employment relationship" "as determined under the common law, under which the key determinant is the putative employer's *right to control* the means and manner in which the work is performed." 20 C.F.R. § 655.715 (emphasis added).

Once the petitioner receives a certified LCA from DOL[6], the petitioner may file an H-1B petition (Form I-129) with USCIS along with supporting documentation to establish eligibility

---

[5] The first day on which petitioning employers may file H-1B petitions is six months ahead of the employment start date. *See* 8 C.F.R. § 214.2(h)(9)(i)(B). Therefore, a petitioner requesting an employment start date of October 1, the first day of the Government's fiscal year, may file the H-1B petition as early as April 1 of the current fiscal year.

[6] DOL does not make a determination regarding whether the entity that filed the LCA is an employer, which is consistent with the limitations Congress placed on DOL's authority as reflected in 8 U.S.C. § 1182(n)(1)(G)("The Secretary of Labor shall review such an application only for completeness and obvious inaccuracies. Unless the Secretary finds that the application is incomplete or obviously inaccurate, the Secretary shall provide the [certified LCA] within 7 days of the date of the filing of the application.").

including, but not limited to, evidence showing that the beneficiary will be employed in a specialty occupation position and evidence regarding the beneficiary's qualifications.

A certified LCA issued by DOL is not a determination that the petitioner's job otherwise qualifies under the statute for purposes of classifying a proposed alien beneficiary as an H-1B nonimmigrant. *See* C.F.R. § 214.2(h)(4)(i)(B)(2) and 20 C.F.R. § 655.715 (as discussed under the definition of "specialty occupation"). The certified LCA simply establishes the petitioner's responsibility for complying with certain prevailing wage and working condition requirements. *See* 8 U.S.C. § 1182(n); *see also, Matter of Vojtisek-Lom*, ARB No. 07-097, 2009 WL 2371236 (DOL Adm. Rev. Bd, July 30, 2009).

After the petitioner's H-1B petition, certified LCA, and other supporting documents have been received and accepted for processing, USCIS adjudicators make a case-by-case, fact-sensitive determination of whether the petitioner, its proffered position, and the beneficiary qualify under the H-1B program. *See* 8 C.F.R. § 214.2(h)(9)(i); *see also, All Aboard Worldwide Couriers, Inc. v. Attorney General*, 8 F. Supp. 2d 379, 382 (S.D.N.Y. 1998) ("The statutory and regulatory framework of the H–1B visa obliges the INS to examine the interplay among the petitioner, the job, and the industry").

USCIS adjudicators are instructed that "each case must be thoroughly reviewed to determine jurisdiction, presence of required supporting documentation, existence of relating files and basic statutory eligibility." USCIS ADJUDICATOR'S FIELD MANUAL § 10.3(a).[7] Moreover, USCIS looks to the totality of the circumstances in each case to determine, among other things, whether the petitioner has or will have an employer-employee relationship with the

---

[7] The ADJUDICATOR'S FIELD MANUAL is available at
https://www.uscis.gov/ilink/docView/AFM/HTML/AFM/0-0-0-1.html.

intended alien beneficiary and whether the petitioner has established that the beneficiary will be employed in a specialty occupation for the entirety of the requested validity petition.  If eligibility is only established for some, but not all, of the period of time requested by the petitioner, USCIS may still approve the petition but limit the validity period to the period of time that eligibility has been established.

After evaluating an H-1B petition for a specialty occupation worker, if the USCIS adjudicator makes a favorable determination, the petitioner's H-1B petition is approved with a validity period "up to three years."  *See* 8 C.F.R. § 214.2(h)(8)(ii)(A)(1).  Significantly, a petitioner may request an extension of the petition approval and an associated request for an extension of stay for the H-1B nonimmigrant for up to an additional three years.  *See* 8 C.F.R. § 214.2(h)(15)(ii)(B)(1).  However, foreign workers are generally limited to a six-year period in H-1B status, *see* 8 C.F.R. § 214.2(h)(13)(iii), except under specific statutorily defined exceptions, *see* American Competitiveness in the Twenty-first Century Act of 2000 (AC21), Pub. L. No. 106-313, § 106(a) (2000), *as amended by* Pub. L. No. 107-273, § 11030A (2002) (providing for an extension of stay beyond the six year limit for H-1B nonimmigrants who are the beneficiaries of certain employment-based immigrant petitions).

### III. PM-602-0157 (Memorandum)

On February 22, 2018, USCIS issued a guidance memorandum, PM-602-0157 ("Memorandum"), to agency adjudicators providing guidance on the contracts and itineraries requirements for H-1B petitions involving third-party worksites.  *See* U.S. Citizenship and Immigration Services, Policy Memorandum, *Contracts and Itineraries Requirements for H-1B*

10

*Petitions Involving Third-Party Worksites,* ("Memorandum") 2018 WL 1082015 (Feb. 22, 2018) (Exhibit 1).[8]

USCIS noted in the Memorandum that while "third-party arrangements may be a legitimate and frequently used business model," scenarios involving a third-party worksite "generally make it more difficult to assess whether the petitioner has established that the beneficiary will actually be employed in a specialty occupation or that the requisite employer-employee relationship will exist."  Memorandum at 3.

The Memorandum "provides clarifying guidance regarding the contract and itineraries that petitioners submit in third-party worksite cases." *Id.* at 4. The Memorandum further notes that:

> Based on the agency's experience in administering the H-1B program, USCIS recognizes that significant employer violations--such as paying less than the required wage, benching employees (not paying workers the required wage while they wait for projects or work) and having employees perform non-specialty occupation jobs--may be more likely to occur when petitioners place employees at third-party worksites. Therefore, in order to protect the wages and working conditions of both U.S. and H-1B nonimmigrant workers and prevent fraud or abuse, USCIS policy should ensure that officers properly interpret and apply the statutory and regulatory requirements that apply to H-1B petitions involving third-party worksites.

*Id.* at 4.

The Memorandum then addresses the types of evidence petitioners can submit, when a beneficiary will be placed at one or more third-party worksites, to establish that the H-1B beneficiary will be employed in a specialty occupation, and to demonstrate the petitioning employer will maintain an employer-employee relationship with the beneficiary for the duration of the requested validity period.  *Id.* at 4-5.  The Memorandum also reiterates that "8 C.F.R.

---

[8] Available at https://www.uscis.gov/sites/default/files/USCIS/Laws/Memoranda/2018/2018-02-22-PM-602-0157-Contracts-and-Itineraries-Requirements-for-H-1B.pdf.

§ 214.2(h)(2)(i)(B) requires petitioners to file an itinerary with a petition that requires services to be performed in more than one location," and that there is no exemption from this regulatory requirement. *Id.* at 6.

The itinerary should detail when and where the beneficiary will be performing services, and a more detailed itinerary can help to demonstrate that the petitioner has non-speculative employment for the beneficiary in a specialty occupation. *See id.* The Memorandum notes that if an H-1B petitioner is applying to extend H-1B employment for a beneficiary who was placed at one or more third-party worksites during the course of past employment with the same petitioner, that petitioner should also establish that the H-1B requirements have been met for the entire prior approval period. *Id.* at 7.

Finally, the Memorandum states regarding its use:

> This memorandum is intended solely for the training and guidance of USCIS personnel in performing their duties relative to the adjudication of applications and petitions. It is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law or by any individual or other party in removal proceedings, in litigation with the United States, or in any other form or manner.

*Id.* (emphasis added).

## STANDARD OF REVIEW

The APA authorizes judicial review of "[a]gency action made reviewable by statute and *final agency action* for which there is no other adequate remedy in a court." 5 U.S.C. § 704 (emphasis added). An agency action must be final in order to be judicially reviewable. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990) ("When, as here, review is sought . . . under the general review provisions of the APA, the 'agency action' in question must be 'final agency action'."). Absent a discrete and final agency action, federal courts cannot review an ongoing program or policy. *See Norton v. S. Utah Wilderness Alliance,* 542 U.S. 55, 64 (2004)

("The limitation to discrete agency action precludes the kind of broad, programmatic attack we rejected in *Lujan*[.]").  Agency statements of policy without the force of law do not constitute a final agency action and are not reviewable under the APA.  *See Center for Auto Safety v. NHTSA*, 452 F.3d 798, 809 (D.C. Cir. 2006); *see, e.g., RCM Tech., Inc. v. U.S. Dep't of Homeland Sec.*, 614 F. Supp. 2d. 39, 46-47 (D.D.C. 2009) ("Courts stand ready to entertain appeals from specific, concrete agency adjudications.  But absent that, courts have neither the resources nor the expertise to superintend agency policy-makers").

Agencies are only required to use notice and comment procedures when promulgating substantive or legislative rules with the force and effect of law.  *See Chrysler Corp. v. Brown*, 441 U.S. 281, 301-20 (1979).  The APA exempts from its notice and comment requirements "interpretive rules, general statements of policy, or rules of agency organization procedure, or practice." 5 U.S.C. § 553(b)(A); *see also Perez v. Mortg. Bankers Ass'n,* 135 S. Ct. 1199, 1204 (2015).  Statements of policy clarifying an agency position, *id.*, and interpretive statements supplying crisper and more detailed guidelines than the rule being interpreted are exempt from the APA's notice and comment rulemaking requirements. *See Funeral Consumer Alliance, Inc. v. FTC*, 481 F.3d 860, 863-64 (D.C. Cir. 2007).

## ARGUMENTS

**I.      As a matter of law, Count 1 challenging the 1991 itinerary regulation found at 8 C.F.R. § 214.2(h)(2)(i)(B) should be dismissed because it is time barred and because the regulation is not *ultra vires*.**

Count 1 of the Amended Complaint is a facial challenge to USCIS's itinerary regulation. *See* Dkt. 6 at ¶¶ 33, 35-36, 198, 203.  According to ITSERVE, USCIS, and its predecessor INS, have been encroaching on the authority of DOL since 1991 by requiring that H-1B petitioners provide evidence of an itinerary with the dates and locations of the services to be performed by

the beneficiary of the H-1B visa petition.   ITSERVE further alleges that the 1990 amendments

to the INA limited the roles of INS, and its successor, USCIS, in the H-1B process to

determining if a position qualifies as a specialty occupation and nothing more.  *Id*. at ¶ 199.  In

light of these purported changes in legislation, ITSERVE argues that the itinerary regulation (8

C.F.R. § 214.2(h)(2)(i)(B)) – which carried forward without modification an earlier regulation –

has been invalid since it was promulgated in 1991 and should be enjoined.  *Id*.

### A.  ITSERVE's claim in Count 1 is barred by the six-year statute of limitations.

As a threshold matter, Count 1 of the Amended Complaint challenging the 1991 itinerary

regulation is brought under the APA and is, therefore, subject to the six-year statute of

limitations found in 28 U.S.C. § 2401.  *See Mendoza v. Perez*, 754 F.3d 1002, 1018 (D.C. Cir.

2014).  The limitation period under 28 U.S.C. § 2401 begins to run "on the date of the final

agency action." *Harris v. F.A.A.*, 353 F.3d 1006, 1010 (D.C. Cir. 2004).

Given that the itinerary regulation has now been in place for 27 years, it is entirely too

late for ITSERVE to now file a facial challenge to it.  In its Amended Complaint, Plaintiffs

identified two exceptions to the statute of limitations that have been recognized by the D.C.

Circuit.  *See* Dkt. 6. at 34-41.  Neither applies here.

First, the D.C. Circuit recognized that a party can bring an "as-applied" challenge outside

the six-year period provided the challenge is a substantive challenge (i.e., that the agency

exceeded the scope of its statutory authority).  *See Indep. Cmty. Bankers of Am. v. Bd. of

Governors of Fed. Reserve Sys.*, 195 F.3d 28, 34 (D.C. Cir. 1999) (holding "that a party *against

whom a rule is applied* may, at the time of *application*, pursue substantive objections to the rule,

including claims that an agency lacked the statutory authority to adopt the rule . . .") (emphasis

added); *see, e.g., Coal River Energy, LLC v. Jewell*, 751 F.3d 659, 664 (D.C. Cir. 2014)

(applying this holding and explaining that a statue "does not preclude a challenge *when the government actually applies its regulation against a party*") (emphasis added).  To be clear, this exception is narrow and the six-year statute of limitations would still bar an "as-applied" procedural challenge regarding the method used in promulgating the regulation (such as the agency failed to provide adequate notice or failed to adequately respond to comments).  *See Indep. Cmty. Bankers of Am.*, 195 F.3d at 34; *Coal River Energy*, 751 F.3d at 664.[9]

Here, ITSERVE admits that its challenge to 8 C.F.R. § 214.2(h)(2)(i)(B) is facial, not "as-applied."  *See* Dkt. 6 at ¶¶ 34-36.  As a result, this exception to the six-year statute of limitations is not applicable.  *See Indep. Cmty. Bankers of Am.*, 195 F.3d at 34.  Moreover, although ITSERVE could have brought a timely facial challenge to the regulation at any time up to 1997, it necessarily cannot bring an "as-applied" challenge because this regulation is not being applied to ITSERVE.   *See Dunn-McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.*, 112 F.3d 1283, 1288 (5th Cir. 1997) ("It is a tautology that Dunn–McCampbell may not challenge the 9B regulations as applied until the Park Service applies the regulations to Dunn–McCampbell") (case cited by ITSERVE, Dkt. 6 at ¶ 37).

The second exception identified by ITSERVE, the reopener doctrine, is also inapplicable.

_____

[9]   The D.C. Circuit has explained the importance of this limitation on bringing actions:

> This time limit, like other similar limitations, serves the important purpose of imparting finality into the administrative process, thereby conserving administrative resources and protecting the reliance interests of regulatees who conform their conduct to the regulations. . .  Indeed, the implications of the rule of law urged by the NRDC are staggering, for its logic knows no bounds; such a rule would permit procedural challenges to be brought twenty, thirty, or even forty years after the regulations were promulgated. No greater disregard for the principle of finality could be imagined.

*Nat. Res. Def. Council v. Nuclear Regulatory Comm'n ("NRDC v. NRC")*, 666 F.2d 595, 602 (D.C. Cir. 1981).

*See* Dkt. ¶¶ 39, 40.  Under this doctrine, an otherwise stale challenge can proceed but only "when

the agency . . . by some new promulgation creates the opportunity for renewed comment and

objection . . ." *P. & V. Enters. v. U.S. Army Corps of Eng'rs*, 516 F.3d 1021, 1024 (D.C. Cir.

2008).  The D.C. Circuit has cautioned that "when an agency invites debate on some aspects of a

broad subject . . . it does not automatically reopen all related aspects including those already

decided[,]" *Nat'l Ass'n of Reversionary Prop. Owners v. Surface Transp. Bd*., 158 F.3d 135, 142

(D.C. Cir. 1998), and that the reopener doctrine is not a license for a petitioner to comment on

matters other than those actually at issue and then sue on the grounds that the agency has re-

opened the issue.  *Am. Iron & Steel Inst. v. U.S. E.P.A.*, 886 F.2d 390, 398 (D.C. Cir. 1989).

Thus, the fact that an agency comments on or invokes a prior regulation is not enough to restart

the six-year limitation period.  *See, e.g., Sendra Corp. v. Magaw*, 111 F.3d 162, 167 (D.C. Cir.

1997) (explaining that the fact that an agency "discusses the merits at length when it denies a

request for reconsideration does not necessarily mean the agency has reopened the proceeding");

*Alaska Cmty. Action on Toxics v. EPA*, 943 F. Supp. 96, 103 (D.D.C. 2013) (finding that the

limitations period for challenging an EPA policy published in 1984 was not restarted by the

publication of periodic product schedules based on that 1984 policy); *Outdoor Amusement Bus.

Ass'n. Inc. v. Dep't of Homeland Sec*., 334 F. Supp. 3d 697, 713-14 (D. Md. 2018) (holding that

publishing of and requesting comments on other aspects of the H-2B labor certification rules in

2015 did not reopen policy announced in 2008 that made labor certifications mandatory).

Here, it is true that USCIS's Administrative Appeals Office ("AAO") has issued a non-

precedential decision within the last six years regarding the 1991 itinerary regulation and USCIS

has recently provided additional informal guidance as to how adjudicators should apply this

regulation.  But these actions fall well short of what a plaintiff is required to show for the

reopener doctrine to apply because they do contain any indication that USCIS intended to provide an opportunity for renewed comment on the 1991 itinerary regulation. *See P. & V. Enters.*, 516 F.3d at 1024. If the law were otherwise, an agency would not be able to publicly discuss its regulations without subjecting itself to renewed litigation on its regulations. Accordingly, the fact that the AAO referenced an earlier regulation in one of its non-precedent decisions, or the fact that USCIS provided guidance on how the regulation should be read, is not enough to trigger the reopener doctrine. *See Sendra Corp.*, 111 F.3d at 167; *Am. Iron & Steel Inst.*, 886 F.2d at 398.[10]

In sum, the six year statute of limitation, 28 U.S.C. § 2401, bars ITSERVE from challenging the 1991 itinerary regulation.

**B. Alternatively, ITSERVE's claim in Count 1 fails, as a matter of law, because it is contrary to the statutory language of the INA.**

The fundamental flaw with ITSERVE's theory is that there is no statutory language in the INA that supports its position that the 1991 itinerary regulation is *ultra vires*. To the contrary,

---

[10] In the Amended Complaint, ITSERVE cites *Public Citizen v. Nuclear Regulatory Commission ("Public Citizen")* for support of its contention that the reopener doctrine applies in this case. *See* Dkt. 6 at ¶ 39 citing 901 F.2d 147, 150-151 (D.C. Cir. 1990). However, the D.C. Circuit has subsequently clarified that *Public Citizen* should not be read to stand for the proposition that the substantive invalidity of a previously adopted regulation can always be asserted upon review of a later rulemaking on the same general subject even though the statutory time period for review has expired. *Charter Commc'ns, Inc. v. F.C.C.*, 460 F.3d 31, 38 (D.C. Cir. 2006). To the contrary, the D.C. Circuit explained:

> [W]e expressly stated in *Public Citizen* that the appropriate way in which to challenge a longstanding regulation on the ground that it is violative of statute is ordinarily by filing a petition for amendment or rescission of the agency's regulations, and challenging the denial of that petition. Indeed, it is absurd to suppose that every time an agency requests parties to compare the regulatory status quo with specific proposed alternatives, all facets of the status quo become fair game for new challenges.

*Id*. (citations and quotations omitted).

Congress conferred broad authority on INS, now USCIS, with respect to establishing the terms

and conditions for the admission of nonimmigrant (temporary) foreign workers, including

specifically H-1B workers.  *See* 8 U.S.C. §§ 1184(a); (c)(1).  ITSERVE simply does not address

this statutory authority and instead focuses almost exclusively on 8 U.S.C. § 1182(n), which

governs the Labor Condition Application process administered by the DOL.  Congress has made

clear that DOL has no role in the adjudication of H-1B visa petitions or the admission of foreign

nationals into the United States.  *See* 8 U.S.C. § 1182(n)(1)(G) ("The Secretary of Labor shall

review [a Labor Condition Application] only for completeness and obvious inaccuracies").

There simply is no statutory language in 8 U.S.C. § 1182(n) suggesting that INS, now USCIS, is

no longer permitted to require an itinerary from the sponsoring U.S. employer to confirm where

and when the H-1B worker will be employed while present in the United States based on that

employer's petition, and whether that is consistent with the claims that the petitioner will

maintain a valid employer-employee relationship with the beneficiary and that the beneficiary

will be employed in a specialty occupation.

Congress "does not alter the fundamental details of a regulatory scheme in vague terms or

ancillary provisions – it does not, one might say, hide elephants in mouseholes."  *Whitman v.*

*Am. Trucking, Assoc.,* 531 U.S. 457, 468 (2001).  Had Congress' intent been to limit USCIS's

role as ITSERVE suggests, Congress would have clearly stated this intent in the statutory

provisions regarding the H-1B petition process.  *See* 8 U.S.C. § 1184.  This is especially the case

given that 8 U.S.C. § 1184 delegates broad discretion to the Secretary of the Department of

Homeland Security,[11] to determine the terms and conditions for admitting nonimmigrants.

---

[11]   As noted earlier, under the Homeland Security Act of 2002, Congress abolished INS.  *See*
Pub. Law No. 107-296, § 471 (Nov. 25, 2002).  Congress generally transferred responsibility for
the administration of the immigration laws to the Secretary of Homeland Security. *Id.* at § 402.

Specifically 8 U.S.C. § 1184(a)(1) states, "The admission to the United States of any alien as a nonimmigrant shall be for such time and under such conditions as the Attorney General [now Secretary of DHS] may by regulations prescribe . . ."  In light of this clear delegation of authority by Congress, courts should be very reluctant in finding implicit limitations on USCIS's authority in this area.

In addition, 8 U.S.C. § 1184(c)(1) specifically requires INS, now USCIS, to approve an employer's nonimmigrant visa petition before the visa stamp is granted (enabling the foreign worker to travel to the United States and seek admission) and states that the "question of importing any alien as a nonimmigrant . . . in any specific case or specific cases shall be determined by the Attorney General [now USCIS] . . ."  It is impossible to square this sweeping statutory language ("in any specific case . . . . shall be determined") with ITSERVE's position that Congress limited USCIS's role in the H-1B process to determining if a position qualifies as a specialty occupation.

It is true that 8 U.S.C. § 1184(c)(1) directs DHS and USCIS to consult with "appropriate agencies" before allowing employers to import foreign workers temporarily.  But this directive does not divest DHS or USCIS of its authority to determine and define who is an "employer" in the H-1B program or to promulgate regulations to ensure that the imported worker will actually work in a specialty occupation while in the United States.  *Cf. Defensor v. Meissner*, 201 F.3d 384, 387-88 (5th Cir. 2000) (discussing USCIS's role in the H-1B process and the need to avoid an outcome in which workers could obtain an H-1B visa "for any occupation, no matter how unskilled, through the subterfuge of an employment agency . . . [a] result . . . completely opposite

---

Congress also transferred the responsibility for adjudicating nonimmigrant visa petitions to USCIS.  *Id.* at § 451(b).

19

the plain purpose of the statue and regulations, which is to limit H1-B visas to position which require specialized experience and education to perform").

As noted above, ITSERVE's argument rests entirely on a separate statutory provision, 8 U.S.C. § 1182(n), which only pertains to the Labor Condition Application (LCA) process. The LCA is a mandatory part of the H-1B petition process. *See* 8 U.S.C. § 1184(c)(1) (Congress has explicitly bestowed upon USCIS the authority to determine "the question of importing any alien as [an H-1B temporary worker] . . . after consultation with appropriate agencies of the Government," which includes the DOL).

The purpose of the LCA is "to protect U.S. workers' wages and eliminate any economic incentive or advantage in hiring temporary foreign workers." *See Labor Condition Applications and Requirements for Employers Using Nonimmigrants on H-1B Visas in Specialty Occupations and as Fashion Models; Labor Certification Process for Permanent Employment of Aliens in the United States*, 65 Fed. Reg. 80,110-11 (DOL) (Dec. 20, 2000). It also serves to protect H-1B workers from wage abuses. While the DOL certifies the LCA unless it contains obvious errors or inaccuracies, USCIS determines whether the LCA's content corresponds with the H-1B petition. *See* 20 C.F.R. § 655.705(b) ("DHS determines whether the petition is supported by an LCA which corresponds with the petition. . . ."). After receiving the employer's H-1B petition, certified LCA, and other supporting documents, USCIS adjudicators make a case-by-case, fact-sensitive determination of whether, among other things, the petitioner and its job opportunity qualify for approval under the H-1B program.

The LCA does not provide adequate information for USCIS to make a determination that the position offered is a specialty occupation, nor does the LCA contain sufficient information for USCIS to determine exactly where the beneficiary will be performing services at any given

time when the petition indicates that services will be performed in more than one location.  The itinerary, along with other evidence pertaining to the actual work the beneficiary will perform, helps USCIS determine whether the petitioner has met its burden of proof and shown that the beneficiary will actually be employed in a specialty occupation, and that they are not coming to the U.S. based on speculative employment or work that doesn't qualify as a specialty occupation. The itinerary also helps USCIS identify when the beneficiary will be working at a particular location, which is needed so that USCIS can perform site visits consistent with its authority to prevent fraud and abuse in the H-1B program.  As such, submission of the itinerary when the petition indicates that services will be performed in more than one location is necessary for the petitioning employer to demonstrate eligibility for the requested benefit and for the duration of the requested benefit, as required by 8 C.F.R. § 103.2(b)(1).

Accordingly, USCIS is the agency tasked with ensuring that all H-1B requirements are met, including whether or not the petitioner meets the definition of "employer" for the H-1B program.  *See* 8 U.S.C. § 1184(c)(1).  Neither 8 U.S.C. § 1182(n) nor any other statute gives DOL sole authority to define and control who is an "employer" under the H-1B program, or over the terms and conditions for the admission of H-1B foreign workers into the United States.[12]

---

[12]  For the sake of completeness, USCIS notes that, to the extent, ITSERVE contends that INS never provided a rationale for the itinerary rule when it promulgated the rule back in 1991, this type of procedural challenge is barred by the statute of limitation.  *See Indep. Cmty. Bankers of Am.*, 195 F.3d at 34; *Coal River Energy*, 751 F.3d at 664; *NRDC v. NRC*, 666 F.2d at 602. Moreover, USCIS notes that the explanation appears at 56 Fed. Reg. 31,553.  INS stated that the proposed rule implements the Immigration Act of 1990, contains technical amendments reflecting the agency's operating experience under the H and L nonimmigrant classifications, and seeks to conform agency policy to congressional intent as it relates to the various classifications.  *See id*.  The preamble further noted that the "proposed rule amends the Service's regulations at 8 CFR 214.2(h) to reflect all of the changes made by Public Law 101-649."  By retaining the itinerary requirement, along with various other H-1 regulations that existed at the time, and amending them to conform the rules to the statutory amendments, INS determined

II.    **As a matter of law, this Court should dismiss Counts 2 and 3 of the Complaint because PM-602-0157 is a guidance memorandum and not a legislative rule.**

In Counts 2 and 3 of the Complaint, ITSERVE challenges a USCIS guidance memorandum (PM-602-0157) attached, for the Court's convenience, as Exhibit 1.[13]  However, a guidance memorandum does not constitute final agency action under the APA.  *See Center for Auto Safety*, 452 F.3d at 809; *see, e.g., RCM Tech.,* 614 F. Supp. 2d. at 46-47.  In order to avoid dismissal on this basis, ITSERVE contends that although USCIS has labelled the Memorandum as a guidance document that interprets a regulation, it is a *de facto* legislative rule with the force of law and, as a result, USCIS was required to use notice and comment rulemaking to promulgate it.  *See* Dkt. 6 at ¶¶ 204, 207-208, 217, 219.  ITSERVE is incorrect.

The D.C. Circuit has noted that the inquiry into (i) whether a memorandum constitutes final agency action, and (ii) whether a memorandum constitutes a *de facto* rule or binding norm that could not properly be promulgated absent notice and comment rulemaking are "alternative ways" of viewing the same question.  *Center for Auto Safety*, 452 F.3d at 806; *see, e.g., Broadgate Inc.*, *v. USCIS*, 730 F. Supp. 2d 240, 244 (D.D.C. 2010) ("[I]f the Memorandum is an interpretative rule or general policy statement . . . it is not final agency action subject to judicial review under the APA . . .").  Thus, as a threshold matter, this Court must determine whether the Memorandum constitutes a *de facto* legislative rule that required notice and comment

---

based on its operating experience that the itinerary requirement was still needed and relevant in the H-1B context.  This explanation is more than sufficient.

[13]  With respect to Count 2, ITSERVE seeks a declaration that USCIS's requirement that employers must provide evidence of a specific and non-speculative work assignment at the time of filing an H-1B visa petition is a legislative rule requiring notice and comment rulemaking and should be enjoined.  *See* Dkt. 1 "Prayer for Relief" ¶¶ C, D.  With respect to Count 3, ITSERVE seeks a declaration that USCIS's "rule allowing it to *sua sponte* approve H-1B visas for periods less that that requested by employers or less than the remaining time on an employee's statutory maximum requires notice and comment rule making" and should be enjoined.  *Id*. at ¶¶ E, F.

rulemaking.  If not, the challenged Memorandum is not subject to judicial review and Counts 2 and 3 (which challenge the Memorandum) must be dismissed as a matter of law.

There is no one clear test for determining whether a guidance memorandum is a *de facto* legislative rule.  However, the case law in this circuit is instructive.  The D.C. Circuit has explained that an agency's intent to exercise legislative power may be shown where the agency issues a rule that effectively amends the previously adopted legislative rule, either by repudiating it or because the two rules are irreconcilable.  *See Funeral Consumer Alliance*, 481 F.3d at 863-64 (explaining that the task of courts is to determine "whether the agency has 'repudiated' or 'supplemented' one of its rules. . ."); *see, e.g., Broadgate*, 730 F. Supp. 2d at 244-45 (holding that a memorandum regarding the H-1B program "is intended to provide only guidance for application of the Regulation, not to establish independent binding rules").  The D.C. Circuit has further explained that an agency action does not become an amendment merely because it supplies "crisper and more detailed lines than the authority being interpreted." *Funeral Consumer Alliance*, 481 F.3d at 863 *citing Am. Min. Cong. v. MSHA*, 995 F.2d 1106, 1107 (D.C. Cir. 1993).  If it were otherwise, "no rule could pass as an interpretation of a legislative rule unless it were confined to parroting the rule or replacing the original vagueness with another." *Id*.[14]

Moreover, where the guidance document does not cabin the agency's discretion, it is not a legislative rule.  *Center for Auto Safety*, 452 F.3d at 806, 809 (explaining that if a policy is

---

[14]  To be sure, "deciding whether an interpretation is an amendment of a legislative rule is different from deciding the substantive validity of that interpretation." *Am Min. Cong.*, 995 F.2d at 1113.  In other words, "[a]n interpretive rule may be sufficiently within the language of a legislative rule to be a genuine interpretation and not an amendment, while at the same time being an incorrect interpretation of the agency's statutory authority."  *Id*.

"permissive' or if officials are "free to exercise their discretion" pursuant to the policy, then "rights or obligations" have not been determined); *see, e.g*., *RCM Tech*., 614 F. Supp. 2d at 46 (noting that, in the context of the H-1B program, purported policy that "gives adjudicators *permission* to require master's degrees" but which does not "*require* adjudicators to require master's degrees in all cases" is not binding and hence not final agency action) (emphasis original).

In *Center for Auto Safety*, the D.C. Circuit concluded that the agency's policy at issue did not rise to the level of a binding norm because the policy memorandum merely sets forth several factors to be used as guidelines for determining whether a manufacture could limit its recall of defective automobiles to certain regions of the United States.  452 F.3d at 803.  Although the agency's letter encouraged automakers to comply with the guidelines, the policy did not cabin the agency's discretion in assessing proposed recalls in specific cases.  *Id*. at 809.  The guidelines may have had practical consequences on the automaker's decisions to comply with the regional recall policy, but these practical effects were insufficient to constitute final agency action.  *Id*. at 811.

Here, USCIS's Memorandum, which provides clarifying guidance to adjudicators regarding existing rules requiring an H-1B petitioner to establish that the beneficiary will be employed in a specialty occupation and to submit a detailed itinerary if the petition indicates the beneficiary will perform services in more than one location, is interpretative and does not constitute a binding legal norm.  As indicated in the section titled "Scope," the Memorandum "applies to and shall be used to guide determinations by all USCIS officers adjudicating Form I-129 H-1B petitions."

The Memorandum explains that "this policy memorandum provides clarifying guidance regarding the contracts and itineraries that petitioners submit in third party worksite cases." Memorandum at 4.  The Memorandum then addresses, through a non-exhaustive list, the types of evidence petitioners can submit, when a beneficiary will be placed at one or more third-party worksites, to establish that the H-1B beneficiary will be employed in a specialty occupation, and to demonstrate the employer will maintain an employer-employee relationship with the beneficiary for the duration of the requested validity period.  *Id.* at 4-5.  Finally, the Memorandum expressly states that it "is intended solely for the training and *guidance* of USCIS personnel in performing their duties relative to the adjudication of applications and petitions," and that "*[i]t is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law*." *Id.* at 7 (emphasis added).

As a threshold matter, this language is a clear expression of the agency's intention that the Memorandum would serve as a guidance document and was not intended to create any binding norms.  *See Center for Auto Safety*, 452 F.3d at 806 (explaining that the language used by the agency "is an important consideration" in determining whether the agency has issued a binding norm or only an unreviewable statement of policy); *see also*, *Catawba Cty., N.C. v. E.P.A.*, 571 F.3d 20, 33 (D.C. Cir. 2009) (explaining that the challenged memorandum was not a legislative rule because, among other things, it was "not binding of its face"); *Broadgate*, 730 F. Supp. 2d at 245 (emphasizing that the language in an H-1B memorandum states on its face that it was only intended to provide guidance).[15]

---

[15] *See, e.g., Cmty. Fin. Servs. Ass'n of Am., Ltd. v. Fed. Deposit Ins. Corp.,* 132 F. Supp. 3d 98, 120 (D.D.C. 2015) (discussing this holding and noting that "the agency's characterization of the documents is one of the relevant factors for consideration" even though this alone "does not totally insulate the documents from having legal consequences"); *cf. Nat'l Ass'n of Home*

In addition, the Memorandum leaves considerable discretion to agency adjudicators to determine on a case-by-case basis whether the submitted evidence for an H-1B petition demonstrates an employer-employee relationship, and the beneficiary's employment in a "specialty occupation" under the regulations.  *See* Memorandum at 4-6.  The Memorandum itself does not dictate a specific result, require specific types of evidence, or impose any new requirements.  *See generally id.*  Since the Memorandum does not cabin the discretion of agency adjudicators, but provides only guidance relating to the non-binding exercise of that discretion, it is not a legislative rule.  *See Center for Auto Safety*, 452 F.3d at 809.

While the Memorandum notes 8 C.F.R. § 214.2(h)(2)(i)(B) requires that petitioners file an itinerary with a petition that requires services to be performed in more than one location, *see* Memorandum at 6, that requirement obviously derives from the regulation, not the guidance document.  *See, e.g., Am. Min. Cong.,* 995 F.2d at 112 (concluding that challenged agency action was an interpretative rule because the "regulations themselves" contain the reporting requirement); *Catawba Cty.*, 571 F.3d at 34 (explaining that challenged language in a memorandum did not create a requirement, it simply reiterated an existing requirement).

Where, as here, the agency does not compel the regulated public to take certain actions, the guidance document is properly characterized as a general policy statement.  The Memorandum only guides adjudicators in exercising their discretion, and does not compel the regulated public to submit any specific type of evidence or documentation, aside from the requirements already set forth in the governing regulations.  *See generally* Memorandum. USCIS's guidance does not preclude the use of certain types of documents or other evidence for

---

*Builders v. Norton*, 415 F.3d 8, 14 (D.C. Cir. 2005) ("An agency's past characterization of its own action, while not decisive, is entitled to respect in a finality analysis").

the purpose of demonstrating that the beneficiary will be employed in a specialty occupation, and

that the H-1B petitioner will maintain an employer-employee relationship for the duration of the

requested validity period.  Rather the Memorandum simply provides interpretative guidance to

USCIS adjudicators as to the types of evidence that may typically be submitted by the petitioner

to show that the beneficiary will actually be employed in a specialty occupation.  This is

consistent with historical practice and does not constitute a *de facto* legislative rule.[16]

---

[16] In Count 2, ITSERVE also references a 1998 proposed rule.  *See* Dkt. 6 at ¶¶ 141, 204 citing 63 Fed. Reg. 30419, Proposed Rule (June 4, 1998).  While the 1998 proposed rule stated that the itinerary regulation was primarily intended to address scenarios in the entertainment industry, it was not exclusively intended to address such cases, or only apply to such cases.  *See* 63 Fed. Reg. 30419.  Specifically, the 1998 proposed rule acknowledged the broader purpose of the itinerary requirement: "The regulation was designed to ensure that aliens seeking H nonimmigrant status have an actual job offer and are not coming to the United States for the purpose of seeking employment following arrival in this country."  *See id*.

The 1998 proposed rule did not acknowledge that the itinerary regulation was *ultra vires* or otherwise inapplicable to H-1B petitions.  To the contrary, the proposal retained the itinerary requirement but simply proposed to modify when it applies, what is needed to satisfy the itinerary requirement, and alternative evidence that could be submitted if the employer does not know the worker's complete itinerary at the time of filing.  *See* 63 Fed. Reg. 30419.

ITSERVE also references 8 U.S.C. § 1182(n)(2)(vii)(I).  *See* Dkt. 6 at ¶¶ 155, 156. Contrary to ITSERVE's assertion, this provision does not condone or otherwise authorize the approval of a petition despite the lack of qualifying work.  Rather, the provision is a narrow one, intended to clarify that failing to pay the required wage because an H-1B worker becomes unproductive following admission into the United States (i.e. subsequent to USCIS petition approval) due to a lack of work is explicitly prohibited and would constitute a violation of the employer's attestation to DOL and related obligation to pay the required wage to the beneficiary. *See* https://www.congress.gov/106/crpt/srpt260/CRPT-106srpt260.pdf. ("The legislation clarified that it is a violation of the attestation set out in INA § 212(n)(1)(A) for an employer to engage in the practice colloquially known as ''benching,'' under which an employer brings over an H–1B worker on the promise that the worker will be paid a certain wage, but then pays the worker only a fraction of that wage because the employer does not have work for the H–1B worker to do.").

That prohibition, however, does not in any way address eligibility for the classification or mandate USCIS to approve petitions that fail to establish that the beneficiary will be employed in a specialty occupation.

For the foregoing reasons, the Memorandum is an interpretative document and, thus,

USCIS was not required to use notice-and-comment rulemaking before issuing it.  As a result,

Counts 2 and 3 of the Complaint should be dismissed as a matter of law.

**III.    In addition, Count 3 fails as a matter of law because the plain meaning of the regulatory phrase "up to three years," does not mean that USCIS has no discretion to grant H-1B petitions for periods of less than three years.**

There is an additional and independent reason why Count 3 should be dismissed as a

matter of law.  In Count 3, ITSERVE challenges USCIS's interpretation of 8 C.F.R.

§ 214.2(h)(9)(iii) governing the validity period for a H-1B petition.   In relevant part, this

regulation states:

> An approved petition classified under section 101(a)(15)(H)(i)(b) of the Act for an alien in a specialty occupation shall be valid for a period of **up to three years** but may not exceed the validity period of the labor condition application.

8 C.F.R. § 214.2(h)(9)(iii)(A)(1) (emphasis added).

The Memorandum provides guidance to USCIS adjudicators on how this provision

should be applied.  In relevant part, it states:

> While an H-1B petition may be approved for up to three years, USCIS will, in its discretion, generally limit the approval period to the length of time demonstrated that the beneficiary will be placed in non-speculative work and that the petitioner will maintain the requisite employer-employee relationship, as documented by contracts, statements of work, and other similar types of evidence. 8 CFR 214.2(h)(9)(ii)(A) and (iii).

Memorandum at 7.  This guidance is consistent with USCIS's understanding that given the

connection between the H-1B petition and employment in specialty occupation, and given that

the petition must be made by the employer, USCIS evaluates the length of time the alien is

"going to work in that specialty occupation for that employer."  *See Valorem Consulting Group*,

---

Moreover, this provision of the INA has no bearing on the question of whether the Memorandum constitutes an impermissible *de facto* rule, the actual legal question at issue in Count 2.

2015 WL 196304 at *1 (upholding a decision by USCIS, in accordance with its practice, to grant an H-1B petition for one year rather than the three years requested).  If the petition and supporting materials only establish that the beneficiary will be employed in a specialty occupation for less than three years, the petition will generally be granted for the period of time the worker is actually going to work in a specialty occupation.  *Id*.[17]

In Count 3 of its Amended Complaint, ITSERVE challenges this position.  According to ITSERVE, the regulatory phrase "up to three years" means that USCIS has no discretion to grant a petition for a validity period of less than three years.  Dkt. 6. at ¶¶ 215, 216, 219.  Rather, as ITSERVE claims, USCIS has a mandatory duty to grant a validity period of three years, unless the petitioner requests a shorter period of time or if granting a petition would exceed the six-year statutory cap found in 8 U.S.C. ¶ 1184(g)(4).  *Id*. "Prayer for Relief" at ¶ F (requesting an order enjoining "Defendant from *sua sponte* approving H-1B visas for period less than that requested by employers or less than the remaining time on an employee's  statutory maximum").  Thus, according to ITSERVE, USCIS is required to grant an H-1B petition for a worker in a specialty occupation for a period of up to three years even if the petitioner has not shown that the beneficiary will be working a specialty occupation for the full three years.  *See* Dkt. 6 at ¶¶ 215-220.  But this is not the case.

Under the plain language of 8 C.F.R. § 214.2(h)(9)(iii)(A)(1), the phrase "up to three years" does not mean that USCIS is required to approve a petition for "three years" (unless a shorter period is requested).  Rather, the phrase "up to three years" connotes a degree of

---

[17]  The existence of the *Valorem Consulting* decision issued by a district court in January 2015, refutes ITSERVE's allegation USCIS's practice of "limiting H-1B validity periods" began in 2017.  *See* Dkt. 6 at ¶ 11.  As illustrated by the *Valorem Consulting* decision, USCIS's practice of limiting the validity period based on the evidence provided by petitioners clearly predates the Memorandum that is being challenged in this action.

discretion.  USCIS may grant a petition for a period of three years, but it is not required to do so.

*See, e.g., Valorem Consulting Group*, 2015 WL 196304 at *1 (entering summary judgment in

favor of USCIS on this basis).  Any other reading of 8 C.F.R. § 214.2(h)(9)(iii)(A)(1) would put

it at odds with the overall statutory and regulatory scheme governing the H-1B program by

requiring USCIS to approve H-1B petitions for specialty occupation workers even if eligibility

has not been established for that entire period of time or any period of time for that matter (e.g.

the petitioner only establishes that the beneficiary will be employed in a specialty occupation for

three months, despite requesting a petition approval for three years).  *See id.* at *1 & 3 ("USCIS'

primary concern is the extent to which" the employer establishes that the beneficiary "would be

working in a specialty occupation *and* how long he would be doing so.  The statutes and

regulations establish that this is of paramount concern") (emphasis original); *see also, Defensor*,

201 F.3d at 387-88 (discussing the purpose of the statutory and regulatory scheme).

In sum, ITSERVE's challenge to USCIS's understanding of the phrase "up to three

years" fails as a matter of law.

## CONCLUSION

WHEREFORE, USCIS respectfully requests that this Court dismiss Counts 1, 2, and 3 of

the Amended Complaint, dismiss ITSERVE as a party to this action, and provide USCIS with

such further and additional relief as is appropriate.

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director

GLENN M. GIRDHARRY
Assistant Director

By: _s/ Aaron S. Goldsmith_
Aaron S. Goldsmith
Senior Litigation Counsel
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 532-4107
Email: aaron.goldsmith@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that this document(s) filed through the CM/ECF system will be sent

electronically to the registered participants.  There are no unregistered participants.

_s/ Aaron S. Goldsmith_
AARON S. GOLDSMITH
Senior Litigation Counsel