**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **ITSERVE ALLIANCE, INC.,** *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:18-cv-02350-RMC** |
| | ) | **(Lead case for consolidated briefing)** |
| **UNITED STATES CITIZENSHIP** | ) | |
| **AND IMMIGRATION SERVICES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**GOVERNMENT'S SUPPLEMENTAL FILING IN SUPPORT OF ITS CROSS-
MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

1.　　It is not appropriate to order discovery as to whether the 2018 Guidance
　　　Memorandum is a legislative rule because there are no factual disputes with respect to
　　　this question .................................................................................................................1

2.　　This Court should not address the pace at which USCIS adjudicates H-1B visa
　　　 petitions at this time ...................................................................................................11

CERTIFICATE OF SERVICE ....................................................................................................16

# TABLE OF AUTHORITIES

## CASE LAW

*Am. Hosp. Ass'n v. Price*,
  867 F.3d 160 (D.C. Cir. 2017) ........................................................................ 12, 13

*Am. Min. Cong. v. Mine Safety & Health Admin.*,
  995 F.2d 1106 (D.C. Cir. 1993) ........................................................................ 3, 4

*Arden Wood, Inc. v. USCIS*,
  480 F. Supp. 2d 141 (D.D.C. 2007) ...................................................................... 1

*Ass'n of Flight Attendants-CWA, AFL-CIO v. Huerta*,
  785 F.3d 710 (D.C. Cir. 2015) ............................................................................. 3

*Bemba v. Holder*,
  930 F. Supp. 2d 1022 (E.D. Mo. 2013 ................................................................ 12

*Biodiversity Legal Foundation v. Norton*,
  285 F. Supp. 2d 1 (D.D.C. 2003) ....................................................................... 11

*Broadgate Inc. v. U.S. Citizenship & Immigration Servs.*,
  730 F. Supp. 2d 240 (D.D.C. 2010) ...................................................................... 2

*Cabais v. Egger*,
  690 F.2d 234 (D.C. Cir. 1982) ............................................................................. 4

*Carter v. Dep't of Homeland Sec.*,
  No. 07-12953, 2008 WL 205248 (E.D. Mich. Jan. 24, 2008) ............................... 12

*Cent. Texas Tel. Co-op., Inc. v. F.C.C.*,
  402 F.3d 205 (D.C. Cir. 2005) ............................................................................. 4

*Chiayu Chang v. United States Citizenship & Immigration Servs.*,
  254 F. Supp. 3d 160 (D.D.C. 2017) ...................................................................... 3

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
  401 U.S. 402 (1971) ............................................................................................. 3

*Conservation Force, Inc. v. Jewell*,
  733 F.3d 1200 (D.C. Cir. 2013) ......................................................................... 10

ii

*Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*,
   452 F.3d 798 (D.C. Cir. 2006) ...................................................................... 2, 3, 4, 5

*Funeral Consumer Alliance, Inc. v. FTC*,
   481 F.3d 860 (D.C. Cir. 2007) ............................................................................ 3, 5

*Gen. Elec. Co. v. E.P.A.*,
   290 F.3d 377 (D.C. Cir. 2002) ................................................................................. 2

*Gray v. Office of Pers Mgmt.*,
   771 F.2d 1504 (D.C. Cir. 1985), *cert. pet. denied*, 475 U.S. 1089 (1986).............................. 10

*Hill Dermaceuticals, Inc. v. FDA*,
   709 F.3d 44 (D.C. Cir. 2013) ................................................................................... 3

*In re Barr Labs., Inc.*,
   930 F.2d 72 (D.C. Cir. 1997) .................................................................................. 12

*Indep. Equip. Dealers Ass'n v. E.P.A.*,
   372 F.3d 420 (D.C. Cir. 2004) .............................................................................. 3, 4

*Lujan v. Nat'l Wildlife Fed'n*,
   497 U.S. 871 (1990) ........................................................................................... 1, 2

*Mashpee Wampanoag Tribal Council, Inc. v. Norton*,
   336 F.3d 1094 (D.C. Cir. 2003) ............................................................................. 11

*Mass. v. EPA*,
   549 U.S. 497 (2007) ........................................................................................... 12

*Monahan v. Dorchester Counseling Ctr., Inc.*,
   961 F.2d 987 (1st Cir. 1992) ................................................................................. 12

*NLRP v. Sears, Roebuck & Co.*,
   421 U.S. 132 (1975) ............................................................................................. 6

*Norton v. Southern Utah Wilderness Alliance*,
   542 U.S. 55 (2004) ............................................................................................. 11

*OPM v. Richmond*,
   496 U.S. 414 (1990) ........................................................................................... 12

*RCM Technologies v. DHS,*
  614 F. Supp. 2d 39 (D.D.C. 2009) ................................................................. 1, 2, 4

*Ruiz-Diaz v. United States,*
  618 F.3d 1055 (9th Cir. 2010) ........................................................................ 10

*San Luis Obispo Mothers for Peace v. U.S. Nuclear Regulatory Comm'n,*
  789 F.2d 26 (D.C. Cir. 1986) .......................................................................... 5

*Sierra Club v. Mainella,*
  No. CIV.A. 04-2012 JDB, 2005 WL 3276264 (D.D.C. Sept. 1, 2005) ................... 3

*St. Croix Chippewa Indians of Wis. v. Kempthorne,*
  No. CIV. 07-2210 (RJL), 2008 WL 4449620 (D.D.C. Sept. 30, 2008) .................. 4

*Tax Analysts v. I.R.S.,*
  117 F.3d 607 (D.C. Cir. 1997) ........................................................................ 6

*Telecommunications Research Action Center v. F.C.C.,*
  750 F.2d 70 (D.C. Cir. 1984) .......................................................................... 12

*Trojan Techs., Inc. v. Pa.,*
  916 F.2d 903 (3d Cir. 199) ............................................................................. 12

*United States v. Morgan,*
  313 U.S. 409 (1941) ....................................................................................... 5

*W. Coal Traffic League v. Surface Transp. Bd.,*
  216 F.3d 1168 (D.C. Cir. 2000) ...................................................................... 12

*Yang v. Cal. Dep't of Soc. Servs.,*
  183 F.3d 953 (9th Cir. 1999) .......................................................................... 12

## ADMINISTRATIVE DECISIONS

*In re Petitioner [Identifying Information Redacted by Agency],*
  2014 WL 4114012 (AAO May 1, 2014) ........................................................... 7, 9

*In re Petitioner [Identifying Information Redacted by Agency],*
  2015 WL 1904879 (AAO April 6, 2015) ........................................................... 6, 7

*Matter of J-S-T Inc.,*
  2016 WL 3194527 (AAO May 24, 2016) .......................................................... 8

*Matter of M-*,
  2015 WL 6501464 (AAO Oct. 7, 2015)............................................................. 6, 7, 8

*Matter of S-*,
  2016 WL 1168732 (AAO March 11, 2006) ......................................................... 7, 8

## FEDERAL STATUTES

5 U.S.C. § 702 ............................................................................................................. 1

5 U.S.C. § 704 ............................................................................................................. 2

5 U.S.C. § 706(1) ...................................................................................................... 11

## FEDERAL RULES FOR CIVIL PROCUDURE

Fed. R. Civ. P. 56(d) .................................................................................................. 4

United States Citizenship and Immigration Services ("USCIS") provides the following response to the questions raised by the Court at oral argument on May 9, 2019.

As more fully set forth below, there is no need for discovery as to whether the 2018 Guidance Memorandum constitutes a legislative rule because there are no factual disputes with respect to Plaintiffs' claim seeking the invalidation of this document.  Additionally, the pace at which USCIS adjudicates H-1B visa petitions is not properly before the Court because Plaintiffs have not raised this issue in any of their pleadings or briefing.  But even if Plaintiffs did, none of them have standing to raise such a claim.  Further, even if at least one of the plaintiffs had standing to raise such a claim, it would fail as a matter of law under existing D.C. Circuit case law and for the reasons set forth in the declaration from Donald W. Neufeld, USCIS Associate Director for Service Center Operations ("SCOPS"), ("Neufeld Decl."), attached as Exh. 1, and the declaration of Carolyn Q. Nguyen, Acting Associate Center at the California Service Center ("CSC"), attached as Exh. 2.

1. **Discovery as to whether the 2018 Guidance Memorandum is a legislative rule is inappropriate because there are no factual disputes with respect to this question.**

As a general rule, judicial review under the APA is limited to discrete agency action.  5 U.S.C. § 702 ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof"); *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 890 (1990) (discussing this principle). Programmatic challenges lacking "some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him" do not qualify as agency action. *Lujan,* 497 U.S. at 891.  The Supreme Court recognized that the "case-by-case approach" is

1

"understandably frustrating," but it "remains the normal, mode of operation of the courts."  497 U.S. at 894.[1]

In addition, the challenged agency action must be "final." 5 U.S.C. § 704 (authorizing judicial review under APA of "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court").  Final agency action "must generally mark the consummation of the agency's decisionmaking process and either determine rights or obligations or result in legal consequences." *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.,* 452 F.3d 798, 800 (D.C. Cir. 2006) (quotations and citations omitted). Legislative rules are, by definition, final agency action, while interpretive rules and general policy statements are not.  *Id.* at 805–07; *see also Broadgate Inc. v. U.S. Citizenship & Immigration Servs.*, 730 F. Supp. 2d 240, 243 (D.D.C. 2010) (discussing these principles).

Here, Plaintiffs seek to sidestep *Lujan*'s prohibition on programmatic challenges by contending that USCIS' 2018 Guidance Memorandum is actually a legislative rule and thus, constitutes final agency action that should be subject to judicial review and ultimately

---

[1]  Federal judges in this District have cited *Lujan* as a basis for challenging how USCIS runs foreign worker programs.  *See, e.g., Arden Wood, Inc. v. USCIS*, 480 F. Supp. 2d 141 (D.D.C. 2007); *RCM Technologies v. DHS*, 614 F. Supp. 2d 39 (D.D.C. 2009).  In *Arden Wood*, a number of Christian Science nursing associations, challenged a purported USCIS policy of denying religious work petitions on the basis that plaintiffs were not *bona fide* religious organizations. 480 F. Supp. 2d at 145.  Plaintiffs cited instances where its petitions had been denied on these grounds, but they did not contest the individual denials.  Rather, plaintiffs sought injunctive relief regarding the purported policy.  *Id.*  The district court found that such a broad policy attack is precluded under *Lujan*, because it fails to present a justiciable case or controversy.  *Id.* at 150. Similarly, in *RCM Technologies*, plaintiffs challenged USCIS' policy of using the U.S. Department of Labor's *Occupation Outlook Handbook* to determine the minimum education requirements for physical and occupations therapists in the H-1B program.  614 F. Supp. 2d at 39.  The district court found that the plaintiffs' challenge to a USCIS adjudication policy was not reviewable and that plaintiffs were required to challenge a discrete agency action.  *Id.* at 45.

invalidated.  This Court ordered supplemental briefing on whether discovery would be appropriate under these circumstances.

Discovery of any kind under these circumstances is not appropriate.  The D.C. Circuit has explained that whether a guidance document "is a legislative rule is largely a legal, not a factual, question, turning as it does in this case primarily upon the text of the Document." *Gen. Elec. Co. v. E.P.A.*, 290 F.3d 377, 380 (D.C. Cir. 2002) (finding that the challenge to the guidance memorandum is ripe); *see generally*, *Sierra Club v. Mainella*, No. CIV.A. 04-2012 JDB, 2005 WL 3276264, at *9 (D.D.C. Sept. 1, 2005) (explaining, in the context of a challenge to a guidance memorandum, that the "regulations and documents speak for themselves . . . no discovery is appropriate").[2]  Courts examine the text of the document and ask:  (i) does the document express the agency's intention as to whether it is a legislative rule, (ii) does the document amend a prior legislative rule, and (iii) does the document leave adjudicators free to exercise their discretion pursuant to a policy?  *See Funeral Consumer Alliance, Inc. v. FTC*, 481 F.3d 860, 863-64 (D.C. Cir. 2007); *Ctr. for Auto Safety v. NHTSA*, 452 F.3d 798, 806 (D.C. Cir. 2006); *Am. Min. Cong. v. Mine Safety & Health Admin.*, 995 F.2d 1106, 1109 (D.C. Cir. 1993).[3]

---

[2]  This is consistent with fundamental principles of administrative law.  Ordinarily, judicial review under the APA is confined to "the full administrative record that was before the Secretary at the time he made his decision." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 420 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).  Thus, discovery in an APA case is generally not permitted.  *See Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 47 (D.C. Cir. 2013); *Chiayu Chang v. United States Citizenship & Immigration Servs.*, 254 F. Supp. 3d 160, 162 (D.D.C. 2017) (Bates, J.) (collecting cases).

[3]  The D.C. Circuit recognized that it "does not matter" that an interpretative rule reflects a change in how the agency interprets an existing regulation.  *Ass'n of Flight Attendants-CWA,* 785 F.3d at 713 (explaining that an agency can promulgate freely interpretative rules regardless of whether they are consistent with earlier interpretations without employing notice-and-comment rulemaking).  Agencies may also issue a policy statement explaining how the agency will enforce a statute or regulation, in other words how it will exercise its enforcement discretion.  *See id.* 716 (D.C. Cir. 2015); *see also*, *Indep. Equip. Dealers Ass'n v. E.P.A.,* 372 F.3d 420, 427 (D.C. Cir. 2004) ("We have held that we lacked authority to review claims where an agency

"[T]he mere fact that an interpretive rule may have a substantial impact does not transform it into a legislative rule." *Cent. Texas Tel. Co-op., Inc. v. F.C.C.*, 402 F.3d 205, 214 (D.C. Cir. 2005) (explaining that courts no longer use the substantial impact test to determine whether a document constitutes a legislative rule; citations and quotations omitted); *see Cabais v. Egger*, 690 F.2d 234, 237 (D.C. Cir. 1982) (reversing and explaining that "[s]imply because agency action has substantial impact does not mean it is subject to notice and comment if it is otherwise expressly exempt under the APA"). Rather, if the document interprets an existing requirement, it is an interpretative rule and, therefore, exempt from notice and comment rulemaking. *See Cabais*, 690 F.2d at 237 (recognizing that a rule may be an interpretative rule even if it "has a wide ranging effect") (citations and quotations omitted).

Here, Plaintiffs move for summary judgment seeking to invalidate the 2018 Guidance Memorandum. They are not seeking discovery or contending, under Fed. R. Civ. P. 56(d), that there are factual disputes that must be resolved before this Court can rule on whether the 2018 Guidance Memorandum constitutes a legislative rule. To the contrary, Plaintiffs indicated in their Amended Complaint that they were raising a facial challenge to the 2018 Guidance Memorandum. *See* Dkt. 6 at ¶ 208 ("This policy is facially binding on Plaintiff's member companies"). Plaintiffs' position is that the 2018 Guidance Memorandum, on its face, imposes binding requirements on H-1B petitioners. As these assertions fall squarely within the parameters of the APA, it is neither appropriate, nor necessary, for the parties to engage in

---

merely expresses its view of what the law requires of a party") ((Roberts, J.; citations and quotations omitted); *see also St. Croix Chippewa Indians of Wis. v. Kempthorne*, No. CIV. 07-2210 (RJL), 2008 WL 4449620, at *6 (D.D.C. Sept. 30, 2008) (finding that guidance memorandum is not a legislative rule because it "does not command the reviewer to deny or grant the pending application in a given circumstance"), *aff'd sub nom. St. Croix Chippewa Indians of Wis. v. Salazar*, 384 F. App'x 7 (D.C. Cir. 2010).

discovery under these circumstances.  Rather the role of this Court, under the claims being

presented in this matter, is to review the 2018 Guidance Memorandum to determine whether, on

its face, Plaintiffs' claim is correct and, if not, dismiss it as a matter of law.

Additionally, discovery into the facts surrounding the legal questions in this matter will

not aid in the resolution of any issue before the Court.  For example, discovery as to USCIS'

training materials or hiring practices will not shed any light on whether the 2018 Guidance

Memorandum reflects the agency's intention as to whether it constitutes a legislative rule, *see*

*Ctr. for Auto Safety*, 452 F.3d at 806, or whether it amends a prior legislative rule.  *See Funeral*

*Consumer Alliance*, 481 F.3d at 863-64.  Further, discovery is unnecessary to determine whether

the 2018 Guidance Memorandum imposes additional requirements on petitioners seeking H-1B

temporary workers.  A review of the 2018 Guidance Memorandum and related regulations on

their face make this plain – that the requirements discussed within the memorandum predate its

issuance in 2018.  *See Ctr. for Auto Safety*, 452 F.3d at 806, 809.

Relatedly, questions about why USCIS decided to issue the 2018 Guidance Memorandum

would not aid the Court in the resolution of any issue in this case and, moreover, are generally

not subject to judicial review.  *See United States v. Morgan,* 313 U.S. 409, 422, 429 (1941)

(explaining that it is generally "not the function of the court to probe the mental processes of the

Secretary . . . the integrity of the administrative process must be . . . respected") (citations

omitted); *see generally, San Luis Obispo Mothers for Peace v. U.S. Nuclear Regulatory*

*Comm'n*, 789 F.2d 26, 44 (D.C. Cir. 1986) (recognizing that there must be "a strong showing of

bad faith or improper behavior before inquiry into the mental processes of the administrative

decisionmaker may be made") (quotations and citations omitted).  This type of inquiry is

particularly problematic because it would necessarily implicate the deliberative process

privilege, *see NLRP v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975), and, to the extent

agency counsel was involved, the attorney-client privilege.  *See Tax Analysts v. I.R.S.*, 117 F.3d

607, 618 (D.C. Cir. 1997) (recognizing that in "the governmental context, the "client" may be the

agency and the attorney may be an agency lawyer").

To be clear, discovery is unnecessary as to whether USCIS requires H-1B petitioners to

demonstrate an employer-employee relationship or provide an itinerary for locations of H-1B

temporary workers in certain instances.  USCIS does not dispute that these requirements exist,

but instead points out that these requirements stem from the 1991 Rule, which was promulgated

using notice-and-comment rulemaking.  Because these requirements within the H-1B temporary

worker visa program have been on the books for nearly 28 years, discovery into whether USCIS,

prior to the 2018 Guidance Memorandum, required H-1B petitioners to provide evidence of an

employer-employee relationship and, where appropriate, an itinerary of where the beneficiary

will be working would serve no purpose.  These requirements stem from binding regulations that

the agency is not free to ignore.  Moreover, a survey of decisions by USCIS' Administrative

Appeals Office ("AAO"), prior to 2018, indicates that USCIS repeatedly denied H-1B petitions

that did not meet these two longstanding requirements.  *See, e.g*., *Matter of M-*, 2015 WL

6501464 at *2-7 (AAO Oct. 7, 2015) (dismissing appeal because the software business failed to

demonstrate an employer-employee relationship with the programmer analyst); *In re Petitioner*

*[Identifying Information Redacted by Agency]*, 2015 WL 1904879 at *13 (AAO April 6, 2015)

(discussing the employer-employee requirement in the context of an "IT staffing, solution, and

service company" petitioning on behalf of a system analyst and finding that the agency must

focus on the touchstone of "control" in determining whether there is an employer-employee

relationship); *In re Petitioner [Identifying Information Redacted by Agency]*, 2014 WL 4114012

*6 (AAO May 1, 2014) (finding that IT consulting business failed to provide sufficient evidence to establish an employer-employee relationship with programmer analyst); *Matter of S-,* 2016 WL 1168732 at *12 (AAO March 11, 2006) (dismissing appeal because the IT services firm petitioning on behalf of a DCNI Network Engineer failed to provide "reliable documentation corroborating the Petitioner's assertions that it supervises and controls all aspects of the Beneficiary's off-site work").

In reviewing these administrative appeal decisions, it is clear that USCIS' position was, and continues to be, that it is not enough that the petitioner merely hired the beneficiary or had an employment agreement with the beneficiary.  Rather the burden is on the petitioner to demonstrate that it has the *right to control the beneficiary.  See, e.g., Matter of S-,* 2016 WL 1168732 at *12-13 (finding that even if the Petitioner established that it would provide the beneficiary's salary and other employment benefits, this is insufficient to show that there is an employer-employee relationship); *Matter of M-*, 2015 WL 6501464 at *6-7 (finding that the mere existence of a document styled "employment agreement" was not dispositive and that petitioner failed to provide sufficient documents demonstrating the "right to control" the beneficiary); *In re Petitioner [Identifying Information Redacted by Agency]*, 2015 WL 1904879 at *14-15 ("There is a lack of evidence establishing the petitioner's right to control . . .   The petitioner failed to establish such aspects of the employment, such as who will oversee the day-to-day work of the beneficiary and who will be responsible for his performance evaluations"); *In re Petitioner [Identifying Information Redacted by Agency]*, 2014 WL 4114012 *6 (AAO May 1, 2014) (finding that "the record does not contain any agreements or contracts with the end-client . . . demonstrating that the beneficiary would be working there and who would be supervising the beneficiary at the end-client's location").

In addition, even before the 2018 Guidance Memorandum, USCIS enforced the itinerary regulatory requirement. *See, e.g., Matter of S-,* 2016 WL 1168732 at *6-7 (finding that although the petitioner submitted an itinerary on its letterhead, the AAO could not determine that the petitioner "has work for the Beneficiary that will continue through the end of the requested validity period"); *In re Petitioner* at 3 (AAO Nov. 1, 2011) (available at https://www.uscis.gov/sites/default/files/err/D2%20%20Temporary%20Worker%20in%20a%20 Specialty%20Occupation%20or%20Fashion%20Model%20(H1B)/Decisions_Issued_in_2009/A ug042009_21D2101.pdf) (Exh. 3) (explaining that IT consulting service was not relieved of its obligation of providing an itinerary simply because it does not know what projects it would assign the beneficiary).

Along similar lines, USCIS required petitioners, including IT petitioners, to provide evidence of non-speculative qualifying work in support of their H-1B petitions. *See, e.g., Matter of J-S-T Inc.*, 2016 WL 3194527 (AAO May 24, 2016) (finding that computer software consultancy service petitioning for a software engineer did not establish that the petition was filed for "definite, non-speculative work requiring the theoretical and practical application of at least a bachelor's degree level of a body of highly specialized knowledge in a specific specialty") (case previously cited);[4] *Matter of M-*, 2015 WL 6501464 at *9-10 (finding that "the record of proceeding lacks sufficient probative evidence from the end-client . . . regarding the specific duties to be performed by the Beneficiary for that company and the requirements for the position"); *In re Petitioner [Identifying Information Redacted by Agency]*, 2014 WL 4114012 at

_____

[4] The AAO noted that a petitioner is certainly permitted to change its intent with regard to "non-speculative employment, e.g. a change in duties or job location, it must nonetheless document such a material change in intent through an amended or new petition . . ." *Matter of J-S-T Inc.*, 2016 WL 3194527 at *6 n.3 citing 8 C.F.R. § 214.2(h)(2)(i)(E).

*15 (dismissing appeal and finding that the evidence submitted "fails to establish non-speculative employment" and that "there is a lack of substantive documentation regarding work for the beneficiary for the duration of the requested period"); *In re Petitioner* at 7 (AAO Aug. 4, 2009) (available at https://www.uscis.gov/sites/default/files/err/D2%20-%20Temporary%20Worker%20in%20a%20Specialty%20Occupation%20or%20Fashion%20Model%20(H-1B)/Decisions_Issued_in_2009/Aug042009_21D2101.pdf) (Exh. 4) (dismissing appeal because software development and consulting company provided no "substantive evidence . . . regarding any particular substantive work that she would perform . . .").

In sum, even prior to the 2018 Guidance Memorandum, adjudicators denied H-1B petitions in situations in which the petitioner failed to comply with the regulatory requirements and the AAO repeatedly stated that these decisions are proper.  It is certainly possible that, notwithstanding these AAO decisions, individual adjudicators at USCIS may have interpreted the regulatory requirements in a manner inconsistent with these AAO decisions or potentially not even addressed the issue of whether the H-1B petitioner met these binding requirements.  But this simply underscores why it might make sense for an agency to provide written guidance to its adjudicators regarding these requirements and provide clarification to the general public as to these longstanding requirements by issuing the 2018 Guidance Memorandum.

For these reasons, the parties engaging in discovery as to whether the agency was inconsistent in its application of the binding regulatory requirements before the issuance of the 2018 Guidance Memorandum would not aid the Court in its resolution of any issue in this case.

## 2. This Court should not address the pace at which USCIS adjudicates H-1B visa petitions at this time.

Although the introduction to Plaintiffs' memorandum in support of their consolidated motion for summary judge briefly refers to the pace at which USCIS is adjudicating H-1B

petitions, Dkt. 14-1 at 1-3, Plaintiffs are not seeking summary judgment with respect to this

issue.   Moreover, they cannot do so.   The Complaint filed by Plaintiff ITServe Alliance does not

raise any claim regarding the pace of adjudication of H-1B petitions or seek any relief with

respect to this issue.   *See* Dkts. 1 & 6.   Similarly, it does not appear that the Plaintiffs' individual

claims challenge the agency's pace of adjudication.   Rather these individual claims are brought

by petitioners who submitted H-1B visa petitions that were either denied or approved for less

than the total time requested.

Not only are Plaintiffs not bringing a claim regarding USCIS' pace of adjudication, they

lack standing to bring such a claim.   *See Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1207

(D.C. Cir. 2013) (finding that plaintiffs lack standing given that their applications have now been

adjudicated and they have failed to allege any additional facts showing an injury-in-fact that can

be redressed by the court); *see also, Gray v. Office of Pers Mgmt.*, 771 F.2d 1504, 1514 (D.C.

Cir. 1985) (finding action moot because it is unnecessary to compel agency to act on a claim

when it has already done so), *cert. pet. denied*, 475 U.S. 1089 (1986).[5]

Assuming Plaintiffs could establish standing to proceed on this issue, a brief explanation

of the appropriate legal standard demonstrates why such a claim would nevertheless fail as a

matter of law.   As a general matter, under 5 U.S.C. § 706(1), a court may "compel agency action

unlawfully withheld or unreasonably delayed."   *Norton v. Southern Utah Wilderness Alliance*,

542 U.S. 55, 62 (2004); *see, e.g., Biodiversity Legal Foundation v. Norton*, 285 F. Supp. 2d 1, 12

---

[5]  The Ninth Circuit has noted that there might be situations in which USCIS' delay in
adjudicating a visa petition might render any relief meaningless to the petitioner.  *See Ruiz-Diaz
v. United States*, 618 F.3d 1055, 1060-61 (9th Cir. 2010) (explaining that petitioners' "real
concern is that [if] USCIS does not process the petition for a special immigrant religious work
visa soon enough for it to do many of them any good).  But this "conundrum" by itself is
insufficient to provide a basis for judicial relief.  *See id.*

(D.D.C. 2003) (explaining that "the issuance of equitable relief under section 706 of the APA is

an extraordinary remedy and the Court requires similarly extraordinary circumstances to be

present before it will interfere with an ongoing agency process") (citations and quotations

omitted).  The D.C. Circuit has articulated a six-part test for assessing claims of agency delay:

> (1) the time agencies take to make decisions must be governed by a rule of reason,
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason,
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority,
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay, and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*See Telecommunications Research Action Center v. F.C.C. ("TRAC")*, 750 F.2d 70, 80

(D.C. Cir. 1984) (citations and quotations omitted).

The D.C. Circuit has found that it is reversible error for a district court not to consider the

lack of agency resources before compelling agency action.  *See, e.g., Mashpee Wampanoag*

*Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1101-2 (D.C. Cir. 2003) ("The district court erred

by holding the decision of the Secretary had been unreasonably delayed without first considering

the BIA's limited resources and the effect of granting relief upon other equally-deserving

petitioners for recognition").  Moreover, even in situations involving a statutory deadline, the D.C. Circuit has been reluctant to compel agency action.  *W. Coal Traffic League v. Surface Transp. Bd.,* 216 F.3d 1168, 1175 (D.C. Cir. 2000) (holding "we will not dictate that the Board must comply with a [statutory] deadline for determining whether a merger application is in the public interest when . . . it needs time to reconsider its standards for evaluating the public interest."); *see generally*, *In re Barr Labs., Inc.*, 930 F.2d 72, 76 (D.C. Cir. 1997) (declining to enter an injunction compelling the agency to act because courts "have no basis for reordering agency priorities").  This is consistent with the general principle that an agency has "broad discretion to choose how best to marshal its limited resources" to enforce the law.  *See Mass. v. EPA*, 549 U.S. 497, 527 (2007).[6]

Moreover, the Supreme Court has instructed that courts should not order agencies to do the impossible.  *See OPM v. Richmond*, 496 U.S. 414, 433 (1990) (explaining that it "ignores reality to expect that the Government will be able to secure perfect performance from its hundreds of thousands of employees scattered throughout the continent").  The reasoning behind this principle is simple:  it is not appropriate for a court to "order a party to jump higher, run

---

[6] In addition, courts have also explained that "sense of Congress" provisions are generally considered to be no more than non-binding statements of policy.  *See Yang v. Cal. Dep't of Soc. Servs.,* 183 F.3d 953, 959 (9th Cir. 1999) ("[T]he courts rely on the sense of Congress provisions to buttress interpretations of other mandatory provisions and do not interpret them as creating any rights or duties by themselves"); *Monahan v. Dorchester Counseling Ctr., Inc.,* 961 F.2d 987, 994–95 (1st Cir. 1992); *Trojan Techs., Inc. v. Pa.,* 916 F.2d 903, 908–09 (3d Cir. 1990), *see, e.g., Bemba v. Holder*, 930 F. Supp. 2d 1022, 1031 (E.D. Mo. 2013) (finding the "sense of Congress" regarding the proposed processing times set forth in 8 U.S.C. § 1571(b) is "non-binding"); *Carter v. Dep't of Homeland Sec.*, No. 07-12953, 2008 WL 205248, at *2 (E.D. Mich. Jan. 24, 2008) (finding that 8 U.S.C. § 1571(b) is non-binding, legislative dicta and that when Congress "intends to set a time limit for the determination of an immigration benefit, it has done so").

faster, or lift more than she is physically capable." *Am. Hosp. Ass'n v. Price*, 867 F.3d 160, 167–68 (D.C. Cir. 2017).

Here, USCIS advises that given the volume of H-1B visa petitions, it lacks the resources to adjudicate all H-1B visa petitions within 30 days. *See* Neufeld Decl. at ¶¶ 2, 5, 21. The number of H-1B petitions received by USCIS has steadily increased in recent fiscal years. *Id*. at ¶ 3. This increased volume has been a contributing factor to the increase in processing times to adjudicate H-1B petitions. *Id*. at ¶ 6. USCIS recognizes that backlogs are a problem and is taking a number of steps to address the issue. *See id*. at ¶ 14. Specifically, USCIS has hired additional staff and trained additional officers to adjudicate the increased volume of H-1B petitions. *See id*. at ¶¶ 14-17. USCIS further notes prior to the 2018 Guidance Memorandum, USCIS took longer than 30 days to adjudicate petitions.[7] Thus, any assertion by Plaintiffs that current processing time are somehow indicative of USCIS imposing new legislative rules is without merit. H-1B processing times have long exceeded 30 days for myriad of reason unrelated to the 2018 Guidance Memorandum, and the fact that USCIS currently does not, and historically has not, processed all H-1B petitions within 30 days of filing has no bearing on whether the 2018 Guidance Memorandum is a legislative or interpretative rule.

With respect to the H-1B petition filed by VSION Technologies ("VSION") (receipt number WAC-18-151-52795) that was referenced at the hearing on May 9, 2019, USCIS advises that there were extenuating circumstances that prevented USCIS from adjudicating the petition more quickly. *See* Nguyen Decl. at ¶¶ 3-11 (explaining why, even though the petition was filed

---

[7] *See* Vermont Service Center Processing Time Report (2/28/17) - https://www.aila.org/infonet/processing-time-reports/vsc/2017/vsc-processing-time-report-02-28-17, and California Center Processing Time Report (2/28/17) - https://www.aila.org/infonet/processing-time-reports/csc/2017/csc-processing-time-report-02-28-17.

on April 2, 2018, USCIS did not grant it until February 1, 2019).  Specifically, VSION's petition

was selected for adjudication in the lottery on April 11, 2018.  *Id*. at ¶ 5.  With the initial petition,

VISION submitted (i) an itinerary that they prepared indicating that a company ("T") was the

establishment where the services were to be performed for the dates of October 1, 2018 to

August 31, 2021, and (ii) a letter written by VISION which describes the proffered position as

"Software Engineer" but does not mention T.  *Id*.  VSION did not submit any documents from T

verifying the arrangement.  *Id*.

On June 16, 2018, 66 days after the petition was selected in the lottery, USCIS sent

VISION a Request for Evidence ("RFE") requesting, among other items, evidence verifying the

claimed employment.  *Id*. at ¶ 6.  One September 11, 2018, 85 days after receiving the RFE,

VISION responded.  *Id*.  Given various inconsistencies with the response, on November 6, 2018,

the petition was referred to the CSC Center Fraud Detections Operation ("CFDO").  *Id*. at ¶ 7.

On December 10, 2018, 25 days later, USCIS sent a second RFE to VSION.  *Id*. at ¶ 9.  VISION

waited until January 23, 2019, to respond.  *Id*.  On February 1, 2019, 9 days after the second RFE

response was received, the petition was approved.  *Id*. at ¶ 10.

In sum, this was an unusual matter in that, not only was it part of a large submission of

H-1B petitions which required extensive administrative proceeding, but it then involved two

separate RFEs and a referral to the CFDO to verify information from the end client.  To be clear,

USCIS took action with respect to the petition within 66 days of the petition being selected in the

lottery (sending the first RFE).  *Id*. at ¶ 6.  And USCIS approved the petition, nine days after

receiving VISION's response to the second RFE.  *Id*. at ¶¶ 9-10.  Moreover, part of the delay in

adjudication stems from the decision by the petitioner to wait 85 days to respond to the first RFE

and then waiting 44 days to respond to the second RFE.  *Id*. at ¶¶ 6, 9.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director

GLENN M. GIRDHARRY
Assistant Director

By: *s/ Aaron S. Goldsmith*
Aaron S. Goldsmith
Senior Litigation Counsel
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 532-4107
Email: aaron.goldsmith@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the CM/ECF system will be sent

electronically to the registered participants.  There are no unregistered participants.

*s/ Aaron S. Goldsmith*
AARON S. GOLDSMITH
Senior Litigation Counsel