**U. S. Department of Homeland Security**
U. S. Citizenship and Immigration Services
Administrative Appeals Office (AAO)
20 Massachusetts Ave., N.W., MS 2090
Washington, DC 20529-2090




identifying data deleted to
prevent clearly unwarranted
invasion of personal privacy




D2



DATE: NOV 01 2011 VERMONT SERVICE CENTER FILE: [redacted]

IN RE: Petitioner:
Beneficiary:

PETITION: Petition for a Nonimmigrant Worker Pursuant to Section 101(a)(15)(H)(i)(b) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(15)(H)(i)(b)

ON BEHALF OF PETITIONER:



INSTRUCTIONS:

Enclosed please find the decision of the Administrative Appeals Office in your case. All of the documents related to this matter have been returned to the office that originally decided your case. Please be advised that any further inquiry that you might have concerning your case must be made to that office.

If you believe the law was inappropriately applied by us in reaching our decision, or you have additional information that you wish to have considered, you may file a motion to reconsider or a motion to reopen. The specific requirements for filing such a request can be found at 8 C.F.R. § 103.5. All motions must be submitted to the office that originally decided your case by filing a Form I-290B, Notice of Appeal or Motion, with a fee of $630. Please be aware that 8 C.F.R. § 103.5(a)(1)(i) requires that any motion must be filed within 30 days of the decision that the motion seeks to reconsider or reopen.

Thank you,

Perry Rhew
Chief, Administrative Appeals Office

[redacted]

**DISCUSSION:** The service center director denied the nonimmigrant visa petition, and the matter is now before the Administrative Appeals Office (AAO) on appeal. The appeal will be dismissed. The petition will be denied.

On the Form I-129 visa petition, signed on March 31, 2009, the petitioner stated that it is an IT (information technology) consulting services firm established during February 2009. The petitioner's articles of incorporation show that it incorporated on February 19, 2009. In response to inquiries pertinent to its net and gross incomes, the petitioner stated that its estimated gross income for 2009 as $125,000 and for 2010 as $500,000. It estimated its net income as $30,000 for 2009 and $100,000 for 2010. Because the petitioner was established during 2009 and the 2009 calendar year had not then ended, it had no figures other than those projected.

On the visa petition, in the space reserved for the petitioner to state the number of workers it employs, it entered, "3 – Projected in one year." Although the petitioner incorporated on February 19, 2009, and projected that it would have three employees within a year, it filed 28 other H-1B petitions at approximately the same time as the instant visa petition, all for the same type of position – programmer analyst, on April 1, 2009. United States Citizenship and Immigration Services (USCIS) computer records show that the petitioner has filed at least another 30 H-1B visa petitions.

To employ the beneficiary in a position that it designates as programmer analyst position, the petitioner endeavors to classify the beneficiary as a nonimmigrant worker in a specialty occupation pursuant to section 101(a)(15)(H)(i)(b) of the Immigration and Nationality Act (the Act), 8 U.S.C. § 1101(a)(15)(H)(i)(b). The labor condition application (LCA) submitted to support the visa petition identifies Princeton, New Jersey as the location for the beneficiary's work. The petitioner's address is in Princeton, New Jersey. On the visa petition, the petitioner stated that the beneficiary would work at that address and in "unanticipated locations throughout the USA."

The director denied the petition on two independent grounds, namely, his findings that the evidence of record failed (1) to establish that the proffered position is a specialty occupation; and (2) to provide the itinerary that the regulation at 8 C.F.R. § 214.2(h)(2)(i)(B) requires when a proffered H-1B position is to be performed at more than one location.

The AAO bases its decision upon its review of the entire record of proceeding, which includes: (1) the petitioner's Form I-129 and the supporting documentation filed with it; (2) the service center's request for additional evidence (RFE); (3) the response to the RFE; (4) the director's denial letter; and (5) the Form I-290B.

In his March 31, 2009 letter of support filed with the Form I-129, the petitioner's vice president stated, "[The petitioner] currently serves two main areas of IT services, namely: (1) helping clients develop products that will increase their client services; and (2) client projects." However, as will be discussed below, the record of proceeding contains no evidence of any specific project to which the beneficiary would be assigned in these or any other area.

In his letter of reply to the director's RFE, counsel stated that the petitioner will provide the beneficiary work from two general "sources," namely (1) its own "direct customers" which directly utilize the services of its IT professionals, and (2) "intermediary customers," that is, other IT-service providers who draw upon the petitioner to supply them with IT workers for their contracts with their end-user clients.

In his letter replying to the RFE, previous counsel also stated that, because it does not necessarily know to what project it would assign the beneficiary, the petitioner is unable to provide the itinerary evidence requested by the RFE. As will be reflected in this decision, such circumstances do not relieve the petitioner of its regulatory obligations to provide, at the time the petition is filed, an itinerary of the beneficiary's employment pursuant to 8 C.F.R. § 214.2(h)(2)(i)(B), and to establish that the proffered position is a specialty occupation position by evidence of definite, non-speculative work that, by the date of the petition's filing, has been identified for the beneficiary to perform during the period specified in the petition.

The petitioner submitted a number of documents as evidence that it has secured sufficient clients to ensure that the beneficiary will be employed in accordance with the petition. As reflected in the discussion below, none of those documents establishes any definite assignment, project, or substantive work of any kind that had been designated for the beneficiary at the time the petition was filed.



With the Form I-129, the petitioner filed documents "by way of example" of companies with which the petitioner has current contracts, namely: (1) a Supplier Agreement with , effective March 11, 2009, that contains terms and conditions governing any Purchase Order (P.O.) whereby the petitioner agrees to refer its "technical services personnel" to to refer to its clients for their temporary needs for "technical services personnel"; (2) a subcontractor agreement ratified by the petitioner and on March 2, 2009; and (3) a Novartis Supplier/Contractor Classification Form listing the petitioner as a Minority Owned Business Enterprise and Small Disadvantaged Business.

The agreement states:

> If [the petitioner's] candidates are selected by to provide services, [the petitioner] will be compensated by in accordance with a Purchase Order (Exhibit A) to be attached hereto for each individual who provides such services through

The AAO notes that the petitioner did not submit a P.O. related to its agreement with The record contains no evidence that ever selected any of the petitioner's workers to perform services for its clients, let alone that it selected the beneficiary. Even if the record indicated that had selected the beneficiary to perform services for its clients, the record of proceeding contains no documents establishing the substantive nature and the educational requirements of any work provided or to be provided under the agreement and no indication, therefore, that any work he would perform would qualify as specialty occupation employment.







The March 2, 2009 [redacted] subcontractor agreement submitted with the visa petition indicates that, as the need may arise, [redacted] will contract for the petitioner's services by issuing to the petitioner individual task orders (T.O.'s) for specific services to be delivered to [redacted] or its client(s), which will become effective upon the petitioner's written acceptance. This Subcontractor Agreement states, in part, that a T.O. "will indicate the tasks or services to be performed by [the petitioner], including [the] date on which [the] assignment is to begin, estimated ending dates, and the per hour rates to be paid to [the petitioner] by [redacted]" The record of proceeding does not include any T.O. from [redacted], and thus, does not establish either the substantive nature or the location of any work to be performed in accordance with the Subcontractor Agreement.

The [redacted] Classification Form, at most, indicates that the petitioner filed this form with the form's issuer, [redacted] The form does not indicate any particular transaction to which it may relate.

As part of its reply to the RFE, the petitioner submitted documents pertinent to [redacted] and [redacted]

The [redacted] documents consist of (1) a document entitled "Order No [redacted] which reflects that [redacted] contracted for the petitioner to provide a specified employee (not the beneficiary) for "St [sic] Tech Systems Support" commencing on February 16, 2009, for a price of $15,450, and (2) two pages of "Terms and Conditions" to apply to any P.O. from [redacted]. That statement of terms and conditions contains no indication that it relates in any way to the petitioner or the beneficiary. Further, neither these [redacted] documents nor any other evidence of record establishes the substantive nature and the educational requirements of work required under Order No [redacted] In this regard, the AAO observes that the record of proceeding contains no description of the "St [sic] Tech Systems Support" work and no explanation of the educational and/or training credentials required by that work.

The [redacted] documents consist of (1) a copy of the petitioner's March 18, 2009 agreement with [redacted] a firm "in the business of locating temporary personnel with information technology skills for various clients," which will allow the petitioner, as "an independent contractor," to "introduce personnel candidates to [redacted] in order that [redacted] may propose the services of such personnel to [clients of [redacted] under various Client agreements;" and (2) a Work Order between [redacted] and the petitioner, accepted by the petitioner on March 26, 2009, for the services of a named employee of the petitioner (not the beneficiary) as a "Sr. Programmer/Analyst" at Horizon Blue Cross/Blue Shield on a project starting March 30, 2009. The AAO notes that, as the Work Order does not provide either the rate to be paid to the petitioner, or the project end date, it does not appear to qualify as an example of an authentic contractual obligation between [redacted] and the petitioner.[1] Further, the description of the

[1] The [redacted] Agreement with the petitioner expressly states that [redacted] will commit itself contractually only by a P.O., which includes, among other items, "the term" (i.e., the length of the commitment) and "the negotiated labor rates." The Work Order submitted by the petitioner contains neither of these material items.





duties to be performed is only a generalized statement of generic functions that does not relate substantive details of any work to be performed for the end-client, Horizon Blue Cross/Blue Shield.

The [redacted] documents consist of (1) a March 2, 2009 Subcontractor Agreement with the petitioner; and (2) a letter, dated May 21, 2009, from [redacted]'s managing director.

The March 2, 2009 contract indicates that, as the need may arise, [redacted] will contract for the petitioner's services by issuing to the petitioner individual task orders (T.O.'s) for specific services to be delivered to [redacted] or its client(s), which will become effective upon the petitioner's written acceptance. This Subcontractor Agreement states, in part, that a T.O. "will indicate the tasks or services to be performed by [the petitioner], including [the] date on which [the] assignment is to begin, estimated ending dates, and the per hour rates to be paid to [the petitioner] by [redacted]." The record of proceeding does not include any T.O. from [redacted]nd thus, does not establish either the substantive nature or the location of any work to be performed in accordance with the Subcontractor Agreement.

Alluding to the March 2, 2009 [redacted] agreement as one under which the petitioner will provide "specialist talent and hard-to-locate resources on an as-needed project basis," the May 21, 2009 letter from [redacted]s Managing Director confirms that the petitioner "will continue to provide resources as per the terms of our agreement into the foreseeable future" and states that most of the jobs for which [redacted] will draw workers from the petitioner "requires a consultant with a computer-related bachelor's degree plus several year's of experience." The AAO accords no probative weight to this letter as it is not accompanied by documentary evidence of any contract, T.O., or other contractual document relating to the petitioner's services in the past or requiring those services in the future. Further, as such documents do not exist in the record of proceeding, there is no basis for the AAO to determine the educational credentials that actually have been or would be required for any project for which the petitioner would supply workers to [redacted] Going on record without supporting documentary evidence is not sufficient for purposes of meeting the burden of proof in these proceedings. *Matter of Soffici*, 22 I&N Dec. 158, 165 (Comm. 1998) (citing *Matter of Treasure Craft of California*, 14 I&N Dec. 190 (Reg. Comm. 1972)).

The RFE reply also includes a June 9, 2009 e-mail exchange between [redacted], hereinafter [redacted] and the petitioner's president. [redacted] provided a sample of a net request that [redacted] typically sends when they are seeking a computer professional and thanked the petitioner's president for his interest in working for [redacted] The petitioner's president responded that he was interested in providing services as a vendor.

Because the record contains no indication that any agreement was ever reached, those E-mails are not evidence of any contractual commitment between the petitioner and [redacted]. Further, they do not mention the beneficiary. Further still, as that E-mail exchange is dated June 9, 2009, it could not, in any event, be construed as evidence that the petitioner had any work for the beneficiary to perform when the visa petition was submitted on April 1, 2009. The AAO notes, yet further, that the subject of the E-mails is a Senior Software Engineer position, not a Programmer Analyst position, which is the occupation for which the present petition is filed.

As reflected in the above survey of the documents submitted as evidence that the petitioner's clients would provide sufficient work for the beneficiary, those documents fail to establish any specific projects to which they relate, the substantive nature of any such project, the educational requirements for such work, and, consequently, whether those documents relate to any specialty occupation work. Further, the record is devoid of documentary evidence of any contract or commitment from any client for the beneficiary's services during any portion of the employment period specified in the petition.

The critical aspects of the record of proceeding with regard to the itinerary issue are that (1) the record reflects that the petitioner intends to assign the beneficiary to any location where its clients may require the beneficiary's services; (2) the record does not document any firm's contractual obligation to use the beneficiary's services at any specific time or for any specific project or projects during the period designated in the petition; and (3) the petitioner acknowledges that it does not know where and when the beneficiary would allegedly perform the duties of a programmer analyst.

With regard to the LCA issue, although the LCA is valid only for work within commuting distance of Princeton, NJ, the petitioner provided no documentary evidence of any work reserved for the beneficiary at that location. Further, the visa petition states that the beneficiary may be assigned to any location within the United States. Further still, the petitioner's letter in response to the RFE and also the [redacted] letter of May 21, 2009, with its listing of potential clients for which [redacted] may draw personnel from the petitioner, indicate that the beneficiary would be subject to assignments at as yet undesignated locations outside the Princeton, New Jersey location specified in the LCA.

**The Specialty Occupation Issue**

Section 101(a)(15)(H)(i)(b) of the Act, 8 U.S.C. § 1101(a)(15)(H)(i)(b), provides a nonimmigrant classification for aliens who are coming temporarily to the United States to perform services in a specialty occupation. The issue before the AAO is whether the petitioner has provided evidence sufficient to establish that it would be employing the beneficiary in a specialty occupation position.

Section 214(i)(l) of the Act, 8 U.S.C. § 1184(i)(l), defines the term "specialty occupation" as an occupation that requires:

(A) theoretical and practical application of a body of highly specialized knowledge, and

(B) attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States.

Thus, it is clear that Congress intended this visa classification only for aliens who are to be employed in an occupation that requires the theoretical and practical application of a body of highly specialized knowledge that is conveyed by at least a baccalaureate or higher degree in a specific specialty.

Consistent with section 214(i)(1) of the Act, the regulation at 8 C.F.R. § 214.2(h)(4)(ii) states that a specialty occupation means an occupation "which [(1)] requires theoretical and practical application of a body of highly specialized knowledge in fields of human endeavor including, but not limited to, architecture, engineering, mathematics, physical sciences, social sciences, medicine and health, education, business specialties, accounting, law, theology, and the arts, and which [(2)] requires the attainment of a bachelor's degree or higher in a specific specialty, or its equivalent, as a minimum for entry into the occupation in the United States."

Pursuant to 8 C.F.R. § 214.2(h)(4)(iii)(A), to qualify as a specialty occupation, the position must also meet one of the following criteria:

(1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;

(2) The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;

(3) The employer normally requires a degree or its equivalent for the position; or

(4) The nature of the specific duties is so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

As a threshold issue, it is noted that 8 C.F.R. § 214.2(h)(4)(iii)(A) must logically be read together with section 214(i)(1) of the Act, 8 U.S.C. § 1184(i)(1), and 8 C.F.R. § 214.2(h)(4)(ii). In other words, this regulatory language must be construed in harmony with the thrust of the related provisions and with the statute as a whole. *See K Mart Corp. v. Cartier Inc.*, 486 U.S. 281, 291 (1988) (holding that construction of language which takes into account the design of the statute as a whole is preferred); *see also COIT Independence Joint Venture v. Federal Sav. and Loan Ins. Corp.*, 489 U.S. 561 (1989); *Matter of W-F-*, 21 I&N Dec. 503 (BIA 1996). As such, the criteria stated in 8 C.F.R. § 214.2(h)(4)(iii)(A) should logically be read as being necessary but not necessarily sufficient to meet the statutory and regulatory definition of specialty occupation. To otherwise interpret this section as stating the necessary *and* sufficient conditions for meeting the definition of specialty occupation would result in a particular position meeting a condition under 8 C.F.R. § 214.2(h)(4)(iii)(A) but not the statutory or regulatory definition. *See Defensor v. Meissner*, 201 F.3d 384, 387 (5th Cir. 2000). To avoid this illogical and absurd result, 8 C.F.R. § 214.2(h)(4)(iii)(A) must therefore be read as stating additional requirements that a position must meet, supplementing the statutory and regulatory definitions of specialty occupation.

Consonant with section 214(i)(1) of the Act and the regulation at 8 C.F.R. § 214.2(h)(4)(ii), U.S. Citizenship and Immigration Services (USCIS) consistently interprets the term "degree" in the

criteria at 8 C.F.R. § 214.2(h)(4)(iii)(A) to mean not just any baccalaureate or higher degree, but one in a specific specialty that is directly related to the proffered position. Applying this standard, USCIS regularly approves H-1B petitions for qualified aliens who are to be employed as engineers, computer scientists, certified public accountants, college professors, and other such occupations. These professions, for which petitioners have regularly been able to establish a minimum entry requirement in the United States of a baccalaureate or higher degree in a specific specialty, or its equivalent, fairly represent the types of specialty occupations that Congress contemplated when it created the H-1B visa category.

The AAO hereby endorses the director's analysis of the specialty occupation issue as written, finding that it accurately assesses the evidence of record and comports with the statutes and USCIS regulations governing the specialty occupation aspect of the H-1B program. Accordingly the AAO fully affirms the director's determination with regard to the specialty occupation issue.[2]

As reflected in the director's discussion of the specialty occupation issue, by failing to document the projects to which the beneficiary would be assigned, their substantive nature, and the educational requirements for their performance, the petitioner has also necessarily failed to establish that the beneficiary would be assigned work requiring the theoretical and practical application of at least a U.S. bachelor's degree level of a body of highly specialized knowledge in a particular IT-related specialty, as required by section 214(i)(l) of the Act, 8 U.S.C. § 1184(i)(l), and the implementing regulations at 8 C.F.R. § 214.2(h).

The petitioner's failure to establish the substantive nature of the work to be performed by the beneficiary precludes a finding that the proffered position is a specialty occupation under any criterion at 8 C.F.R. § 214.2(h)(4)(iii)(A), because it is the substantive nature of that work that determines (1) the normal minimum educational requirement for the particular position, which is the focus of criterion 1; (2) industry positions which are parallel to the proffered position and thus appropriate for review for a common degree requirement, under the first alternate prong of criterion 2; (3) the level of complexity or uniqueness of the proffered position, which is the focus of the second alternate prong of criterion 2; (4) the factual justification for a petitioner' normally requiring a degree or its equivalent, when that is an issue under criterion 3; and (5) the degree of specialization and complexity of the specific duties, which is the focus of criterion 4.

---

[2] The AAO notes, however, that the director is incorrect if he meant to convey that Programmer Analyst positions categorically qualify as specialty occupations. The information on the educational requirements in the "Computer Systems Analysts" chapter of the 2010-2011 edition of the U.S. Department of Labor's (DOL's) *Occupational Outlook Handbook* indicates at most that a bachelor's or higher degree in computer science, information systems, or management information systems may be a general preference, but not an occupational, entry requirement, among employers of Programmer Analysts in some environments. *See* Bureau of Labor Statistics, U.S. Department of Labor, *Occupational Outlook Handbook*, 2010-11 Ed., "Computer Systems Analysts," <http://www.bls.gov/oco/ocos287.htm> (accessed October 28, 2011). As such, the instant petition could not be approved based on the evidence of record even if the proffered position were established as being that of a programmer analyst.

Further, a position may be awarded H-1B classification only on the basis of evidence of record establishing that, at the time of the petition's filing, definite, non-speculative work would exist for the beneficiary for the period of employment specified in the Form I-129. The record of proceeding does not contain such evidence. USCIS regulations affirmatively require a petitioner to establish eligibility for the benefit it is seeking at the time the petition is filed. *See* 8 C.F.R. 103.2(b)(1). A visa petition may not be approved based on speculation of future eligibility or after the petitioner or beneficiary becomes eligible under a new set of facts. *See Matter of Michelin Tire Corp.*, 17 I&N Dec. 248 ('Reg. Comm'r 1978). A petitioner may not make material changes to a petition in an effort to make a deficient petition conform to USCIS requirements. *See Matter of Izummi*, 22 I&N Dec. 169, 176 (Assoc. Comm'r 1998).[3] For the foregoing reasons, the petition must be denied and the appeal dismissed.

**The Itinerary Issue**

The regulation at 8 C.F.R. § 214.2(h)(2)(i)(B) states, in pertinent part:

---

[3] It is further noted that to ascertain the intent of a petitioner, USCIS must look to the Form I-129 and the documents filed in support of the petition. It is only in this manner that the agency can determine the exact position offered, the location of employment, the proffered wage, et cetera. If a petitioner's intent changes with regard to a material term and condition of employment or the beneficiary's eligibility, an amended or new petition must be filed. To allow a petition to be amended in any other way would be contrary to the regulations. Taken to the extreme, a petitioner could then simply claim to offer what is essentially speculative employment when filing the petition only to "change its intent" after the fact, either before or after the H-1B petition has been adjudicated. The agency made clear long ago that speculative employment is not permitted in the H-1B program. A 1998 proposed rule documented this position as follows:

> Historically, the Service has not granted H-1B classification on the basis of speculative, or undetermined, prospective employment. The H-1B classification is not intended as a vehicle for an alien to engage in a job search within the United States, or for employers to bring in temporary foreign workers to meet possible workforce needs arising from potential business expansions or the expectation of potential new customers or contracts. To determine whether an alien is properly classifiable as an H-1B nonimmigrant under the statute, the Service must first examine the duties of the position to be occupied to ascertain whether the duties of the position require the attainment of a specific bachelor's degree. See section 214(i) of the Immigration and Nationality Act (the "Act"). The Service must then determine whether the alien has the appropriate degree for the occupation. In the case of speculative employment, the Service is unable to perform either part of this two-prong analysis and, therefore, is unable to adjudicate properly a request for H-1B classification. Moreover, there is no assurance that the alien will engage in a specialty occupation upon arrival in this country.

63 Fed. Reg. 30419, 30419 - 30420 (June 4, 1998). While a petitioner is certainly permitted to change its intent with regard to non-speculative employment, e.g., a change in duties or job location, it must nonetheless document such a material change in intent through an amended or new petition in accordance with 8 C.F.R. § 214.2(h)(2)(i)(E).

> *Service or training in more than one location.* A petition which requires services to be performed or training to be received in more than one location must include an itinerary with the dates and locations of the services or training and must be filed with the Service office which has jurisdiction over I-129H petitions in the area where the petitioner is located. The address which the petitioner specifies as its location on the I-129H petition shall be where the petitioner is located for purposes of this paragraph.

On appeal, the petitioner contended that the director's denial of this petition for failure to provide an itinerary as that term is defined at 8 C.F.R. § 214.2(h)(2)(i)(B) must be overturned, and the petition approved, because the petitioner has provided sufficient documentary evidence to satisfy the regulation's itinerary requirement as addressed in a document issued by the Office of Adjudications of the legacy Immigration and Naturalization Service (INS), namely: a memorandum from Michael L. Aytes, Assistant Commissioner, INS Office of Adjudications, *Interpretation of the Term "Itinerary" Found in 8 C.F.R. 214.2(h)(2)(i)(B) as it Relates to the H-1B Nonimmigrant Classification*, HQ 70/6.2.8 (December 29, 1995) (hereinafter referred to as the Aytes memo).[4]

The AAO will now discuss several reasons why the petitioner erred in arguing that the director's determination to deny the petition for lack of an itinerary is incorrect.

*The Aytes memo does not override the regulation:*

The itinerary language at 8 C.F.R. § 214.2(h)(2)(i)(B) of the regulation, with its use of the mandatory "must" and its inclusion in the subsection "Filing of petitions," establishes that the itinerary as there defined is a material and necessary document for an H-1B petition involving employment at multiple locations, and that such a petition may not be approved for any employment period for which there is not submitted at least the employment dates and locations. Neither the [redacted] documents relied upon by the petitioner specify any dates for employment of the beneficiary or indicate definite H-1B employment for the beneficiary for any portion of the period specified in the petition. Therefore, the director was correct in his determination to deny the petition for failure to provide the itinerary required by 8 C.F.R. § 214.2(h)(2)(i)(B).

The petitioner erred to the extent that it argued that the language of the Aytes memo supersedes the clear language at 8 C.F.R. § 214.2(h)(2)(i)(B) mandating an itinerary consisting of at least "dates and locations of the [beneficiary's] services or training." An agency guidance document, such as the Aytes memo, does not have the force and effect to preempt or countermand the clear mandate of an agency regulation, such as the one at 8 C.F.R. § 214.2(h)(2)(i)(B), that has been properly promulgated, after opportunity for public comment, in accordance with the Administrative Procedures Act (APA). Further, the AAO notes that the Aytes memo has no precedential value and, therefore, no binding effect as a matter of law upon USCIS. *See* 8 C.F.R. § 103.3(c) (types of decisions that are precedent decisions binding on all USCIS officers). Courts have consistently supported this position. *See Loa-Herrera v. Trominski*, 231 F.3d 984, 989 (5th Cir. 2000) (holding

---

[4] Prior to the director's decision, the petitioner submitted a copy of memo that appeared on the Internet site of the American Immigration Lawyers Association (AILA).

that legacy Immigration and Naturalization Serviced (INS) memoranda merely articulate internal guidelines for the agency's personnel; they do not establish judicially enforceable rights. An agency's internal personnel guidelines "neither confer upon [plaintiffs] substantive rights nor provide procedures upon which [they] may rely"); *see also Noel v. Chapman*, 508 F.2d 1023 (2nd Cir. 1975) (finding that policy memoranda to legacy INS district directors regarding voluntary extended departure determinations to be "general statements of policy"); *Prokopenko v. Ashcroft*, 372 F.3d 941, 944 (8th Cir. 2004) (describing a legacy INS Operating Policies and Procedures Memorandum (OPPM) as an "internal agency memorandum," "doubtful" of conferring substantive legal benefits upon aliens or binding the INS); *Romeiro de Silva v. Smith*, 773 F.2d 1021, 1025 (9th Cir. 1985) (describing an INS Operations Instruction (OI) as an "internal directive not having the force and effect of law"); *Schweiker v. Hansen*, 450 U.S. 785, 789-790 (1981) (finding that an agency's failure to comply with procedures announced in an agency manual does not estop the agency from following an otherwise binding regulation).

*The Aytes memo does not proscribe the actions taken by the director with regard to this petition:*

Aside from the fact that the Aytes memo does not have the authoritative status to override the regulatory mandate for an itinerary as described at 8 C.F.R. § 214.2(h)(2)(i)(B), the Aytes memo does not mandate USCIS officers to forgo the requirement for an itinerary as defined in the regulation as to at least "the dates and locations of the services or training" that the beneficiary is to perform. Rather, the Aytes memo qualifies its guidance as being subject to the exercise of the adjudicating officer's discretion. This is evident in the memo's statements that the itinerary requirement has been met "[a]s long as the officer is convinced of the bona fides of the petitioner's intentions with respect to the alien's employment," and that "[s]ervice officers are encouraged to use discretion in determining whether the petitioner has met the burden of establishing that it has an actual employment opportunity for the alien." As such, the Aytes memo does not mandate that the director in this matter, or any USCIS officer, suspend, dispose with, or accept any substitute for the itinerary minimum (i.e., dates and locations) mandated at 8 C.F.R. § 214.2(h)(2)(i)(B). Accordingly, the director's seeking itinerary information, and later denying the petition for the lack of that information, did not violate any aspect of the Aytes memo.[5]

*Additionally, the director had authority beyond and independent of 8 C.F.R. § 214.2(h)(2)(i)(B) to request and consider itinerary evidence:*

Pursuant to 8 C.F.R. § 214.2(h)(9)(i), the director has the responsibility to consider all of the evidence submitted by a petitioner and such other evidence that he or she may independently require to assist his or her adjudication. Further, the regulation at 8 C.F.R. § 214.2(h)(4)(iv) provides that "[a]n H-1B petition involving a specialty occupation shall be accompanied by [d]ocumentation . . . or any other required evidence sufficient to establish . . . that the services the beneficiary is to perform are in a specialty occupation." Moreover, the regulations at 8 C.F.R. §§ 103.2(b)(8) and

---

[5] In reaching this conclusion, the AAO obviously rejects the MWCL and the NPC documents as evidence of any commitment by these firms to employ the beneficiary at any time within the period of intended employment specified in the Form I-129.

214.2(h)(9)(i) provide the director broad discretionary authority to require such evidence as contracts and itineraries to establish that the services to be performed by the beneficiary will be in a specialty occupation during the entire period requested in the petition. A service center director may issue an RFE for evidence that he or she may independently require to assist in adjudicating an H-1B petition, and his or her decision to approve a petition must be based upon consideration of all of the evidence as submitted by the petitioner, both initially and in response to any RFE that the director may issue. *See* 8 C.F.R. § 214.2(h)(9). The purpose of an RFE is to elicit further information that clarifies whether eligibility for the benefit sought has been established, as of the time the petition is filed. *See* 8 C.F.R. § 103.2(b)(1), (b)(8), and (b)(12).

The AAO finds that, in the context of the record of proceeding as it existed at the time the RFE was issued, the RFE request for itinerary evidence was appropriate under the above cited regulations, not only on the basis that it was material in that it was required initial evidence, but also on the basis that it addressed the petitioner's failure to submit documentary evidence substantiating the petitioner's claim that it had H-1B caliber work for the beneficiary for the period of employment requested in the petition. Further, as discussed in this decision's sections on the specialty occupation and LCA issues, the petitioner's failure to provide the itinerary evidence requested in the RFE, and the petitioner's admission that it possessed no such evidence, required the director to deny the petition. Failure to submit requested evidence that precludes a material line of inquiry shall be grounds for denying the petition. 8 C.F.R. § 103.2(b)(14).

For all of the reasons discussed above, the AAO affirms the director's denial of the petition on the grounds that (1) the itinerary was initial required evidence that was never provided in support of the petition and (2) when provided an additional opportunity to submit this material, required evidence the petitioner failed to do so in its response to the RFE.

**Beyond the Decision of the Director**

The record suggests additional issues that were not addressed in the decision of denial.

The LCA submitted to support the visa petition states that the beneficiary would work in Princeton, New Jersey. It is therefore valid only for employment in Princeton, New Jersey and within commuting distance.

However, on the visa petition, the petitioner stated that the beneficiary would work at the petitioner's location in Princeton "and at unanticipated locations throughout the USA." In the March 31, 2009 letter submitted with the visa petition, the petitioner's vice president stated that the beneficiary would work "at various client locations throughout the U.S." In his July 15, 2009 letter in response to the RFE, counsel stated that the project at which the beneficiary would work and its location are not currently known to the beneficiary. The record contains other evidence that suggests that the beneficiary's employment would not be confined to Princeton, New Jersey and its local commuting area.

The regulation at 8 C.F.R. § 214.2(h)(4)(iii)(B)(*1*) expressly includes a certified LCA among the documents that a petitioner "shall submit" with an H-1B petition, and the regulation at 8 C.F.R. § 214.2(h)(4)(i)(B)(1) states:

> Before filing a petition for H-1B classification in a specialty occupation, the petitioner shall obtain a certification from the Department of Labor that it has filed a labor condition application in the occupational specialty in which the alien(s) will be employed.

In addition, the regulation at 8 C.F.R. § 214.2(h)(4)(iii)(B)(1) states that, when filing an H-1B petition, the petitioner must submit with the petition "[a] certification from the Secretary of Labor that the petitioner has filed a labor condition application with the Secretary." Thus, in order for a petition to be approvable, the LCA must have been certified before the H-1B petition was filed. The submission of an LCA certified subsequent to the filing of the petition satisfies neither 8 C.F.R. § 214.2(h)(4)(i)(B)(1) nor 8 C.F.R. § 214.2(h)(4)(iii)(B)(1). USCIS regulations affirmatively require a petitioner to establish eligibility for the benefit it is seeking at the time the petition is filed. *See* 8 C.F.R. § 103.2(b)(1).

Additionally, the Department of Labor (DOL) regulations governing Labor Condition Applications states that "[e]ach LCA *shall state…[t]he places of intended employment*." 20 C.F.R. § 655.730(c)(4) (emphasis added). "Place of intended employment" is defined as "the worksite or physical location where the work actually is performed by the H-1B…nonimmigrant." 20 C.F.R. § 655.715. Moreover, the instructions for Section G of Form ETA 9035 require that the employer list the place of intended employment "with as much geographic specificity as possible" and notes that the employer may identify up to three physical locations, including street address, city, county, state, and zip code, where work will be performed. Petitioners who know that an employee will be working at additional worksites at the time of filing must include all worksites on Form ETA 9035. Failure to do this will result in a finding that the employer did not file an LCA that supports the H-1B petition.

While DOL is the agency that certifies LCA applications before they are submitted to USCIS, DOL regulations note that the Department of Homeland Security (DHS) (i.e., its immigration benefits branch, USCIS) is the department responsible for determining whether the content of an LCA filed for a particular Form I-129 actually supports that petition. *See* 20 C.F.R. § 655.705(b), which states, in pertinent part (emphasis added):

> For H-1B visas . . . DHS accepts the employer's petition (DHS Form I-129) with the DOL certified LCA attached. *In doing so, the DHS determines whether the petition is supported by an LCA which corresponds with the petition*, whether the occupation named in the [LCA] is a specialty occupation or whether the individual is a fashion model of distinguished merit and ability, and whether the qualifications of the nonimmigrant meet the statutory requirements of H-1B visa classification.

Because the LCA is valid only for employment in and near Princeton, New Jersey and the petitioner has made plain that it may employ the beneficiary elsewhere, the petitioner has not demonstrated that the LCA submitted corresponds with the visa petition and may be used to support it. The visa petition will be denied for this additional reason.

Beyond the decision of the director, the petition must also be denied due to the petitioner's failure to establish that it qualifies as a United States employer or agent. As detailed above, the record of proceeding lacks sufficient documentation evidencing what exactly the beneficiary would do for the period of time requested or where exactly and for whom the beneficiary would be providing services. Given this specific lack of evidence, the petitioner has failed to establish who has or will have actual control over the beneficiary's work or duties, or the condition and scope of the beneficiary's services. In other words, the petitioner has failed to establish whether it has made a bona fide offer of employment to the beneficiary based on the evidence of record or that the petitioner, or any other company which it may represent, will have and maintain the requisite employer-employee relationship with the beneficiary for the duration of the requested employment period. *See* 8 C.F.R. § 214.2(h)(4)(ii) (defining the term "United States employer" and requiring the petitioner to engage the beneficiary to work such that it will have and maintain an employer-employee relationship with respect to the sponsored H-1B nonimmigrant worker). Again and as previously discussed, there is insufficient evidence detailing where the beneficiary will work, the specific projects to be performed by the beneficiary, or for which company the beneficiary will ultimately perform these services. Therefore, the appeal must be dismissed and the petition must be denied for this additional reason.

Further, the proffered position is a programmer analyst position. Various items of evidence in the record suggest that its duties might be related to computer science, information technology or information systems, or computer engineering. The beneficiary, however, has a bachelor of technology degree in chemical engineering awarded by the Indian Institute of Technology Kanpur. An evaluation of the beneficiary's foreign education states that it is equivalent to a bachelor of science degree in engineering awarded in the United States.

The AAO observes that if the petitioner had demonstrated that the proffered position required a minimum of a bachelor's degree or the equivalent in a specific specialty, the petitioner would be obliged, in order for the visa petition to be approvable, to demonstrate, not only that the beneficiary has a bachelor's degree or the equivalent, but that the beneficiary has a minimum of a bachelor's degree or the equivalent *in that specific specialty*.[6] *See Matter of Matter of Ling*, 13 I&N Dec. 35 (R.C. 1968).

---

[6] If the proffered position had been demonstrated to require a minimum of a bachelor's degree or the equivalent in a specific specialty, that degree would certainly not be an otherwise undifferentiated engineering degree, because an undifferentiated degree in engineering is not a degree in a specific specialty.

This is so because the field of engineering is a very broad category that covers numerous and various disciplines, some of which are only related through the basic principles of science and mathematics, e.g., petroleum engineering and aerospace engineering. A petitioner must demonstrate that the proffered position

Pursuant to the instant visa category, however, a beneficiary's credentials to perform a particular job are relevant only when the job is found to qualify as a specialty occupation. As discussed in this decision, the proffered position has not been shown to require a baccalaureate or higher degree, or its equivalent, in a specific specialty and has not, therefore, been shown to qualify as a position in a specialty occupation. Because the finding that the petitioner failed to demonstrate that the proffered position qualifies as a specialty occupation position is dispositive, the AAO need not reach the issue of the beneficiary's qualifications.

An application or petition that fails to comply with the technical requirements of the law may be denied by the AAO even if the Service Center does not identify all of the grounds for denial in the initial decision. *See Spencer Enterprises, Inc. v. United States*, 229 F. Supp. 2d 1025, 1043 (E.D. Cal. 2001), *aff'd*, 345 F.3d 683 (9th Cir. 2003); *see also Soltane v. DOJ*, 381 F.3d 143, 145 (3d Cir. 2004) (noting that the AAO conducts appellate review on a *de novo* basis).

The petition will be denied and the appeal dismissed for the above stated reasons, with each considered as an independent and alternative basis for the decision. In visa petition proceedings, the burden of proving eligibility for the benefit sought remains entirely with the petitioner. Section 291 of the Act, 8 U.S.C. § 1361. Here, that burden has not been met.

**ORDER:** The appeal is dismissed. The petition is denied.

---

requires a precise and specific course of study that relates directly and closely to the position in question. Since there must be a close correlation between the required specialized studies and the position, the requirement of a degree with a generalized title, such as liberal arts, business administration, or engineering, without further specification, does not establish the position as a specialty occupation. *See Matter of Michael Hertz Associates*, 19 I&N Dec. 558 (Comm. 1988).

To prove that a job requires the theoretical and practical application of a body of specialized knowledge as required by Section 214(i)(1) of the Act, a petitioner must establish that the position requires the attainment of a bachelor's or higher degree in a specialized field of study. As explained above, USCIS interprets the degree requirement at 8 C.F.R. § 214.2(h)(4)(iii)(A) to require a degree in a specific specialty that is directly related to the proposed position. USCIS has consistently stated that, although a general-purpose bachelor's degree, such as a degree in liberal arts, business administration, or engineering, may be a legitimate prerequisite for a particular position, requiring such a degree, without more, will not justify a finding that a particular position qualifies for classification as a specialty occupation. *See Royal Siam Corp. v. Chertoff*, 484 F.3d 139, 147 (1st Cir. 2007).