identifying data deleted to
prevent clearly unwarranted
invasion of personal privacy

**U.S. Department of Homeland Security**
U.S. Citizenship and Immigration Services
*Office of Administrative Appeals* MS 2090
Washington, DC 20529-2090



PUBLIC COPY

**U.S. Citizenship and Immigration Services**



FILE:    EAC 07 151 53678    Office: VERMONT SERVICE CENTER    Date: **AUG 04 2009**

IN RE:   Petitioner:
         Beneficiary:

PETITION: Petition for a Nonimmigrant Worker Pursuant to Section 101(a)(15)(H)(i)(b) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(15)(H)(i)(b)

ON BEHALF OF PETITIONER:



INSTRUCTIONS:

This is the decision of the Administrative Appeals Office in your case. All documents have been returned to the office that originally decided your case. Any further inquiry must be made to that office.

If you believe the law was inappropriately applied or you have additional information that you wish to have considered, you may file a motion to reconsider or a motion to reopen. Please refer to 8 C.F.R. § 103.5 for the specific requirements. All motions must be submitted to the office that originally decided your case by filing a Form I-290B, Notice of Appeal or Motion, with a fee of $585. Any motion must be filed within 30 days of the decision that the motion seeks to reconsider or reopen, as required by 8 C.F.R. § 103.5(a)(1)(i).

John F. Grissom
Acting Chief, Administrative Appeals Office

www.uscis.gov

EAC 07 151 53678
Page 2

**DISCUSSION:** The service center director denied the immigrant visa petition and the matter is now before the Administrative Appeals Office (AAO) on appeal. The appeal will be dismissed. The petition will be denied.

The petitioner is a software development and consulting company that seeks to employ the beneficiary as a programmer-analyst. The petitioner, therefore, endeavors to classify the beneficiary as a nonimmigrant worker in a specialty occupation pursuant to section 101(a)(15)(H)(i)(b) of the Immigration and Nationality Act (the Act), 8 U.S.C. § 1101(a)(15)(H)(i)(b).

In the paragraph summarizing the bases of his decision to deny the petition, the director states, in pertinent part, the following:

> USCIS [U.S. Citizenship and Immigration Services] . . . must conclude that the petitioner does not qualify as an [H-1B] employer as they failed to provide evidence to establish that they have sufficient work and resources. The beneficiary is therefore not eligible for the requested H-1B visa because the petitioner is unable or unwilling to provide qualifying employment. . . .

At the outset of its analysis, based upon its review of the totality of the record including the additional documentation submitted on appeal, the AAO withdraws several findings of the director because they are not established by the evidence of record before the AAO. Specifically, the AAO withdraws the following findings: that the petitioner has not established that it had sufficient income to employ the number of people that it claims as employees on the Form I-129; that the petitioner appears to have been "benching" H-1B employees, that is, not paying them for time not working on projects; and that a "number of material discrepancies" indicate that "employment with [the petitioner] may not be regular and will not in practice garner petitioner's employees a regular wage." This action by the AAO is based solely upon the limited content of the evidence before it, which is not sufficient to establish whether or not the petitioner has been violating its obligations under the labor condition applications (LCA) certified by the Department of Labor.

The AAO also withdraws that portion of the director's decision denying the petition "in accordance with 8 C.F.R. [§] 214.2(h)(4)(D)(5) and 8 C.F.R. [§] 214.2(h)(11)(ii)." The regulation at 8 C.F.R. § 214.2(h)(4)(D)(5), which deals with USCIS's assessment of a beneficiary's qualifications to serve in a specialty occupation position, is not relevant, as the beneficiary's qualifications were not a subject of the director's decision. The regulation at 8 C.F.R. § 214.2(h)(11)(ii) is also not relevant, as it deals only with the grounds for the automatic revocation of an approved petition.

The AAO also notes that the director expressly stated that it appeared as though the petitioner qualified as an "employer" entity eligible to file the petition. A close reading of the decision reveals that the employment aspect with which the director took issue is the petitioner's claim to have H-1B caliber work for the beneficiary.

EAC 07 151 53678
Page 3

Remaining is the issue of whether the director was correct in his determination that the petitioner had not provided sufficient evidence to establish that it would be employing the beneficiary in a specialty occupation position. The director articulated this determination most clearly in the following paragraphs discussing the lack of documentary evidence of H-1B caliber work for the beneficiary:

> Although [the] petitioner claims to have ongoing business relationships with numerous Fortune 500 companies such as Verizon, HP, Fannie Mae, Citibank, AmeriPrice, CISCO, GMAC, Best Buy, NASDAQ, WellsFargo, Unisys, Target, and Fidelity, no representative contracts were forthcoming from the petitioner. No contract specific to the beneficiary in the petition has been forthcoming from the petitioner. The employment agreement, unsigned by the beneficiary, presented in response to the USCIS request for evidence[,] is couched in the most general terms with no specific work project or in-house assignment contemplated. There are no additional contracts, work orders, master service agreements[,] or statements of work establishing the specific dates and locations of the beneficiary's proposed employment. The record also contains no evidence to demonstrate that a work itinerary existed for the position at the time the petition was filed.
>
> As the record does not contain documentation that establishes the specific duties the beneficiary would perform, USCIS cannot properly analyze whether these duties would require at least a baccalaureate degree or the equivalent in a specific specialty or field of endeavor, as required for classification as a specialty occupation. Accordingly, the petitioner has not established that the proposed position qualifies for classification as a specialty occupation under the criteria at 8 C.F.R. § 214.2(h)(4)(iii)(A) or that the beneficiary would be coming to the United States to perform the duties of a specialty occupation pursuant to 8 C.F.R. § 214.2(h)(4)(iii)(A).

The AAO finds that the director was correct in his determination that the record before him failed to establish a specialty occupation position, and also finds that the documents submitted on appeal have not remedied that failure. Accordingly, the director's decision to deny the petition shall not be disturbed. The AAO bases its decision upon its review of the entire record of proceedings, which includes: (1) the Form I-129 and supporting documentation; (2) the director's request for additional evidence; (3) the petitioner's response to the director's request for additional evidence; (4) the director's denial letter; and (5) the Form I-290B and supporting documentation.

Section 101(a)(15)(H)(i)(b) of the Act, 8 U.S.C. § 1101(a)(15)(H)(i)(b), provides a nonimmigrant classification for aliens who are coming temporarily to the United States to perform services in a specialty occupation.

Section 214(i)(l) of the Act, 8 U.S.C. § 1184 (i)(l), defines the term "specialty occupation" as an occupation that requires:

EAC 07 151 53678
Page 4

>    (A)  theoretical and practical application of a body of highly specialized knowledge, and
>
>    (B)  attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States.

Thus, it is clear that Congress intended this visa classification only for aliens who are to be employed in an occupation that requires the theoretical and practical application of a body of highly specialized knowledge that is conveyed by at least a baccalaureate or higher degree in a specific specialty.

Consistent with section 214(i)(1) of the Act, the regulation at 8 C.F.R. § 214.2(h)(4)(ii) states that a specialty occupation means an occupation "which [1] requires theoretical and practical application of a body of highly specialized knowledge in fields of human endeavor including, but not limited to, architecture, engineering, mathematics, physical sciences, social sciences, medicine and health, education, business specialties, accounting, law, theology, and the arts, and which [2] requires the attainment of a bachelor's degree or higher in a specific specialty, or its equivalent, as a minimum for entry into the occupation in the United States."

Pursuant to 8 C.F.R. § 214.2(h)(4)(iii)(A), to qualify as a specialty occupation, the position must meet one of the following criteria:

>    *(1)*  A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;
>
>    *(2)*  The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;
>
>    *(3)*  The employer normally requires a degree or its equivalent for the position; or
>
>    *(4)*  The nature of the specific duties is so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

As a threshold issue, it is noted that 8 C.F.R. § 214.2(h)(4)(iii)(A) must logically be read together with section 214(i)(1) of the Act, 8 U.S.C. § 1184(i)(1), and 8 C.F.R. § 214.2(h)(4)(ii). In other words, this regulatory language must be construed in harmony with the thrust of the related provisions and with the statute as a whole. *See K Mart Corp. v. Cartier Inc.*, 486 U.S. 281, 291 (1988) (holding that construction of language which takes into account the design of the statute as a whole is preferred); *see also COIT Independence Joint Venture v. Federal Sav. and Loan Ins. Corp.*, 489 U.S. 561 (1989); *Matter of W-F-*, 21 I&N Dec. 503 (BIA 1996). As such, the

criteria stated in 8 C.F.R. § 214.2(h)(4)(iii)(A) should logically be read as being necessary but not necessarily sufficient to meet the statutory and regulatory definition of specialty occupation. To otherwise interpret this section as stating the necessary *and* sufficient conditions for meeting the definition of specialty occupation would result in particular positions meeting a condition under 8 C.F.R. § 214.2(h)(4)(iii)(A) but not the statutory or regulatory definition. *See Defensor v. Meissner*, 201 F.3d 384, 387 (5th Cir. 2000). To avoid this illogical and absurd result, 8 C.F.R. § 214.2(h)(4)(iii)(A) must therefore be read as stating additional requirements that a position must meet, supplementing the statutory and regulatory definitions of specialty occupation.

Consonant with section 214(i)(1) of the Act and the regulation at 8 C.F.R. § 214.2(h)(4)(ii), USCIS consistently interprets the term "degree" in the criteria at 8 C.F.R. § 214.2(h)(4)(iii)(A) to mean not just any baccalaureate or higher degree, but one in a specific specialty that is directly related to the proffered position. Applying this standard, USCIS regularly approves H-1B petitions for qualified aliens who are to be employed as engineers, computer scientists, certified public accountants, college professors, and other such professions. These occupations all require a baccalaureate degree in the specific specialty as a minimum for entry into the occupation and fairly represent the types of professions that Congress contemplated when it created the H-1B visa category.

The record of proceedings is fatally defective because it fails to include documentary evidence corroborating the H-1B petition's claim that for the period requested the beneficiary would be employed on matters requiring her to apply the theoretical and practical application of a bachelor's degree level of a body of highly specialized knowledge in a specific specialty.

The petitioner described itself on the Form I-129 as a "software development and consulting" company, and described the product or service it provides on the submitted 2006 income tax return as "consulting." The AAO notes that the petitioner, as a software development and consulting company, is engaged in an industry that typically outsources its personnel to client sites to work on particular projects. In the field of the Form I-129 where the petitioner is asked to provide a nontechnical description of the proposed job duties, the petitioner answered "see attachment." The petitioner provided the same answer on the H Classification Supplement to Form I-129. However, no such attachment was submitted. In its August 30, 2007 letter submitted in response to the director's July 31, 2007 request for additional evidence, the petitioner stated that the beneficiary would perform the following duties:

- Deliver IT solutions and services;
- Perform requirements definition and user needs analysis;
- Design and implement distributed enterprise applications and pattern-oriented software architecture to address business needs;
- Write detailed descriptions of user needs, programs function, and steps required to develop or modify computer programs; and
- Develop and maintain proficiency, utilizing technical and analytical tools to give optimum results to the management and business.

EAC 07 151 53678
Page 6

Although the petitioner did not states how many "users" there would be, the nature of this list of duties implied that the beneficiary would be providing such services to more than one client. However, at another portion of its August 30, 2007 letter, the petitioner stated that the beneficiary would spend the entire three-year period of proposed employment working on a project entitled "Total Care Reengineering Solutions" (TCRS). The petitioner also submitted a brochure regarding iRecruit, another project, but its description of that project indicated that the beneficiary would not be working on it.[1]

However, by the time the petitioner submitted its December 13, 2007 letter in support of the appeal, the duties proposed for the beneficiary had evolved. In that letter, the petitioner stated that the beneficiary would spend eleven months working, in-house, on the iRecruit project. The beneficiary would then spend the remaining portion of her three-year period of authorized employment working on another in-house project. That in-house project would entail aiding the petitioner in developing a software and security solution suite marketed to small and medium hotels and motels in the United States. The petitioner's December 13, 2007 letter made no mention of previous duties proposed for the beneficiary such as analyzing users' needs; writing detailed descriptions of users' needs; and writing detailed descriptions of the steps required to modify computer programs.

The AAO considers the changes made by the petitioner on appeal to constitute a material alteration of the beneficiary's proposed duties rather than a mere clarification or more detailed description of the duties originally proposed. While the petitioner "certified" in its August 30, 2007 letter that the beneficiary would be working on the TCRS project for three years, it made no mention of that project in its December 13, 2007 letter. While the petitioner's August 30, 2007 letter indicated that the beneficiary would not be working on the iRecruit project, its December 13, 2007 stated that she would spend eleven months working on that project. While the petitioner's August 30, 2007 letter made no mention of the software and security solution suite that would be marketed to small and medium hotels and motels, its December 13, 2007 letter indicated that she would spend two years and one month working on this project. Finally, as noted previously, the petitioner's December 13, 2007 letter made no mention of such duties proposed for the beneficiary in the petitioner's August 30, 2007 letter such as analyzing users' needs; writing detailed descriptions of users' needs; and writing detailed descriptions of the steps required to modify computer programs. A petitioner may not make material changes to a petition in an effort to make a deficient petition conform to USCIS requirements. *See Matter of Izummi*, 22 I&N Dec. 169, 176 (Assoc. Comm. 1998). If significant changes are made to the initial request for approval, the petitioner must file a new petition rather than seek approval of a petition that is not supported by the facts in the record. The new duties provided by the petitioner on appeal do not clarify or provide more specificity to the original duties proposed for the beneficiary, but rather added new duties to the job description, and deleted others. Accordingly, the AAO's analysis will be based upon on the job

---

[1] Specifically, the petitioner, after "certifying" that the beneficiary would be working on the TCRS project for a period of three years, stated that it had also submitted the "details of one of our other project[s] "iRecruit." The language of the petitioner's letter, therefore, indicated that the beneficiary would not be working on the iRecruit project.

EAC 07 151 53678
Page 7

description contained in the petitioner's August 30, 2007 letter, which was the first time the petitioner described the job duties proposed for the beneficiary.

The duties proposed for the beneficiary prior to the alterations made on appeal indicated that although the beneficiary would spend time working on an in-house project, the specific duties proposed for her (i.e., analyzing users' needs, et al) indicated that she would be performing such duties for the petitioner's clients. However, no substantive evidence was submitted regarding any particular substantive work that she would perform while pursuing such duties. Without documentary evidence to support the claim, the assertions of counsel will not satisfy the petitioner's burden of proof. The unsupported assertions of counsel do not constitute evidence. *Matter of Obaigbena*, 19 I&N Dec. 533, 534 (BIA 1988); *Matter of Laureano*, 19 I&N Dec. 1 (BIA 1983); *Matter of Ramirez-Sanchez*, 17 I&N Dec. 503, 506 (BIA 1980). In this respect, the AAO notes that as recognized by the court in *Defensor v. Meissner*, 201 F. 3d 384, where the work is to be performed for entities other than the petitioner, evidence of the client companies' job requirements is critical. The court held that the legacy Immigration and Naturalization Service had reasonably interpreted the statute and regulations as requiring the petitioner to produce evidence that a proffered position qualifies as a specialty occupation on the basis of the requirements imposed by the entities using the beneficiary's services. Such evidence must be sufficiently detailed and explained as to demonstrate the type and educational level of highly specialized knowledge in a specific discipline that is necessary to perform that particular work. The record of proceedings lacks such substantive evidence from any end-user entities that may generate work for the beneficiary and whose business needs would ultimately determine what the beneficiary would actually do on a day-to-day basis. In short, as noted by director, the petitioner has failed to establish the existence of H-1B caliber work for the beneficiary.

The petitioner's failure to establish the substantive nature of the work to be performed by the beneficiary precludes finding a specialty occupation under any criterion at 8 C.F.R. § 214.2(h)(4)(iii)(A) because it is the substantive nature of that work that determines: (1) the normal minimum educational requirement for the particular position, which is the focus of criterion 1; (2) industry positions which are parallel to the proffered position and thus appropriate for review for a common degree requirement, under the first alternate prong of criterion 2; (3) the level of complexity or uniqueness of the proffered position, which is the focus of the second alternate prong of criterion 2; (4) the factual justification for a petitioner normally requiring a degree or its equivalent, when that is an issue under criterion 3; and (5) the degree of specialization and complexity of the specific duties, which is the focus of criterion 4.

Also, at a more basic level, as reflected in this decision's discussion of the evidentiary deficiencies, the record lacks credible evidence that when the petitioner filed the petition the petitioner had secured work of any type for the beneficiary to perform during the requested period of employment. USCIS regulations affirmatively require a petitioner to establish eligibility for the benefit it is seeking at the time the petition is filed. See 8 C.F.R. 103.2(b)(12). A visa petition may not be approved at a future date after the petitioner or beneficiary becomes eligible under a new set of facts. *Matter of Michelin Tire Corp.*, 17 I&N Dec. 248 (Reg. Comm. 1978). For this reason also, the petition will be denied.

EAC 07 151 53678
Page 8

The appeal will be dismissed and the petition denied for the above stated reasons, with each considered as an independent and alternative basis for the decision. In visa petition proceedings, the burden of proving eligibility for the benefit sought remains entirely with the petitioner. Section 291 of the Act, 8 U.S.C. § 1361. Here, that burden has not been met.

**ORDER:** The appeal is dismissed. The petition is denied.